**Subject:** FW: Recognizing Out-of-State, Same-Sex Marriages | A.G. Opinion
**Attachments:** AG_Opinion.pdf

---

**From:** JORDAN Michael J * COO [mailto:michael.j.jordan@state.or.us]
**Sent:** Wednesday, October 16, 2013 12:58 PM
**To:** Agency Heads - Brds_Commissions; AGENCY HEADS
**Cc:** Agency_Heads_Asst_Dist
**Subject:** Recognizing Out-of-State, Same-Sex Marriages | A.G. Opinion

**To:** Agency Directors

**From:** Michael Jordan
Chief Operating Office and DAS Director
Department of Administrative Services

**Re:** Recognizing Out-of-State, Same-Sex Marriages and A.G. Opinion

In light of recent United States Supreme Court decisions on same-sex marriage, the Department of Justice reviewed the potential impact of those decisions on Oregon state agencies. The DOJ opinion is attached, but in short, Oregon agencies must recognize all out-of-state marriages for the purposes of administering state programs. That includes legal, same sex marriages performed in other states and countries.

The DOJ opinion discusses the difference between Oregon's definition of marriage – as between one man and one woman – and the state's practice of recognizing marriages performed in other states. It describes how Oregon courts have consistently recognized valid out-of-state marriages, even when the marriage could not be performed in Oregon – such as common-law marriages. Although the Oregon constitution might be construed to prohibit recognizing out-of-state same-sex marriages, DOJ concludes that such a construction would violate the federal constitution.

This DOJ opinion does not answer the question regarding a same sex couple's ability to legally wed in Oregon. However, it makes a clear case for all legal marriages performed in other states and countries to be recognized in Oregon. Please keep this in mind as you administer the many programs Oregonians count on each day.

ELLEN F. ROSENBLUM
ATTORNEY GENERAL



MARY H. WILLIAMS
DEPUTY ATTORNEY GENERAL

## DEPARTMENT OF JUSTICE

Justice Building
1162 Court Street NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4400

October 16, 2013

**THIS IS AN ATTORNEY-CLIENT PRIVILEGED COMMUNICATION. NEITHER THIS DOCUMENT NOR ITS CONTENTS SHOULD BE CIRCULATED BEYOND THE IMMEDIATE ADDRESSEES OR DISCUSSED AT A PUBLIC MEETING WITHOUT FIRST CONSULTING WITH COUNSEL.**

Michael Jordan
Chief Operating Officer
Department of Administrative Services
155 Cottage St. NE, U20
Salem, OR 97301-3966

Dear Michael:

In the last year alone, a significant and growing number of countries and states, including our neighboring states of California and Washington, have begun to recognize same-sex marriages. The federal government also now recognizes same-sex marriages for the purpose of administering federal laws, as a result of a United States Supreme Court decision issued in June of this year. In light of these

Page | 1

developments, you asked whether Oregon agencies can recognize same-sex marriages from other jurisdictions for purposes of administering Oregon law. For example, can state agencies treat a same-sex couple married in Washington and not registered as domestic partners in Oregon as married for purposes of administering tax laws and benefits programs such as providing health insurance. We conclude that state agencies can recognize these marriages as valid. To do otherwise would likely violate the federal constitution.

## DISCUSSION

### I. Recent developments in federal law concerning recognition of same-sex marriage

Since its passage in 1996, section (3) of the federal Defense of Marriage Act (DOMA) denied federal recognition of any same-sex marriages.[1] In June, the United States Supreme Court held that provision unconstitutional because it violated equal protection and due process guarantees of the federal constitution. *United States v. Windsor*, 570 US ___, 133 S Ct 2675 (2013). As a result of that decision, same-sex married couples living in jurisdictions that recognize same-sex marriage will now be considered to be married for purposes of federal law.[2]

Following these decisions, federal agencies and the United States Department of Justice have begun addressing the implications for federal programs. While some federal law considers the validity of marriage based on the place of habitation and some law considers the validity based on the place the

---

[1] Section 3 of DOMA provided:

"In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife."

[2] The Court was not asked to address the constitutionality of section (2) of DOMA, which permits states to refuse to recognize same-sex marriages performed out-of-state.

marriage was performed, the agencies' advice has largely done away with that distinction. At least some federal benefits—including military benefits and benefits under the tax laws—are now to be provided to same-sex couples who enter into a valid marriage anywhere, notwithstanding any prohibitions on that marriage in their place of residency.[3]

For purposes of administering Oregon programs that provide different benefits or obligations based on marital status, Oregon must look to its own laws, as neither *Windsor* nor the federal guidance controls.

## II. Oregon law governing same-sex relationships

The Oregon Family Fairness Act allows same-sex couples to enter into domestic partnerships. ORS 106.300. Under the Act, all privileges, immunities, rights, and benefits conferred by law on the basis of marital status is granted on equal terms to registered domestic partners. ORS 106.340.

While same-sex couples can enter into domestic partnerships and thereby obtain many of the same benefits of married individuals, they are not permitted to marry in Oregon. Article XV, section 5a of the Oregon Constitution provides that

> It is the policy of Oregon, and its political subdivisions, that only a marriage between one man and one woman shall be valid or legally recognized as a marriage.

Article XV, section 5a clearly prohibits marriages of same-sex couples from being performed in Oregon.

Recognition of otherwise valid out-of-state marriages is a separate question. But as a general principle of Oregon law, "a marriage which is recognized as valid in the state where it was performed will be recognized in Oregon." *Garrett v. Chapman*, 252 Or 361, 364, 449 P2d 856 (1969). There is a potential limit to that rule "where the policy of this state dictates a different result than would be reached

---

[3] *See, e.g.*, Revenue Ruling 2013-17. The federal advice has not been entirely consistent. For example, the Social Security Administration appears to look to the law of the couples' state of residency in determining whether they are married. We will continue to monitor the federal guidance and encourage state agencies to contact us if they have questions in this area.

by the state where the marriage was performed." *Id.* The issue is, therefore, whether any "policy of this state" dictates that Oregon cannot recognize a marriage validly solemnized in the state where it was performed. If it exists, that policy would be found in the same section of the Oregon Constitution, in its declaration that only marriages "between one man and one woman shall be * * * legally recognized as a marriage."

### III. Oregon's constitutional prohibition on same-sex marriage would likely be construed as also prohibiting recognition of out-of-state same-sex marriages. But such a construction would likely violate the federal constitution.

In construing a constitutional provision enacted through the initiative process, courts look to discern the intent of the voters and begin first with the text and context of the provision. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559 (1994). Context includes other constitutional provisions as well as caselaw and other relevant statutory framework in effect at the time of the initiative. *Shineovich and Kemp*, 229 Or App 670, 683 (2009). If the intent is not clear from the text and context, courts turn to the history of the provision. *Ecumenical Ministries*, 318 Or at 559. If the intent is still ambiguous, courts turn to general maxims of construction. *Shineovich*, 229 Or at 683.

Article XV, section 5a specifically states that only a marriage between an opposite-sex couple is valid and legally recognized as a marriage. The provision is silent as to marriages validly entered into in other states. But the broad language prohibiting legal recognition of same-sex marriage would—based purely on the plain text—appear to bar the recognition of otherwise valid same-sex marriages for purposes of state law.

Context and history confirms what the text suggests. For an initiative measure, the history includes what the voters were told about the measure during the election. In the Voters' Pamphlet for the November 2004 General Election, the Measure's Summary explained that "[c]urrently the State of Oregon recognizes out-of-state marriages that are valid in the state where performed, unless the marriage violates a strong public policy of Oregon. Measure [36] adds to Oregon Constitution a declaration that the policy of the State of Oregon and its political subdivisions is that 'only a marriage between one man and one woman shall be valid or legally recognized as a marriage.'" Official 2004 General Election Voters' Pamphlet, v 1, November 2, 2004 at 77.

A court then would almost certainly conclude that the Oregon constitutional provision bans recognition of an otherwise valid same-sex marriage performed under the laws of another jurisdiction. But Oregon law—even those laws enshrined in our constitution—still must pass muster under the federal constitution. Although it is a long-recognized tenet of federal law that marriage and domestic relations are matters generally left to the states, *Ex parte Burrus,* 136 US 586, 593-94 (1890), state-imposed restrictions on marriage must comply with the federal constitution. *See, e.g., Loving v. Virginia,* 388 US 1, 12 (1967) (holding that a state statute limiting marriage to same-race couples violated equal protection and due process); *Zablocki v. Redhail,* 434 US 374, 383 (1978) (holding that a state statute restricting marriage by persons owing child support violated equal protection). If an Oregon court construed our constitution so as to prohibit recognition of out-of-state same-sex marriages, we believe the court would find that provision violates the federal constitution's equal protection principles.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from denying "to any person within its jurisdiction the equal protection of the laws." US Const Amend XIV, § 1. Equal protection is "a pledge of the protection of equal laws." *Yick Wo v. Hopkins,* 118 US 356, 369 (1886). Equal protection coexists with the reality that legislation must classify. *Romero v. Evans,* 517 US 620, 631 (1996). When a law classifies in a manner that neither targets a suspect class nor burdens a fundamental right, the court will uphold the law so long as it is rationally related to some legitimate government interest. *Heller v. Doe,* 509 US 312, 319-20. The classification itself must relate to the purported interest. *Plyler v. Doe,* 457 US 202, 220 (1982). Most laws subject to rational basis review easily survive, because a legitimate reason can nearly always be found for treating different groups in an unequal manner. *Romer,* 517 US at 633. And courts defer to legislative judgment if there is at least a debatable question whether the underlying basis for the classification is rational. *Id.* at 632.

But even under this most deferential standard of review, the court must "insist on knowing the relation between the classification adopted and the object to be attained." *Id.* And the classification must "find some footing in the realities of the subject addressed by the legislation." *Id.* The search for a rational relationship, while deferential, "ensure[s] that classifications are not drawn for the purpose of disadvantaging the group burdened by the law." *Id.* at 633. To survive rational basis review, a law must do more than disadvantage or harm a particular group. *United States Dept of Agriculture v. Moreno,* 413 US 528, 534 (1973).

Applying that analysis here, we begin with the classification. As it relates to the question addressed in this opinion, Article XV, section 5a creates a classification of same-sex couples legally married in other states. It singles out those couples' valid marriages and denies them recognition in Oregon. Proponents and opponents alike understand that the law targets gays and lesbians in a manner specific to their sexual orientation by denying recognition of only their valid marriages. That is the law's express purpose.

The question then becomes whether we could articulate a justification for targeting same-sex couples in that manner. We cannot identify *any* defensible state interest, much less a legitimate or compelling one, in refusing to recognize marriages performed between consenting, unrelated adults under the laws of another state—marriages that would be unquestionably accorded recognition if the spouses were of opposite sexes. Likewise, we cannot identify any legitimate (much less compelling) state interest in requiring that each marriage recognized in Oregon contain one partner of each sex; no benefit to Oregon results from that limitation, and no injury would result from recognizing the marriages.

And same-sex relationships are given legal recognition in Oregon, in the form of domestic-partnership registration. To defend a refusal to acknowledge marriages, the state would have to articulate a state interest in allowing partnerships but refusing to recognize marriages—and, again, we cannot point to any such interest that would pass constitutional muster at even the lowest possible level of scrutiny, rational basis review.

What is more, a court is very unlikely to apply rational basis review. Article XV, section 5a, mandates differential treatment of a group that has been subjected to "a history of purposeful unequal treatment." And the U.S. Supreme Court has referred to the freedom to marry as a fundamental right, protected by the Due Process Clause of the Fourteenth Amendment. *See, e.g., Turner v Safely*, 482 US 78, 95 (1987) ("[T]he decision to marry is a fundamental right" and marriage is an "expression[ ] of emotional support and public commitment."); *Zablocki*, 434 US at 384 (1978) ("The right to marry is of fundamental importance for all individuals.") As such, a court might well apply strict scrutiny. Under a strict-scrutiny analysis, Oregon's constitutional prohibition on recognition of out-of-state same-sex marriages would be struck down unless a court concluded that it was narrowly drawn to serve a compelling governmental interest. If we cannot articulate a rational-basis-level defense of the law (and we cannot), we certainly will fail on the vastly higher strict-scrutiny standard.

We note that the federal district court for the northern district of California considered these federal constitutional issues in respect to a voter initiative to deny same-sex marriage to California couples, and did so on the basis of a lengthy and well-developed record. *Perry v. S Schwarzenegger*, 704 F Supp 921, 940 (N.D. Cal 2010). The District Court—and, on appeal, the Ninth Circuit— concluded that the California law had no rational basis. Both courts found that the California law's withdrawal of the right to same-sex marriage, allowing only same-sex civil unions, served no purpose and had no effect other than to lessen the status and human dignity of gays and lesbians in California and to classify their relationships as inferior to opposite-sex couples. *Perry v. Brown*, 671 F3d 1051 (9th Cir 2012).[4] Although the Ninth Circuit's opinion turned in large part on the particular circumstances of California first allowing and then prohibiting same-sex marriage, the lower court's thoughtful opinion provides a strong basis for anticipating the likely reaction of Oregon courts to the question presented here.

## CONCLUSION

Across the country, courts, legislatures, and the people through their initiative processes are addressing whether states may refuse to create valid same-sex marriages. While that larger question must await resolution for another day, it is legally defensible for Oregon agencies to recognize same-sex marriages validly performed in other jurisdictions.

Sincerely,

*Mary H Williams*

MARY H. WILLIAMS
Deputy Attorney General

---

[4] While the United States Supreme Court accepted review of that decision, it did not reach the merits, as it concluded that the proper party had not appealed. *Hollingsworth v. Perry*, 570 US __, 133 S Ct 2652 (2013).