ELLEN F. ROSENBLUM
Attorney General
SHEILA H. POTTER  #993485
Deputy Chief Trial Counsel
ANNA M. JOYCE #013112
Solicitor General
MARY WILLIAMS #911241
Special Assistant Attorney General
Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Sheila.Potter@doj.state.or.us
        anna.joyce@doj.state.or.us
        mary_h_williams@msn.com

Attorneys for State Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DEANNA L. GEIGER** and **JANINE M. NELSON; ROBERT DUEHMIG** and **WILLIAM GRIESAR**,<br><br>Plaintiffs,<br><br>v.<br><br>**JOHN KITZHABER,** in his official capacity as Governor of Oregon; **ELLEN ROSENBLUM**, in her official capacity as Attorney General of Oregon; **JENNIFER WOODWARD**, in her official capacity as State Registrar, Center for Health Statistics, Oregon Health Authority; and **RANDY WALDRUFF**, in his official capacity as Multnomah County Assessor,<br><br>Defendants. | Case No.  6:13-cv-01834-MC (Lead Case)<br><br>STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT |

**PAUL RUMMELL** and **BENJAMIN WEST; LISA CHICKADONZ** and **CHRISTINE TANNER; BASIC RIGHTS EDUCATION FUND**,

                  Plaintiffs,

    v.

**JOHN KITZHABER**, in his official capacity as Governor of Oregon; **ELLEN ROSENBLUM**, in her official capacity as Attorney General of Oregon; **JENNIFER WOODWARD**, in her official capacity as State Registrar, Center for Health Statistics, Oregon Health Authority; and **RANDY WALDRUFF**, in his official capacity as Multnomah County Assessor,

                  Defendants.

Case No.  6:13-cv-02256-TC

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ...................................................................................... 2

        A.      History of Oregon's recognition of same-sex relationships and ban on
                same-sex marriage. ....................................................................................2

        B.      The debate over same-sex marriage heated up on the national stage,
                leading to challenges to same-sex marriage bans under the federal
                constitution.................................................................................................5

        C.      The current legal status for same-sex couples in Oregon is uncertain and
                complex........................................................................................................8

III.    STATEMENT OF MATERIAL FACTS ...................................................... 10

IV.     SUMMARY JUDGMENT STANDARD ...................................................... 12

V.      ARGUMENT ........................................................................................ 12

        A.      Plaintiffs' Equal Protection Claim requires this Court to address whether
                the state's same-sex marriage ban impermissibly discriminates on the
                basis of sexual orientation.........................................................................12

                1.      Plaintiffs' claims under the Equal Protection Clause are subject to
                        heightened scrutiny..........................................................................12

                2.      Even a rational-basis review would require Oregon's same-sex
                        marriage ban to further some legitimate governmental interest. ...............15

                3.      Protecting traditional marriage is not a rational justification for the
                        ban on same-sex marriage.................................................................16

                4.      The state's interest in protecting families does not justify a same-
                        sex marriage ban that injures the children in same-sex families and
                        has no effect on opposite-sex families. ....................................................18

                        a.      In Oregon, marriage and the rights that accompany
                                marriage are not narrowly tied to procreation or children. ............18

                        b.      The procreative potential of opposite-sex couples does not
                                justify Oregon's ban on same-sex marriage, because
                                Oregon gives all the same protections to non-biological
                                children and families in every other legal context........................20

                        c.      Oregon's interest in stable opposite-sex couples would not
                                be affected by same-sex marriages and therefore does not
                                provide any justification for the ban. .............................................23

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

d.  Not only does the same-sex marriage ban fail to further the state's interest in promoting stable families, it actually harms children.....................................................................24

B.  Plaintiffs' due process claim requires this Court to address whether the state ban on same-sex marriage improperly restricts the fundamental right to marry..................................................................................................25

1.  The fundamental right at issue is the "right to marry" and not some newly minted "right to same-sex marriage" with fewer protections under the federal constitution................................................................28

2.  Any interest in upholding a traditional definition of marriage limited to opposite-sex couples will fail to satisfy heightened scrutiny of Oregon's same-sex marriage ban...............................................29

C.  The benefits and protections from a Registered Domestic Partnership are not an answer to plaintiffs' challenges to the same-sex marriage ban..................31

D.  *Baker v. Nelson* does not foreclose this Court's consideration of plaintiffs' claims. ...................................................................................................32

VI.  CONCLUSION...........................................................................................33

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

## Cases

*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993) ................................................................... 2

*Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971), *appeal dismissed*, 409 U.S. 810 (1972) .... 32, 33

*Bishop v. United States ex rel. Holder*, No. 04-cv-848-TCK-TLW, ___ F. Supp. 2d ___, 2014 WL 116013 (N.D. Okla. Jan. 14, 2014) ...................................................... 7, 23, 24, 33

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ............................................................. 27

*Bostic v. Rainey*, No. 2:13-cv-395, ___ F. Supp. 2d ___, 2014 WL 561978 (E.D. Va. Feb. 13, 2014) .................................................................................. 7, 16, 29, 33

*Bourke v. Beshear*, No. 3:13-CV-750-H, ___ F. Supp. 2d ___, 2014 WL 556729 (W.D. Ky. Feb. 12, 2014) ........................................................................... 7, 17, 33

*Carey v. Population Servs. Int'l*, 431 U.S. 678 (1977) .................................................. 27

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) *abrogated on other grounds as noted by Williams v. City of Medford*, No. 09-3026-CL, 2011 WL 5842768 (D. Or. Oct. 19, 2011) ............................................................. 12, 13, 15

*Clark v. Jeter*, 486 U.S. 456 (1988) ........................................................................ 12

*Dakin v. Dakin*, 197 Or. 69 (1952) ......................................................................... 26

*De Leon v. Perry*, No. SA-13-CA-00982-OLG, 2014 WL 715741 (W.D. Texas February 26, 2014) ............................................................................. passim

*Garden State Equality v. Dow*, 82 A.3d 336 (N.J. Super. Ct.), *cert. granted*, 216 N.J. 1, *stay denied*, 216 N.J. 314 (2013) ......................................................................... 11

*Gill v. Office of Personnel Mgmt.*, 699 F. Supp.2d 374 (D. Mass. 2010) .................................. 25

*Golinski v. Ofc. of Pers. Mgmt.*, 824 F. Supp. 2d 968 (N.D. Cal. 2012) ........................ 16, 22, 25

*Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941 (Mass. 2003) ........................................... 3

*Griego v. Oliver*, 316 P.3d 865 (N.M. 2013) ............................................................. 23

*Griswold v. Connecticut*, 381 U.S. 479 (1965) .................................................... 18, 19, 26

*Grutter v. Bollinger*, 539 U.S. 306 (2006) ................................................................ 12

*Heller v. Doe*, 509 U.S. 312 (1993) ................................................................... 13, 16

*Hicks v. Miranda*, 422 U.S. 332 (1975), *superseded by elimination of* 28 U.S.C. § 1257(2) ........................................................................................... 32

*High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563 (9th Cir. 1990) ................. 13

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Hodgson v. Minnesota*, 497 U.S. 417 (1990)...................................................................... 27

*Hollingsworth v. Perry*, 570 U.S. ___, 133 S. Ct. 2652 (2013)..................................... 6

*In re Marriage Cases*, 183 P.3d 384 (Cal. 2008)................................................... 5, 16, 19

*In re Marriage of McGinley*, 172 Or. App. 717, *rev den*, 332 Or. 305 (2001).............................. 26

*Kaahumanu v. State of Hawaii*, 682 F. 3d 789 (9th Cir. 2012) .................................... 26

*Kitchen v. Herbert*, No. 2:3-cv-217, 2013 WL 6697874 (D. Utah Dec. 20, 2013), *stay pending appeal*, ___ U.S. ___, 134 S. Ct. 893 (mem) (2014) ................................ 7, 23, 29, 33

*Lawrence v. Texas*, 539 U.S. 558 (2003) ............................................................... passim

*Lee v. Orr*, No. 13-cv-8719, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014) ...................................... 7

*Lewis v. Harris*, 908 A.2d 196 (N.J. 2006)...................................................................... 32

*Li v. State*, 338 Or. 376 (2005)......................................................................... 3, 4, 5

*Loving v. Virginia*, 388 U.S. 1 (1967)............................................................. 26, 28, 29

*Mandel v. Bradley*, 432 U.S. 173 (1977) ........................................................................ 32

*Martinez v. Kulongoski*, 220 Or. App. 142,  *rev. den.*, 345 Or. 415 (2008) ...................................... 5

*Massachusetts v. U.S. Dep't of Health and Human Servs.*, 682 F.3d 1 (1st Cir. 2012) .............. 30

*McGowan v. Maryland*, 366 U.S. 420 (1961)................................................................. 15

*Obergefell v. Wymyslo*, No. 1:13-cv-501, 2013 WL 7869139 (S.D. Ohio Dec. 23, 2013)  7, 25, 27

*Pedersen v. Office of Personnel Mgmt.*, 881 F. Supp. 2d 294 (D. Conn. 2012).......................... 25

*Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012)................................................................. 6

*Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2010)........................................ passim

*Philips v. Perry*, 106 F.3d 1420 (9th Cir. 1997) ........................................................... 13

*Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833 (1992) ................................................... 26

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) .............................................................. 27

*Romer v. Evans*, 517 U.S. 620 (1996)....................................................................... 12, 15, 33

*Rugh v. Ottenheimer*, 6 Or. 231 (1877) .................................................................... 26

*Sevcik v. Sandoval*, 911 F. Supp. 2d 996 (D. Nev. 2012) ................................................ 8, 17, 33

*Shineovich and Kemp*, 229 Or. App. 670, *rev den*, 347 Or. 365 (2009)...................................... 21

Page iv

*Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942), *overruled in part on other grounds as noted in Sakotas v. W.C.A.B.*, 80 Cal. App. 4th 262 (2000) ........................ 26

*SmithKline Beecham Corp. v. Abbott Labs*, 740 F.3d 471 (9th Cir. 2014)........................... 13, 14

*Tanner v. Oregon Health Sci. Univ.*, 157 Or. App. 502 (1998).............................................. 3

*Turner v. Safley*, 482 U.S. 78 (1987), *superseded by statute as noted by Rhinehart v. Scutt*, No. 11-CV-11254, 2012 WL 175420 (E.D. Mich. January 22, 2012), *aff'd*, 509 Fed. Appx. 510 (6th Cir. 2013) .......................................................................................... 19, 30

*United States v. Windsor*, 570 U.S. ___, 133 S. Ct. 2675 (2013) ......................................... passim

*Varnum v. Brien*, 763 N.W.2d 862 (Iowa 2009)...................................................................... 22

*Williams v. Illinois*, 399 U.S. 235 (1970) ................................................................................ 16

*Windsor v. United States*, 699 F.3d 169 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013)............... 33

*Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008) .............................................. 13, 27

*Zablocki v. Redhail*, 434 U.S. 374 (1978)........................................................................... 26, 27

## Statutes

O.R.S. 106.010.......................................................................................................................... 9

O.R.S. 106.060.......................................................................................................................... 9

O.R.S. 106.150.......................................................................................................................... 9

O.R.S. 106.300 *et seq.*.............................................................................................................. 5

O.R.S. 106.305.......................................................................................................................... 9

O.R.S. 106.305(6)...................................................................................................................... 5

O.R.S. 106.305(7) ................................................................................................................. 5, 8

O.R.S. 106.310(1)...................................................................................................................... 9

O.R.S. 106.325(4)...................................................................................................................... 9

O.R.S. 106.340(5)...................................................................................................................... 9

O.R.S. 106.340(6)...................................................................................................................... 8

O.R.S. 109.041......................................................................................................................... 21

O.R.S. 109.050......................................................................................................................... 21

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

O.R.S. 109.060 ........................................................................................................... 22

O.R.S. 109.243 ........................................................................................................... 21

## United States Code

1 U.S.C. § 7 .................................................................................................................. 2

28 U.S.C. § 1738C ....................................................................................................... 2

## Rules and Regulations

26 C.F.R. § 1.106-1 ................................................................................................... 10

O.A.R. 101-015-0026 ............................................................................................... 10

O.A.R. 105-010-0018 .......................................................................................... 10, 11

O.A.R. 150-316.007-(B)(1) and (2) ......................................................................... 10

## Constitutional Provisions

Or. Const. Art. 15, § 5a .............................................................................................. 4

Or. Const., Art. I, § 20 ............................................................................................... 3

U.S. Const. amend. XIV, § 1 ..................................................................................... 12

Page vi

# I.    INTRODUCTION

Simply put, marriage matters.  It matters not only for the individuals who decide to enter into the civil union, but also for the state.  This is why the state links so many rights and protections to the decision to marry.  Strong, stable marriages create unions in which children may be raised to become healthy and productive citizens, in which family members care for those who are sick or in need and would otherwise have to rely on government assistance, and through which community is built and strengthened.  Given the importance of marriage to the state, this case asks whether a same-sex marriage ban can be justified as serving a legitimate government interest that overcomes our basic constitutional principle that the state should not discriminate.

Plaintiffs in these consolidated cases ask this Court to determine whether Oregon's constitutional ban on same-sex marriages violates the federal constitution's due process and equal protection provisions.  Across the nation, courts are addressing these same questions and the changes surrounding this social and legal issue are happening at a remarkable pace.  While Oregon has a long history of recognizing and validating same-sex relationships, it also has— since 2004—drawn a line saying those relationships are *almost* complete in the eyes of the law. Oregon has provided same-sex couples a mechanism for obtaining the same state benefits as couples entitled to marry, while preventing those couples from entering into the civil contract that is marriage.  In light of recent changes at the federal level, the refusal of Oregon to grant same-sex couples the right to marriage means that those couples are deprived of significant federal protections and benefits.

The state defendants in this case have carefully analyzed the legal issues presented and find no satisfactory justification on which to defend the state's ban on same-sex marriages, which blocks those unions from not only the many federal benefits, but also the full societal recognition and support of marriage.  However, it is not for these defendants to simply ordain that others should disregard the state's constitutional provision.  Instead, it is proper for these

Page 1 -    STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
5099224-v1

cases to proceed through the judicial system and to have a court determine the constitutionality of the ban and the proper remedy should it be declared unconstitutional.

Other state attorneys general and governors have reached similar conclusions about the defensibility of state laws, and responded by simply declining to appear in defense or withdrawing and joining forces with those challenging the laws. The Oregon state defendants believe it is more appropriate to remain as parties to this litigation to ensure that this Court has the benefit of the careful legal analysis that the state defendants have undertaken. And they respectfully submit that analysis and await the Court's determination on the merits. Until a judicial determination on the matter is made, the state will continue to enforce Oregon's same-sex marriage ban.

## II.    BACKGROUND

To decide the claims presented, this Court must determine whether there are sufficient justifications to support the state's ban on same-sex marriage under the appropriate federal constitutional analysis. It is helpful to this analysis to consider the context in which the ban was first enacted, as well as the larger landscape of how courts and states across the country have responded to this same issue.

**A.    History of Oregon's recognition of same-sex relationships and ban on same-sex marriage.**

Up until the late 1990s, Oregon—like almost every state in the union—did not recognize same-sex relationships.[1] While the state provided a number of benefits and protections based on marital status, marriage and the benefits of marriage were limited to opposite-sex couples. In

---

[1] In 1993, the Hawaii Supreme Court issued the first judicial opinion to suggest that a state prohibition on same-sex marriage would violate the federal constitutional rights of same-sex couples. *Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993). Congress responded with the enactment of the Defense of Marriage Act (DOMA) and declared that the federal government would not recognize those marriages as valid for purposes of federal laws and also that other states were entitled to decline recognition of those valid marriages. Act of Sept. 21, 1996, Pub. L. 104-199, 110 Stat. 2419, *codified at* 1 U.S.C. § 7 and 28 U.S.C. § 1738C. In 1998, Hawaii voters passed an initiative authorizing the state legislature to enact a ban on same-sex marriages. But the legal question could not be silenced and the issue began to be debated in other jurisdictions.

Page 2 -    STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
         5099224-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

1998, employees at OHSU (including two of the plaintiffs in the present litigation), sued the state under the Oregon Constitution and sought the same health benefits for same-sex couples that the state provided to married couples.  The trial court and the Oregon Court of Appeals agreed that Article I, § 20 of the Oregon Constitution[2] prohibits the state from discriminating on the basis of sexual orientation for state benefits and services.  *Tanner v. Oregon Health Sci. Univ.*, 157 Or. App. 502, 524-25 (1998)*.*  In essence, the courts concluded that the state could not simultaneously provide benefits based on marital status and prohibit same-sex couples from entering into the status that would give them access to those benefits.  The state responded to that judicial determination by providing state benefits to same-sex couples who established they were in a committed relationship equivalent to a marital relationship.

Questions about same-sex marriage next arose five years later, sparked by a judicial opinion in Massachusetts in November 2003.  *Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941, 948 (Mass. 2003) (striking down the state's ban on same-sex marriage as violating the state's constitution).[3]  In March 2004, Multnomah County asked for an opinion from legal counsel about the constitutionality of prohibiting same-sex marriage under Oregon's laws.  *Li v. State*, 338 Or. 376, 383 (2005).  County counsel advised the commissioners that state statutes likely did not permit issuance of licenses to same-sex couples, but refusal to issue the licenses would violate the rights of same-sex couples under Article I, § 20.  *Id.*  Based on that opinion, on March 3, 2004, Multnomah County began issuing licenses to same-sex couples.  Eventually, over 3,000 licenses were issued.

On March 12, the Oregon Department of Justice issued an opinion setting forth its interpretation of Oregon law.  Letter from Hardy Myers, Oregon Attorney General, to Ted

---

[2] Article I, § 20 of the Oregon Constitution provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

[3] The litigation challenging same-sex marriage bans drew support from the United States Supreme Court ruling that due process protects the sexual relations and privacy of same-sex partners.  *Lawrence v. Texas*, 539 U.S. 558, 578 (2003).

Page 3 -    STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Kulongoski, Oregon Governor (March 12, 2004),

http://www.doj.state.or.us/hot_topics/pdf/ag_samesexopinion.pdf.  The Department concluded

that Oregon law prohibited county clerks from issuing marriage licenses to same-sex couples, but

also concluded that the Oregon Supreme Court would likely find that prohibition to violate the

same state constitutional provision at issue in *Tanner*.  *Id.* at 11.  As in this case, the Department

determined that—notwithstanding its conclusion that the state laws would likely be declared

unconstitutional—the proper practice would be to continue implementing state law (denying the

right to same-sex marriage) until a court could rule on the issues.  *Id.*  The Department helped

facilitate a lawsuit to resolve the issues.

The trial judge ruled that the Oregon Constitution did not require making marriage

available to same-sex couples, but did require the state to provide same-sex couples the same

benefits that marriage provided to opposite-sex couples.  *See Li*, 338 Or. at 382-83 (describing

the trial court's ruling, but declining to address it because the Oregon Supreme Court determined

it had not been placed at issue by the parties). The trial court put its ruling on hold for 90 days to

give the Legislature the opportunity to enact laws that would address the issue or the parties the

opportunity to appeal.  *Id.* at 387.  Both sides appealed the ruling and the Oregon Court of

Appeals certified the case to be heard directly by the Oregon Supreme Court.

One month later, before the issues could be briefed and considered by the Oregon

Supreme Court, the Defense of Marriage Coalition began the process of amending the Oregon

Constitution through the initiative process.  Voters enacted Ballot Measure 36 in November

2004, declaring it to be "the policy of Oregon, and its political subdivisions, that only a marriage

between one man and one woman shall be valid or legally recognized as marriage."  Or. Const.

Art. 15, § 5a.

Because the *Li* challenge raised issues only of Oregon constitutional law, the change in

the Oregon Constitution resolved those issues on the merits.  The only issue the Oregon Supreme

Court addressed was the validity of those 3,000 marriages that had taken place in the brief

Page 4 -    STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
        5099224-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

window when same-sex couples were permitted to obtain licenses.  In April 2005, the court

determined that those marriages were void and that the county lacked the authority to remedy the

perceived constitutional violation the way it had attempted to do.  *Li*, 338 Or. at 386 (the court

discussed the permissible options for government officials faced with a perceived constitutional

violation, including to act consistent with the questionable provision "and leave it to a party

aggrieved by that action to seek a contested case decision or judicial intervention through

mandamus or declaratory judgment proceedings.").[4]

In 2007, the Oregon legislature addressed the issue of same-sex relationships and created

Registered Domestic Partnerships (RDPs), giving those couples almost all of the same state

benefits and protections as are granted to couples who are married. The Oregon Family Fairness

Act, O.R.S. 106.300 *et seq.,* establishes a domestic-partnership system to "provide legal

recognition to same-sex relationships [and] ensur[e] more equal treatment of gays and lesbians

and their families under Oregon law."  O.R.S. 106.305(6).  The rights and responsibilities

granted through those laws are necessarily limited to what the state provides on the basis of

marital status.  The registered domestic partnership has no impact on the federal benefits and

responsibilities that accrue through marriage.  *See* O.R.S. 106.305(7).  Nor are the domestic

partnerships recognized in the majority of other states.

**B.    The debate over same-sex marriage heated up on the national stage, leading to
         challenges to same-sex marriage bans under the federal constitution.**

The issue of same-sex marriage continued to simmer across the country.  In May 2008,

the California Supreme Court concluded that its state constitution required California to allow

same-sex marriages.  *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008).  As in Oregon, the

response was a voter initiative to put a prohibition on same-sex marriage in the California

constitution; the California voters passed the initiative in November 2008.  The challenge to that

---

[4]  Following its enactment, Oregon's marriage ban was challenged on largely technical grounds
and upheld as complying with the state requirements for amending the state constitution.
*Martinez v. Kulongoski*, 220 Or. App. 142, 155, *rev. den.*, 345 Or. 415 (2008).  The case did not
present any question of the ban's validity under federal constitutional principles.

Page 5 -    STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
          5099224-v1

voter initiative would make its way to the United States Supreme Court as *Hollingsworth v. Perry*, 570 U.S. ___, 133 S. Ct. 2652 (2013).

For purposes of this litigation, the important points from the California litigation can be taken from the District Court's ruling striking down the California constitutional ban as a violation of couples' rights under federal due process and equal protection law. *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 1003 (N.D. Cal. 2010). After a lengthy trial with the presentation of voluminous evidence from experts on both sides of the issue, the *Perry* court issued a thoughtful opinion with 80 findings of fact addressing the impact of California's same-sex marriage ban on traditional marriage, on government, and on same-sex couples and their children. *Id.* at 953-91.

The proponents of the California initiative appealed. The Ninth Circuit Court of Appeals upheld the District Court's ruling on narrower grounds, based on the state's first permitting and then prohibiting same-sex marriages. *Perry v. Brown*, 671 F.3d 1052, 1083-84 (9th Cir. 2012) ("the Equal Protection Clause requires the state to have a legitimate reason for withdrawing a right or benefit from one group but not others, whether or not it was required to confer that right or benefit in the first place."). The court found no legitimate state interest to support taking away the official designation of "marriage" from same-sex couples, while continuing to provide those couples virtually all of the rights and obligations of marriage. *Id.* at 1076, 1095-96. The U.S. Supreme Court agreed to hear the case, 568 U.S. ___, 133 S. Ct. 786 (2012), but ultimately ruled that the proponents of the initiative lacked standing to appeal, leaving in place the trial court decision and paving the way for same-sex marriages in California. *Hollingsworth*, 570 U.S. at ___, 133 S. Ct. at 2668.

The same day the Supreme Court decided the California case, it also decided a challenge to the provision of DOMA that stated that valid same-sex marriages would not be recognized for purposes of federal law. *United States v. Windsor*, 570 U.S. ___, 133 S. Ct. 2675 (2013). The Court recognized the traditional authority states have long held over matters related to marriage

Page 6 -    STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
        5099224-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

and domestic relations.  The Court found that the federal government, through DOMA, sought to injure a class of citizens that the state of New York had legislatively protected by granting them the right to marry and all of the benefits that followed from that act.  The Court concluded that the injury violated due process and equal protection because Congress failed to present adequate justification for the discriminatory treatment of married same-sex couples.  The Court's analysis will be addressed in more detail below, as it has formed the foundation for the recent same-sex marriage opinions.

Since the California Supreme Court opinion in May 2008, a steady stream of states has addressed the question of same-sex marriage in the courts and legislative bodies.  Following the decision in *Windsor*, that stream became a torrent.  As of this writing, six states have legalized same-sex marriage through state court decisions (California, Connecticut, Iowa, Massachusetts, New Jersey, New Mexico); eight states have passed legislation authorizing same-sex marriage (Delaware, Hawaii, Illinois, Minnesota, New Hampshire, New York, Rhode Island, Vermont); and three states have legalized same-sex marriage through popular vote (Maine, Maryland, Washington).

In addition, federal courts have found state bans unconstitutional in Illinois (Cook County), Kentucky, Ohio, Oklahoma, Utah, Virginia, and Texas.  *See Lee v. Orr*, No. 13-cv-8719, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014) (decision applied only to Cook County, Illinois); *Bourke v. Beshear*, No. 3:13-CV-750-H, ___ F. Supp. 2d ___, 2014 WL 556729 (W.D. Ky. Feb. 12, 2014); *Obergefell v. Wymyslo*, No. 1:13-cv-501, 2013 WL 7869139 (S.D. Ohio Dec. 23, 2013); *Bishop v. United States ex rel. Holder*, No. 04-cv-848-TCK-TLW, ___ F. Supp. 2d ___, 2014 WL 116013 (N.D. Okla. Jan. 14, 2014); *Kitchen v. Herbert*, No. 2:3-cv-217, 2013 WL 6697874 (D. Utah Dec. 20, 2013), *stay pending appeal*, ___ U.S. ___, 134 S. Ct. 893 (mem) (2014); *Bostic v. Rainey*, No. 2:13-cv-395, ___ F. Supp. 2d ___, 2014 WL 561978 (E.D. Va. Feb. 13, 2014); and *De Leon v. Perry*, No. SA-13-CA-00982-OLG, 2014 WL 715741 (W.D. Texas February 26, 2014).  A federal judge in Nevada ruled against couples challenging that

Page 7 -   STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
5099224-v1

state's same-sex marriage ban as a violation of equal protection; that ruling is now on appeal in the Ninth Circuit.  *Sevcik v. Sandoval*, 911 F. Supp. 2d 996 (D. Nev. 2012).[5]

**C.    The current legal status for same-sex couples in Oregon is uncertain and complex.**

As plaintiffs in this case have articulated, the legal changes discussed above have led to more than just differential treatment of same-sex couples and opposite-sex couples in Oregon. While Oregon has established the Registered Domestic Partnership for same-sex couples, it is clear that an RDP is not equivalent to marriage.  The differences between the two legal unions create legal uncertainty for couples, as well as limiting the rights and responsibilities they obtain by entering into the one legally sanctioned relationship available to them.  The Oregon Legislative Assembly recognized the limits of what it could grant through the RDP.  It acknowledged the constitutional prohibition on authorizing same-sex marriage and "recognize[d] that numerous distinctions will exist between these two legally recognized relationships.  The Legislative Assembly recognize[d] that the legal recognition of domestic partnerships under the laws of this state may not be effective beyond the borders of this state and cannot impact restrictions contained in federal law."  O.R.S. 106.305(7).

Not only do those limitations mean same-sex couples cannot obtain access to the federal benefits of marriage, but other differences flow from the state ban.  Because of concerns about how the federal government would treat the domestic partnerships, the legislature specifically exempted benefits related to retirement, deferred compensation, and other employment benefits that might lead to questions about tax treatment of those state programs under federal law. O.R.S. 106.340(6).  And many of the state benefits provided through marriage are controlled by federal law, which the legislature recognized it could not alter in establishing the RDP.  *See*

---

[5]  The *Sevcik* court applied rational basis scrutiny to the plaintiffs' equal protection claims and concluded that the state's interest in protecting the traditional institution of marriage and preventing "'abuse of an institution the law protects'" were valid state interests sufficient to support the state's ban on same-sex marriage.  *Sevcik*, 911 F. Supp. 2d at 1014 (internal citation omitted).  As discussed in more detail in the argument section, that level of scrutiny is no longer appropriate for claims of discrimination based on sexual orientation arising in the Ninth Circuit.

Page 8 -    STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
        5099224-v1

O.R.S. 106.340(5) ("Many of the laws of this state are intertwined with federal law, and the Legislative Assembly recognizes that it does not have the jurisdiction to control federal laws or the privileges, immunities, rights, benefits and responsibilities related to federal laws."). While federal law is changing in its recognition of same-sex marriages, there have been no changes in how it treats same-sex relationships other than legal marriage.

In addition, there are differences in who is permitted to enter into a relationship and how that relationship is established. RDPs do not require a solemnization ceremony; marriages do. O.R.S. 106.305; 106.150. Partners entering into an RDP must be at least 18 years old; marriage partners can be 17 years old with the consent of their parents or guardians and in other specified circumstances. O.R.S. 106.310(1); 106.010; 106.060. RDP partners must consent to Oregon jurisdiction for the purpose of future dissolution, annulment, legal separation, or other proceedings, regardless of future residence or domicile; no such consent is required for marriage partners. O.R.S. 106.325(4). The differences have a real impact on individuals in many areas of their lives. Couples who enter into an RDP in Oregon, but move to another jurisdiction, do not have a clear set of rights that follow with them. If there is a change in their relationship, they must return to Oregon to seek a dissolution of the RDP. Similarly, couples who may have established a civil union or domestic partnership in another jurisdiction and then moved to Oregon will face a bewildering array of legal questions about the status of their relationship and the protections provided them under Oregon law.

The differences also have practical and financial implications beyond the lack of access to federal benefits tied to marriage. Simply filling out tax forms becomes a complex process for same-sex couples in an RDP. For purposes of Oregon law, they are treated as married; for purposes of federal tax law, they are single. In Oregon, persons in an RDP file as single under federal law, and then create a hypothetical or "as-if" federal return that uses a married filing status. This as-if return is then used as the basis for calculating their Oregon taxes. *See* Oregon Department of Revenue, *Registered Domestic Partners in Oregon* (last accessed Feb. 27, 2014),

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

http://www.oregon.gov/dor/pertax/pages/rdp.aspx.  If one member of the couple provides health

benefits for the other, the value of those benefits is treated as imputed income for federal tax

purposes, but not for state tax purposes; more adjustments must be made.  *See* 26 C.F.R.

§ 1.106-1 (gross income for federal tax purposes does not include contributions by employer to

accident or health plan on behalf of employee, spouse, or dependents); O.A.R. 101-015-0026 (for

plans subject to Public Employees' Benefit Board, "[a]n imputed value for the fair market value

of the domestic partner and domestic partner's dependent children's insurance premium will be

added to the eligible employee's taxable wages."); O.A.R. 150-316.007-(B)(1) and (2) ("The

imputed value of certain fringe benefits [including health insurance, tuition payments, and tuition

reduction programs] provided by an employer * * * to an employee's domestic partner is exempt

from Oregon income tax if those benefits are exempt from federal income tax for married

individuals.").

For a same-sex couple who resides in Oregon and has entered into a legal marriage in

another jurisdiction, there are even greater layers of confusion about the legal status of the

relationship.  Oregon Executive Branch agencies will recognize those marriages as valid for

purposes of administering Oregon law.  *See* Declaration of Sheila Potter, ¶ 2, Exhibit 1; *see also*

O.A.R. 105-010-0018 (in the administration of state laws, all Oregon agencies must recognize

the marriages of same-sex couples validly performed in other jurisdictions to the same extent that

they recognize other marriages validly performed in other jurisdictions).  But it is unclear

whether those marriages will be recognized by the judicial branch, local governments, or private

parties, including employers.  The state defendants hope that this litigation will provide clarity on

many of these confusing questions facing Oregonians.

### III.   STATEMENT OF MATERIAL FACTS

There are no material facts in dispute in these cases.  The state defendants do not dispute

that the individual plaintiffs are in committed relationships, that the unmarried plaintiffs wish to

be married, and that they are not allowed to marry their partners in Oregon.

Page 10 -   STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
   5099224-v1

There are some minor disagreements over non-material factual assertions by some plaintiffs, but none would prevent a decision here as a matter of law.  For example, plaintiffs Griesar and Duehmig, who were legally married in Canada, claim that they are "unable to file state tax returns as married individuals."  (*See* Geiger Plaintiffs' First Am. Mem. in Supp. of Mot. for Summ. J. at 3.)  They actually can.  The Oregon Department of Revenue recognizes marriages of same-sex couples from other jurisdictions, including Canada, and it would be proper for these plaintiffs to file their state tax returns as married individuals.  *See* Oregon Department of Revenue, *Oregon Tax Information for Same-Sex Married Couples* (last accessed March 11, 2014), http://www.oregon.gov/dor/PERTAX/Pages/same-sex.aspx (the Oregon Department of Revenue website FAQs for same-sex couples married in another jurisdiction); O.A.R. 105-010-0018.  But the few areas of disagreement are inconsequential.  There are no material fact disputes for this Court to resolve before addressing the merits of the claims.

The key facts for the Court's consideration are found in state law, including opinions from the state appellate courts, statutes, and administrative rules.  In addition, this Court may consider the multitude of federal benefits linked to marriage.  *See Garden State Equality v. Dow*, 82 A.3d 336, 346-48 (N.J. Super. Ct.), *cert. granted*, 216 N.J. 1, *stay denied*, 216 N.J. 314 (2013) (describing many of those federal provisions); *see also* letter from Dayna K. Shah, Associate General Counsel, U.S. General Accounting Office, to Bill Frist, Majority Leader, U.S. Senate (January 23, 2004), http://www.gao.gov/new.items/d04353r.pdf.  Finally, the state defendants encourage the Court to consider the facts found by the District Court in the *Perry* litigation to the extent they describe the effect of a same-sex marriage ban on marriage, government, and same-sex families.  *See* 704 F. Supp. 2d at 956-91.[6]

---

[6]   Only one other case challenging a same-sex marriage ban has included the kind of evidentiary hearing conducted in the California case.  In *DeBoer v. Snyder*, 12-CV-10285 (E.D. Mich.), the District Court in Michigan conducted an evidentiary hearing from February 25 through March 7, 2014.  The court is expected to issue factual findings and a ruling the week of March 17.

Page 11 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Here, the parties agree that the dispute is a legal one.

## V.    ARGUMENT

**A.    Plaintiffs' Equal Protection Claim requires this Court to address whether the state's same-sex marriage ban impermissibly discriminates on the basis of sexual orientation.**

Plaintiffs argue that the state's ban on same-sex marriage violates their rights under the federal constitution by denying same-sex couples the equal protection of laws.[7]  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause requires Oregon to provide similar treatment for all persons similarly situated.  *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) *abrogated on other grounds as noted by Williams v. City of Medford*, No. 09-3026-CL, 2011 WL 5842768, at *3 (D. Or. Oct. 19, 2011).  Laws may disadvantage a group, but only if the differential treatment bears "a rational relationship to a legitimate governmental purpose." *Romer v. Evans*, 517 U.S. 620, 635 (1996).

### 1.    Plaintiffs' claims under the Equal Protection Clause are subject to heightened scrutiny.

An Equal Protection Clause analysis begins with the appropriate level of judicial scrutiny.  Claims are subject to one of three levels of scrutiny depending on how the state is classifying people into two or more groups.  *Clark v. Jeter*, 486 U.S. 456, 461 (1988).  "Strict scrutiny" apples to suspect classifications based on race, alienage, or national origin.  *City of Cleburne*, 473 U.S. at 440.  A state must show the challenged provision is narrowly tailored to further a compelling governmental interest.  *Grutter v. Bollinger*, 539 U.S. 306, 326 (2006).

---

[7]  Plaintiffs have also raised the issue of recognizing same-sex marriages performed in other jurisdictions.  As noted above, Oregon state agencies do recognize those marriages as valid for purposes of Oregon law.  (*See* Potter Ex. 1.)  To the extent that others who are not parties to this case may not recognize those marriages as valid, the state defendants would agree that there is no justification to support a refusal to recognize those marriages as valid.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"Intermediate" or "heightened scrutiny" applies to quasi-suspect, discriminatory classifications based on illegitimacy and gender. *Cleburne*, 473 U.S. at 441. The state must show the challenged provision is substantially related to a sufficiently important governmental interest. *Id.* All other classifications are subject to "rational basis review," under which the state must simply articulate a rational relationship between the differential treatment and some legitimate governmental purpose. *Heller v. Doe*, 509 U.S. 312, 319 (1993).

In the past, claims of discrimination based on sexual orientation were subject only to rational basis review in the Ninth Circuit. *See*, *e.g.*, *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990); *Philips v. Perry*, 106 F.3d 1420, 1425 (9th Cir. 1997). In 2008, the Ninth Circuit determined that the Supreme Court's *Lawrence* decision required courts to apply a heightened review for substantive due process claims of discrimination on the basis of sexual orientation. *See Witt v. Dep't of the Air Force*, 527 F.3d 806, 821-22 (9th Cir. 2008). But *Lawrence* had not addressed the analysis for equal protection claims, and the *Witt* court continued to apply rational basis scrutiny to equal protection claims. 527 F.3d at 821.

Now, following the Supreme Court's decision in *Windsor*, the Ninth Circuit has concluded that discrimination based on sexual orientation is subject to heightened scrutiny for equal protection claims as well. *See SmithKline Beecham Corp. v. Abbott Labs*, 740 F.3d 471, 481 (9th Cir. 2014). Noting that the Supreme Court did not expressly identify the level of scrutiny it applied in *Windsor*, the Ninth Circuit carefully analyzed the opinion to identify what the Court actually did. "In its words and its deed, *Windsor* established a level of scrutiny for classifications based on sexual orientation that is unquestionably higher than rational basis review. In other words, *Windsor* requires that heightened scrutiny be applied to equal protection claims involving sexual orientation." *Id.*

In so concluding, the *SmithKline* court cited the *Windsor* Court's review of DOMA's actual purpose and effect, rather than possible hypothetical justifications; *Windsor*'s requirement

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

of a "legitimate purpose" to overcome the inequality created by DOMA; and the absence of the

strong deference that characterizes rational basis review:

> "In its parting sentences, *Windsor* explicitly announces its
> balancing of the government's interest against the harm or injury to
> gays and lesbians: 'The federal statute is invalid, for no legitimate
> purpose *overcomes* the purpose and effect to disparage and injure
> those whom the State, by its marriage laws, sought to protect in
> personhood and dignity.' 133 S. Ct. at 2696 (emphasis added).
> *Windsor*'s balancing is not the work of rational basis review."

*SmithKline*, 740 F.3d at 483 (citing 133 S. Ct. at 2696).

While the Ninth Circuit's opinion in *SmithKline* is not yet final,[8] its reasoning is sound

and the state defendants believe that the reasoning will survive any further review should the

issue be presented to the Supreme Court.  If the ruling stands, this Court should apply heightened

scrutiny to evaluate plaintiffs' equal protection claims.[9]  Under that heightened scrutiny,

"*Windsor* requires that when state action discriminates on the basis of sexual orientation, we

must examine its actual purposes and carefully consider the resulting inequality to ensure that

our most fundamental institutions neither send nor reinforce messages of stigma or second-class

status."  *SmithKline*, 740 F.3d at 483.  Oregon's marriage ban cannot survive that analysis when

it is apparent that the reason for the ban was to enshrine in the state constitution a belief that

same-sex couples are disfavored.

Alternatively, this Court could take the approach taken by other courts and first consider

whether plaintiffs' claims survive the more deferential rational basis level of review.  If there is

no rational basis to justify the same-sex marriage ban, this Court need not determine whether

---

[8]   The time has passed for Abbott Laboratories to seek *en banc* review in the Ninth Circuit and
the company has said it will not seek review in the United States Supreme Court, but no mandate
has issued from the appellate court.

[9]   The Rummell plaintiffs claim discrimination based not only on sexual orientation, but on
gender grounds.  Amended Complaint at ¶¶ 92-97.  The latter would require heightened scrutiny
review.  Because of the position the state defendants take in this case—that the same-sex
marriage ban cannot survive even rational basis review—this Court need not address whether the
classification at issue is one based on sexual orientation or one based on gender.

Page 14 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
    5099224-v1

heightened scrutiny applies to the claims. *See De Leon*, 2014 WL 715741, at *24 (the Texas District Court found the heightened scrutiny arguments "compelling", but concluded it was not necessary to apply heightened scrutiny because the Texas ban failed "even under the most deferential rational basis level of review"). Such an analysis would also shield this Court's judgment from question should there ultimately be a determination by the Supreme Court that rational basis review is appropriate for claims of discrimination based on sexual orientation.

**2.    Even a rational-basis review would require Oregon's same-sex marriage ban to further some legitimate governmental interest.**

The level of scrutiny should not be decisive in this matter because Oregon's marriage ban would not survive even a rational basis review. A law must be upheld under rational basis review "if any state of facts reasonably may be conceived to justify" the classifications imposed by the law. *McGowan v. Maryland*, 366 U.S. 420, 426 (1961). A law fails to satisfy rational basis review if there is no possible basis for the differential treatment that is "narrow enough in scope and grounded in a sufficient factual context" to demonstrate the rational basis for the discrimination. *See Romer*, 517 U.S. at 632. "Even in the ordinary equal protection case calling for the most deferential of standards, [the Court] insist[s] on knowing the relation between the classification adopted and the object to be attained."

That object to be attained also must be a "legitimate state interest." *Cleburne*, 473 U.S. at 446-47. And even when a law is justified by an ostensibly legitimate purpose, "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Id.*

At the most basic level, by requiring that classifications be justified by an independent and legitimate purpose, the Equal Protection Clause prohibits classifications from being drawn for "the purpose of disadvantaging the group burdened by the law." *Romer*, 517 U.S. at 633. Thus, if this Court applies rational basis review, it must consider whether there is any legitimate justification for Oregon's constitutional ban on same-sex marriage that is more than animus or a desire to harm an unpopular group.

Page 15 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

The justifications offered to support the enactment of the ban—in newspapers and in the Official Voters' Pamphlet—largely mirror those offered by other states: (1) protecting traditional marriage and (2) protecting children. For the reasons outlined in the sections below, those justifications do not amount to a rational basis for the marriage ban.

### 3. Protecting traditional marriage is not a rational justification for the ban on same-sex marriage.

Just as the proponents for Oregon's constitutional ban on same-sex marriage touted the desire to protect a traditional view of marriage, so have others defending similar bans. The difficulty with that argument is that tradition or duration of a particular practice does not shield a discriminatory action from judicial scrutiny. "Ancient lineage of a legal concept does not give it immunity from attack for lacking a rational basis." *Heller*, 509 U.S. at 326-27; *see also In re Marriage Cases*, 183 P.3d at 853-54 ("[E]ven the most familiar and generally accepted of social practices and traditions often mask an unfairness and inequality that frequently is not recognized or appreciated by those not directly harmed by those practices or traditions."). As the Supreme Court has explained, "times can blind us to certain truths and later generations can see that laws once thought necessary and proper in fact serve only to oppress." *Lawrence*, 539 U.S. at 579; *see also id.* at 602 (Scalia, J., dissenting) ("'Preserving the traditional institution of marriage . . . is just a kinder way of describing the State's moral disapproval of same-sex couples," which, in turn, is not a legitimate reason); *Williams v. Illinois*, 399 U.S. 235, 239 (1970) ("Neither the antiquity of a practice nor the fact of steadfast legislative and judicial adherence to it through the centuries insulates it from constitutional attack.").

And the vast majority of trial courts to address this purported justification for same-sex marriage bans have rejected it based on that well-established Supreme Court jurisprudence. *See Perry*, 704 F. Supp. 2d at 998 ("[T]he state must have an interest apart from the fact of the tradition itself."); *Golinski v. Ofc. of Pers. Mgmt.*, 824 F. Supp. 2d 968, 998 (N.D. Cal. 2012) ("[T]he argument that the definition of marriage should remain the same for the definition's sake is a circular argument, not a rational justification."); *Bostic*, 2014 WL 561978, at *15 (noting that

Page 16 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
       5099224-v1

"tradition alone cannot justify denying same-sex couples the right to marry any more than it could justify Virginia's ban on interracial marriage."); *Bourke*, 2014 WL 556729, at *7 (holding that tradition cannot alone justify the infringement on individual liberties).

The primary exception appears to be in Nevada, where the District Court recognized the above limitations on that argument, but nevertheless found that the state's proffered justification met the rational basis test. That court looked at Justice O'Connor's concurring opinion in *Lawrence,* in which she suggested the possibility of justifications to support a traditional view of marriage limited to opposite-sex partners:

> That [the Texas anti-sodomy law] as applied to private, consensual conduct is unconstitutional under the Equal Protection Clause does not mean that other laws distinguishing between heterosexuals and homosexuals would similarly fail under rational basis review. Texas cannot assert any legitimate state interest here, such as national security or preserving the traditional institution of marriage. Unlike the moral disapproval of same-sex relations—the asserted state interest in this case—other reasons exist to promote the institution of marriage beyond mere moral disapproval of an excluded group.

*Lawrence*, 539 U.S. at 585 (O'Connor, J., concurring in the judgment).

The Nevada court took that statement as a strong implication that "the preservation of the traditional institution of marriage should be considered a legitimate state interest rationally related to prohibiting same-sex marriage." *Sevcik*, 911 F. Supp. 2d at 1015. From there, the Nevada court noted that the state offered same-sex couples "the vast majority of the civil rights and responsibilities of marriage" through its domestic partnership laws. *Id.* The court concluded, "[t]he State has not crossed the constitutional line by maintaining minor differences in civil rights and responsibilities that are not themselves fundamental rights comprising the constitutional component of the right to marriage, or by reserving the label of 'marriage' for one-man—one-woman couples in a culturally and historically accurate way." *Id.* The analysis is perplexing and seemingly circular, and it fails to account for any of the Supreme Court cases rejecting tradition as an answer to a constitutional challenge.

Page 17 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Under rational basis review, the state defendants concede that holding onto a traditional definition of marriage simply for the sake of holding onto tradition is inadequate.  If there is a justification, the Court must look elsewhere.

### 4. The state's interest in protecting families does not justify a same-sex marriage ban that injures the children in same-sex families and has no effect on opposite-sex families.

The remaining arguments generally made in support of a same-sex marriage ban, including those presented to Oregonians in support of Measure 36, all center on the stability of families.  *See, e.g.,* [Michigan] State Defs.' Resp. in Opp'n to Pls.' Mot. for Summ. J., *DeBoer*, No. 12-cv-10285 (Sept 9, 2013) ("Indeed, it was this State's desire to promote procreation in a manner to encourage stable families that motivated the passage of Michigan's Marriage Amendment.").

Family stability is a legitimate state interest, but one that is not furthered by limiting marriage to opposite-sex couples, for at least four reasons: (1) Oregon does not tie marriage rights or inducements to procreation; (2) Oregon has never limited its legal protections to only the biological children of opposite-sex couples; (3) permitting same-sex couples to marry does not reduce the likelihood that opposite-sex couples will enter into stable relationships; and (4) the same-sex marriage ban harms the children in those families.

### a. In Oregon, marriage and the rights that accompany marriage are not narrowly tied to procreation or children.

Marriage is not only about procreation.  "[M]arriage is more than a routine classification for purposes of certain statutory benefits" and is "a far-reaching legal acknowledgment of the intimate relationship between two people." *Windsor*, 133 S. Ct. at 2692.  The Supreme Court in *Griswold* recognized that marriage embraces the right not to procreate, and that marriage has far broader meaning and purpose than mere sexual reproduction:

> Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or

Page 18 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
    5099224-v1

> social projects. Yet it is an association for as noble a purpose as
> any involved in our prior decisions.

*Griswold*, 381 U.S. 479, 486 (1965).

The Supreme Court in *Turner v. Safley* discussed the legal, economic, and social benefits of marriage, explaining that "marital status often is a precondition to the receipt of government benefits (*e.g.*, Social Security benefits), property rights (*e.g.*, tenancy by the entirety, inheritance rights), and other, less tangible benefits (*e.g.*, legitimation of children born out of wedlock)." *Turner*, 482 U.S. 78, 96 (1987), *superseded by statute as noted by Rhinehart v. Scutt*, No. 11-CV-11254, 2012 WL 175420 (E.D. Mich. January 22, 2012), *aff'd*, 509 Fed. Appx. 510 (6th Cir. 2013). The tangible benefits to couples—with and without children—are real and cannot be ignored.

And legally, Oregon's interest in marriage cannot be tied solely to procreation, because the right to marry has never been conditioned on a couple's ability or interest in producing children. Oregon, like all states, allows opposite-sex couples who will never procreate by accident or otherwise to enter into marriages. The Texas District Court expressed it well:

> The notion that same-sex marriage will encourage responsible
> procreation assumes that heterosexual marriage is 'naturally
> procreative.' However, procreation is not and has never been a
> qualification for marriage. *Lawrence*, 539 U.S. at 605 (Scalia, J.,
> dissenting) ("[W]hat justification could there possibly be for
> denying the benefits of marriage to homosexual couples exercising
> 'the liberty protected by the Constitution'? Surely not the
> encouragement of procreation since the sterile and elderly are
> allowed to marry.").

*De Leon*, 2014 WL 715741, at *27; *see also In re Marriage Cases*, 183 P.3d at 432 ("[A]lthough promoting and facilitating a stable environment for the procreation and raising of children is unquestionably one of the vitally important purposes underlying the institution of marriage and the constitutional right to marry . . . this right is not confined to, or restrictively defined by, that purpose alone.").

Page 19 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Oregon has an interest in promoting solid relationships and families, but the state's interest in marriage is much broader than that and encompasses couples who will not have children. Support for opposite-sex procreation is not a rational basis for refusing marriage to same-sex couples.

> **b.    The procreative potential of opposite-sex couples does not justify Oregon's ban on same-sex marriage, because Oregon gives all the same protections to non-biological children and families in every other legal context.**

Other states have argued that limiting marriage to opposite-sex couples furthers the state's interests in responsible procreation and in creating stable family environments. One of the most thorough articulations of this argument can be found in Oklahoma's recent brief in the 10th Circuit Court of Appeals; that case is set for oral argument on April 17, 2014. Order at 2, *Bishop v. Barton*, Nos. 14-5003, 14-5006 (10th Cir. Jan. 29, 2014). Oklahoma argues that marriage as a "bedrock social institution" "has always existed to channel the presumptive procreative potential of man-woman relationships into committed unions for the benefit of children and society." Appellant's Principal Br. at 1, *Bishop v. Barton*, Nos. 14-5003, 14-5006 (10th Cir. Feb. 24, 2014). This argument points not only to the traditional history of opposite-sex couples being parents, but also to something more specific, which may be referred to as the "accidental procreation" argument.

As an example of this argument, Oklahoma summarizes its interests in marriage as furthering "at least three compelling interests: (1) providing stability to the types of relationships that result in unplanned pregnancies and thereby avoiding or diminishing the negative outcomes often associated with unintended children; (2) encouraging the rearing of children by both their mother and their father; and (3) encouraging men to commit to the mothers of their children and jointly raise the children they beget." *See id.* at 16-17. Under this theory, the state could rationally choose not to give the same status to couples who do not "produce children naturally,

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

produce children unintentionally, and provide children with their own mother and father." *Id.* at 17.[10]

For that justification to provide a rational basis to support a same-sex marriage ban here, though, Oregon's interest in marriage and stable families would have to rest almost exclusively with children being raised by their biological parents. And if Oregon's interest did, in fact, rest solely on the importance of biology in child-rearing, that would presumably be reflected in Oregon's policies relating to families established through any other means—adopted children, children raised by step-parents, children raised by single parents or extended families, and children conceived through surrogates or artificial insemination.

But all of those families are of concern to Oregon. Oregon's policies recognize and value all types of families. Even under rational basis review, any speculative justification must still be consistent with what the state actually does. A few examples should suffice to establish that Oregon's policy is to protect all children, and not only those raised by their biological parents.

In Oregon, children conceived by artificial insemination are treated as natural children under the law. *See* O.R.S. 109.243 ("The relationship, rights and obligation between a child born as a result of artificial insemination and the mother's husband shall be the same to all legal intents and purposes as if the child had been naturally and legitimately conceived by the mother and the mother's husband if the husband consented to the performance of artificial insemination."). The statute applies equally "when the same-sex partner of the biological mother consented to the artificial insemination." *Shineovich and Kemp*, 229 Or. App. 670, 687, *rev den*, 347 Or. 365 (2009).

Similarly, Oregon law makes it clear that adopted children have the same rights and are entitled to the same protections as the biological children of opposite-sex parents. *See* O.R.S. 109.041 (establishes the same "relationship, rights and obligations" between an adopted child and his adopted parents, including a same-sex partner of a biological parent); O.R.S. 109.050

---

[10] Oklahoma's second and third justifications are addressed in subsection c, *infra*.

Page 21 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

("An adopted child bears the same relation to adoptive parents and their kindred in every respect pertaining to the relation of parent and child as the adopted child would if the adopted child were the natural child of such parents."). And Oregon treats a child the same whether the child's parents were single or married at the time of birth. *See* O.R.S. 109.060 ("The legal status and legal relationships and the rights and obligations between a person and the descendants of the person, and between a person and parents of the person, their descendants and kindred, are the same for all persons, whether or not the parents have been married.").

Finally, Oregon is willing to place some of its most vulnerable children—those needing foster care or adoption—with stable, responsible adults whether they are single, married, or in domestic partnerships. The state expressly does not consider sexual orientation in making those placements. (*See* Potter Dec., ¶ 4.)

Courts that have examined evidence on the issue have agreed with Oregon's policy determination that same-sex couples are capable parents. *See De Leon,* 2014 WL 715741, at *26-27 ("The Court finds same-sex couples can be just as responsible for a child's welfare as the countless heterosexual couples across the nation."); *Perry,* 704 F. Supp. 2d at 980 ("Children raised by gay or lesbian parents are as likely as children raised by heterosexual parents to be healthy, successful and well-adjusted); *Varnum v. Brien*, 763 N.W.2d 862, 899 (Iowa 2009) ("Plaintiffs presented an abundance of evidence and research, confirmed by our independent research, supporting the proposition that the interests of children are served equally by same-sex parents and opposite-sex parents."); *Golinski*, 824 F. Supp. 2d at 991 ("More than thirty years of scholarship resulting in over fifty peer-reviewed empirical reports have overwhelmingly demonstrated that children raised by same-sex parents are as likely to be emotionally healthy, and educationally and socially successful as those raised by opposite-sex parents.").

And, in any event, the *Windsor* court appears to have foreclosed any argument that only biological families deserve protection. In defending the constitutionality of DOMA, the Bipartisan Legal Advisory Group ("BLAG") argued that the statute was "a means to address the

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

tendency of opposite-sex relationships to produce unintended and unplanned offspring. There is nothing irrational about declining to extend marriage to same-sex relationships that, whatever their other similarities to opposite-sex relationships, simply do not share that same tendency." *See* Merits Brief of Bipartisan Legal Advisory Group at \*21, *Windsor*, 133 S. Ct. 2675 (January 22, 2013) (No. 12-307), 2013 WL 267026. But the Supreme Court rejected all of BLAG's rationalizations and found that "[t]he principal purpose [of DOMA] [was] to impose inequality," and "no legitimate purpose overcomes the purpose and effect to disparage and injure" same-sex couples and their families. *Windsor*, 133 S. Ct at 2694, 2696.

Thus, whatever justifications other states may offer for a same-sex marriage ban, the ban in Oregon cannot be justified in terms of a state policy that views marriage as the mechanism for having children raised only by their biological parents.

### c.   Oregon's interest in stable opposite-sex couples would not be affected by same-sex marriages and therefore does not provide any justification for the ban.

There is no evidence or even rational speculation that permitting same-sex couples to marry will in any way reduce the desire of opposite-sex couples to marry and create stable families. *See Perry*, 704 F. Supp. at 972 ("Permitting same-sex couples to marry will not affect the number of opposite-sex couples who marry, divorce, cohabit, have children outside of marriage or otherwise affect the stability of opposite-sex marriages."); *De Leon*, 2014 WL 715741, at \*28 ("Same-sex marriage does not make it more or less likely that heterosexuals will marry and engage in activities that can lead to procreation."); *Griego v. Oliver*, 316 P.3d 865, 886 (N.M. 2013) ("we fail to see how forbidding same-gender marriages will result in the marriages of more opposite-gender couples for the purpose of procreating, or how authorizing same-gender marriages will result in the marriages of fewer opposite-gender couples for the purpose of procreating."); *Bishop*, 2014 WL 116013, at \*29 ("Marriage is incentivized for naturally procreative couples to precisely the same extent regardless of whether same-sex couples (or other non-procreative couples) are included."); *Kitchen*, 2013 WL 6697874, at \*25

Page 23 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
5099224-v1

("[I]t defies reason to conclude that allowing same-sex couples to marry will diminish the example that married opposite-sex couples set for their unmarried counterparts. Both opposite-sex and same-sex couples model the formation of committed, exclusive relationships, and both establish families based on mutual love and support.").

As a result, a ban on same-sex marriage does not in itself encourage "the rearing of children by both their mother and their father," or encourage "men to commit to the mothers of their children and jointly raise the children they beget." (*See* Oklahoma's Principal Brief at 16-17, *Bishop*, Nos. 14-5003, 14-5006.) And striking down the ban would not discourage men from committing to their families or from raising their biological children.

Again, any purported justification for Oregon's same-sex marriage ban that rests on speculation about the effect of that ban on opposite-sex marriages simply will not withstand even rational basis review.

        **d.**    **Not only does the same-sex marriage ban fail to further the state's interest in promoting stable families, it actually harms children.**

Finally, there is strong evidence that the same-sex marriage ban actually harms many of Oregon's children, those raised by same-sex parents who want the protections of marriage for their family. One report analyzed U.S. Census Bureau data to find that, in 2005, there were a reported 10,899 same-sex couples living in Oregon, throughout the state. *See* Potter Dec. ¶ 3, Ex. 2, at 1. The report states that, in 2005, about 19% of the same-sex couples in Oregon were raising children under the age of 18. *See id.* As of 2005, an estimated 3,207 of Oregon's children were living in households headed by same-sex couples. *See id.* at 2. More than 5% of Oregon's adopted children (or 1,232 children) were living with a lesbian or gay parent in that year. *See id.*

Like the DOMA statute invalidated in *Windsor*, Oregon's prohibition on same-sex marriage can serve only to "humiliate" the "children now being raised by same-sex couples" and "make[] it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives."

Page 24 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

*Windsor*, 133 S. Ct. at 2694.  *See De Leon*, 2014 WL 715741, at \*25 (concern about children is a legitimate state interest, but the ban does not further the interest; it causes "needless stigmatization and humiliation for children being raised by the loving same-sex couples being targeted."); *Obergefell*, 2013 WL 7869139, at \*20 (the only effect that the marriage recognition bans have on children's well-being is harming the children of same-sex couples who are denied the protection and stability of having parents who are legally married); *Golinski*, 824 F. Supp. 2d at 992 ("The denial of recognition and withholding of marital benefits to same-sex couples does nothing to support opposite-sex parents, but rather merely serves to endanger children of same-sex parents."); *Pedersen v. Office of Personnel Mgmt.*, 881 F. Supp. 2d 294, 336-37 (D. Conn. 2012) (finding that the denial of marriage to same-sex parents "in fact leads to a significant unintended and untoward consequence by limiting the resources, protections, and benefits available to children of same-sex parents."); *Gill v. Office of Personnel Mgmt.*, 699 F. Supp.2d 374, 378 (D. Mass. 2010) (concluding that Section 3 of DOMA did nothing to help children of opposite-sex parents but prevented children of same-sex couples from enjoying the advantages flowing from a stable family structure).

Because the same-sex marriage ban does not further the state's interest in protecting and promoting families and actually damages that interest, there is no rational justification for maintaining the ban.  In short, the state defendants have considered the justifications offered in other cases as well as contemplated whether any other justification might be sufficient to support Oregon's same-sex marriage ban and have found nothing to present to this Court.

**B.     Plaintiffs' due process claim requires this Court to address whether the state ban on same-sex marriage improperly restricts the fundamental right to marry.**

The state defendants have carefully considered whether any legitimate governmental interest would provide a basis on which to defendant the state's marriage ban in the face of plaintiffs' due process claims.  For the same reasons set out above in addressing the equal protection claims, the state defendants have concluded that there is no way to responsibly advocate that the state's ban should survive this Court's review.

Page 25 -   STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

In many ways, the analysis for plaintiffs' equal protection claim overlaps with the analysis for plaintiffs' due process claim. While they start from different places, they eventually lead to the same question. Where the starting point for the equal protection analysis is whether the state is treating individuals differently based on sexual orientation and without sufficient justification, the starting point for the due process analysis is whether plaintiffs' claims implicate a fundamental right and the nature of that right. *See Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992). From there, both claims look to the state's justification for either treating groups differently or interfering with a fundamental right.

Marriage is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment. "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12 (1967); *accord Zablocki v. Redhail*, 434 U.S. 374, 384 (1978) ("[D]ecisions of this Court confirm that the right to marry is of fundamental importance for all individuals.").[11]

While marriage is a fundamental right of the individual, the state has a legitimate interest in regulating and promoting marriage. Oregon has exercised control over marriage contracts from the very earliest days of statehood. *See Rugh v. Ottenheimer*, 6 Or. 231, 237 (1877) ("The marriage relation, affecting the whole public, and being an institution of society, affecting more deeply than any other the foundations of social order and public morals, has always been under the control of the legislature."); *see also Dakin v. Dakin*, 197 Or. 69, 72 (1952) (describing marriage as a matter "in which the state is deeply concerned and over which it exercises a jealous

---

[11] Among the cases addressing marriage as a fundamental right protected by the Fourteenth Amendment are *Griswold*, 381 U.S. at 486 (marriage involves "a right of privacy older than the Bill of Rights" and is a "coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred"); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942), *overruled in part on other grounds as noted in Sakotas v. W.C.A.B.*, 80 Cal. App. 4th 262, 272 (2000) (marriage is one of the basic civil rights of man fundamental to our existence and survival); s*ee also Kaahumanu v. State of Hawaii*, 682 F. 3d 789, 799, 810 (9th Cir. 2012) (holding that the right to marry is a fundamental right and "one of the basic civil rights of man, fundamental to our very existence and survival." (*quoting Loving*, 388 U.S. at 12)); *In re Marriage of McGinley*, 172 Or. App. 717, 731, *rev den*, 332 Or. 305 (2001) ("[I]t is well established that the right to marry is fundamental[.]").

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

dominion"). But the federal constitution imposes limits on Oregon's ability to regulate marriage and the state cannot simply disagree with the choice of the individual about who to marry. *Hodgson v. Minnesota*, 497 U.S. 417, 435 (1990) ("[T]he regulation of constitutionally protected decisions, such as where a person shall reside or whom he or she shall marry, must be predicated on legitimate state concerns other than disagreement with the choice the individual has made."); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984) (the federal constitution "undoubtedly imposes constraints on the state's power to control the selection of one's spouse").

Because marriage is a fundamental right, this Court's review of a state law that "significantly interferes" with that right is through a "critical examination" and not for whether a mere "rational basis" supports the state law. *See Zablocki*, 434 U.S. at 383 (striking down requirement that non-custodial parents paying child support seek court approval before marrying); *Boddie v. Connecticut*, 401 U.S. 371, 376 (1971) (holding that a divorce could not be denied to an indigent who was unable to afford the filing fees). While not all state laws regulating the right to marry rise to the level of "significant interference" that warrant the higher judicial scrutiny, the state does not contest that a law prohibiting an individual from marrying the partner of his or her choice is entitled to higher scrutiny.[12] Heightened scrutiny also applies for substantive due process matters dealing with sexual orientation. *Witt*, 527 F.3d at 816-19.

The greater scrutiny required here means Oregon's constitutional ban on same-sex marriage cannot be upheld unless it is justified by "compelling state interests" and is "narrowly drawn to express only those interests." *Carey v. Population Servs. Int'l*, 431 U.S. 678, 686 (1977); *accord Zablocki*, 434 U.S. at 388 ("When a statutory classification significantly

---

[12] One court in the Sixth Circuit recently ruled that intermediate scrutiny applies only to laws that impinge on the right to recognition of a same-sex marriage from another jurisdiction, as distinguished from the right to enter into a same-sex marriage. *Obergefell*, 2013 WL 7869139, at *18-21. The court held that Ohio, which bans same-sex marriage, violated the Fourteenth Amendment by refusing to recognize on Ohio death certificates that the decedent had been married to a same-sex spouse in a state where the marriage was lawful. *Id*. at *27-28. The legal standard proved irrelevant, though, as the court evaluated conceivable justifications for Ohio's law and concluded that none satisfied even the rational basis test. Id. at *59-72.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests.").

In other states where parties have endeavored to defend bans similar to the Oregon constitutional provision, they have largely asserted two arguments. First, they have attempted to categorize the right at issue as something other than—and less protected than—the right to marriage. Second, they have argued that states have a legitimate interest in upholding a traditional definition of marriage. Neither argument appears to offer the compelling justification for the state's ban on same-sex marriage which would be required to satisfy the requirements of the Due Process Clause.

### 1. The fundamental right at issue is the "right to marry" and not some newly minted "right to same-sex marriage" with fewer protections under the federal constitution.

As is often the case, how the precise issue is framed can determine the outcome in litigation. Other states have attempted to uphold bans on same-sex marriage by framing the issue as a "right to same-sex marriage" rather than the traditional "right to marriage." Those attempts have been unsuccessful, but they may be helpful for this Court to consider.

In Texas, the defendants urged the court to construe the right at issue as a "new right to same-sex marriage" as opposed to the existing "right to marry." *De Leon*, 2014 WL 715741, at *35. The District Court rejected that argument based on the Supreme Court's rejection of the analogous argument in *Loving*. "Instead of declaring a new right to interracial marriage, the Court held that individuals could not be restricted from exercising their 'existing' right to marry on account of their chosen partner." *Id.* at *35 (citing *Loving*, 388 U.S. at 12).

The same argument was presented to the District Court in Utah, again without success. There, the court concluded "The alleged right to same-sex marriage that the State claims Plaintiffs are seeking is simply the same right that is currently enjoyed by heterosexual individuals: the right to make a public commitment to form an exclusive relationship and create a

Page 28 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
5099224-v1

family with a partner with whom the person shares an intimate and sustaining emotional bond." *Kitchen*, 2013 WL 6697874, at *16.

Similarly, the Virginia trial court determined that the right at issue in the challenge to that state's ban on same-sex marriage was the right to marriage and not a new right to same-sex marriage. "Plaintiffs ask for nothing more than to exercise a right that is enjoyed by the vast majority of . . . adult citizens." *Bostic,* 2014 WL 561978, at *12.

In this case, plaintiffs seek the same right to marry that the state offers opposite-sex couples and not a right to any newly invented form of marriage. Given that, this Court should apply heightened scrutiny to determine whether the Oregon ban on same-sex marriage can be justified on any grounds.

> **2.    Any interest in upholding a traditional definition of marriage limited to opposite-sex couples will fail to satisfy heightened scrutiny of Oregon's same-sex marriage ban.**

If this Court determines that the right at issue is the fundamental right to marriage and not some newly fashioned right to same-sex marriage, then the rest of the analysis is fairly straightforward. Other states have argued that they had a legitimate interest in upholding a traditional definition of marriage, but the Supreme Court has largely foreclosed that line of argument. Oregon's prohibition on same-sex marriage cannot be defended on the theory that only "traditional" marriage is "fundamental" and the state has an interest in supporting that traditional definition of marriage. The nearly identical argument was rejected in *Loving*, where the Court struck down Virginia's ban on interracial marriage despite it having been in effect since "the colonial period." *Loving*, 388 U.S. at 6. *Loving* makes clear that the Fourteenth Amendment protects the fundamental right to marry even if the way in which it is practiced would have astonished the framers. The Court made that point clear in *Casey*, 505 U.S. at 847-48, relying specifically on *Loving*:

> It is . . . tempting . . . to suppose that the Due Process Clause
> protects only those practices, defined at the most specific level,
> that were protected against government interference . . . when the

Page 29 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

> Fourteenth Amendment was ratified. *See Michael H. v. Gerald D.*,
> 491 U.S. 110, 127-128, n.6 (1989) (opinion of SCALIA, J.). But
> such a view would be inconsistent with our law . . . . Marriage is
> mentioned nowhere in the Bill of Rights and interracial marriage
> was illegal in most States in the 19th century, but the Court was no
> doubt correct in finding it to be an aspect of liberty protected
> against state interference by the substantive component of the Due
> Process Clause in Loving . . . .

Nor can the state defendants conceive of any other justification that would meet the level of scrutiny this Court must apply to plaintiffs' challenge. The state has granted same-sex couples the same protections, benefits and responsibilities provided to opposite-sex couples through marriage. That does not mean that reserving the label "marriage" for traditional opposite-sex couples is narrow in the impact on same-sex couples. As the Supreme Court noted in *Windsor*, a state's "definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the protection of offspring, property interests, and the enforcement of marital responsibilities." 133 S. Ct. at 2691; *see also Turner*, 482 U.S. at 96 ("[M]arital status often is a precondition to the receipt of government benefits (*e.g.*, Social Security benefits), property rights (*e.g.*, tenancy by the entirety, inheritance rights), and other, less tangible benefits (*e.g.*, legitimation of children born out of wedlock)."); *Massachusetts v. U.S. Dep't of Health and Human Servs.*, 682 F.3d 1, 11 (1st Cir. 2012) ("Loss of survivor's social security, spouse-based medical care and tax benefits are major detriments on any reckoning; provision for retirement and medical care are, in practice the main components of the social safety net for vast numbers of Americans.").

As with plaintiffs' equal protection claims, the state defendants have carefully considered the due process claims and whether any legitimate government interest could be put forward to justify the same-sex marriage ban. For the same reasons discussed above, in section A.4, the value Oregon places on stable relationships of all kinds, including those created by same-sex partners, means the state defendants are unable to identify any state interest that would satisfy the heightened scrutiny this Court must apply to plaintiffs' due process claims.

Page 30 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

C.    **The benefits and protections from a Registered Domestic Partnership are not an answer to plaintiffs' challenges to the same-sex marriage ban.**

Oregon has established a strong policy in favor of protecting same-sex couples and families. Other states have taken the position that similar acts of beneficence should exempt a state from offering equal marriage rights, and that marriage equality would discourage states from offering benefits. Still others have argued that, where a state has offered all of the benefits under the state's direct control, same-sex couples should address their complaints to the federal government to challenge its refusal to treat domestic partnerships or civil unions the same way it treats marriages. Neither argument has sufficient weight to alter the analysis presented above.

First, there is some merit to an argument that courts should not discourage states from experimenting with social issues and making movement toward improving treatment of minority or disfavored groups. If states are not constitutionally required to treat same-sex couples in the same manner as opposite-sex couples, they should nevertheless be free to provide some benefits to same-sex couples without then being forced to forego any distinctions between the two groups. The problem with this argument is it fails to address the precise constitutional questions at issue in this case. Here, the issue is whether there is a constitutional requirement that limits the state's ability to prevent same-sex couples from entering into marriages and obtaining the benefits of marriage. The question is not whether the state can continue to offer some of those benefits of marriage through some other mechanism such as the Registered Domestic Partnership.

Nor can the state argue that it has done all it can by providing same-sex couples and families with same-sex parents the same resources, protections, and benefits available to opposite-sex couples and families. While the state has done a great deal in this area, the denial of the right to marry brings with it the denial of over 1000 federal benefits and protections. Even if the state does not directly limit access to those benefits, it must bear the responsibility for restricting access through the denial of the right to marry. The state's provision of benefits to same-sex couples reflects legitimate policy determinations to eliminate—to the extent possible—

Page 31 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

discrimination based on sexual orientation and to support same-sex partnerships. But those policy determinations make it very difficult to then articulate a justification for denying those partnerships the federal and societal benefits of marriage. *See Lewis v. Harris*, 908 A.2d 196, 217 (N.J. 2006) ("There is no rational basis for, on the one hand, giving gays and lesbians full civil rights in their status as individuals and, on the other, giving them an incomplete set of rights when they follow the inclination of their sexual orientation and enter into committed same-sex relationships.").

**D.    *Baker v. Nelson* does not foreclose this Court's consideration of plaintiffs' claims.**

Some states have urged courts to reject challenges to same-sex marriage bans on the basis that Supreme Court precedent—*Baker v. Nelson*—means that there is no substantial federal question presented. In 1971, two men challenged Minnesota's refusal to allow same-sex marriage on equal protection and due process grounds. The Minnesota Supreme Court rejected these claims. *Baker v. Nelson*, 191 N.W.2d 185, 187 (Minn. 1971), *appeal dismissed*, 409 U.S. 810 (1972). On appeal, the United States Supreme Court summarily dismissed the case "for want of a substantial federal question." *Baker*, 409 U.S. at 810.

Usually, a summary disposition such as that in *Baker* would be binding on lower courts and would prevent those courts from addressing the same issues and reaching different results. *See Mandel v. Bradley*, 432 U.S. 173, 176 (1977). That does not hold true if the underpinnings of the summary disposition shift so significantly that the precedential value of the decision must be questioned. *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975), *superseded by elimination of* 28 U.S.C. § 1257(2) (appeal as of right to Supreme Court) (summary dispositions may no longer be binding "when doctrinal developments indicate otherwise") (citation omitted).

The recent Texas ruling in *De Leon* contains a useful summary of the "doctrinal and societal developments" since *Baker* was summarily resolved more than forty years ago. *De Leon*, 2014 WL 715741, at *9. Even sex was not a quasi-suspect classification entitled to heightened scrutiny until 1973, the *De Leon* court pointed out. *Romer* struck down a Colorado

Page 32 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

constitutional amendment on the basis that it sought only to "harm a politically unpopular group." In 2003, the Supreme Court found a protected liberty interest in private sexual activity. *Lawrence*, 539 U.S. at 564, 571, 574 (the constitution protects "personal decisions relating to marriage, procreation, contraception, family relationships, [and] child rearing" and homosexuals "may seek autonomy for these purposes."). And, of course, the Supreme Court did not dismiss *Windsor* or *Perry* for lack of a substantial federal question.

Given these significant changes and doctrinal shifts, the Texas court concluded that *Baker*'s summary dismissal no longer has precedential value. *Id*. at \*16. "It is now clear that while state bans on same-sex marriage may have been deemed an 'unsubstantial' question in 1972, the issue is now a 'substantial' federal question based on doctrinal developments in Supreme Court law." *Id.*

Other courts to have addressed this question have largely drawn similar conclusions. *See Windsor v. United States*, 699 F.3d 169, 178 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (holding that *Baker* was not controlling in light of the "manifold changes to the Supreme Court's equal protection jurisprudence" in the intervening forty years); *Bostic*, 2014 WL 561978, at \*9-10; *Bourke*, 2014 WL 556729, at \*1; *Bishop*, 2014 WL 116013, at \*15-17; *Kitchen*, 2013 WL 6697874, at \*7-9; *but see Sevcik*, 911 F. Supp. 2d at 1003 (finding *Baker* to control the plaintiffs' challenge to the state's refusal to permit same-sex marriage, but not to control any argument based on *Romer* "concerning the withdrawal of existing rights or a broad, sweeping change to a minority group's legal status.").

The state defendants in this case adopt that analysis and agree that *Baker* does not foreclose this Court's consideration of plaintiffs' claims. They urge this Court to consider the merits of plaintiffs' claims.

## VI.    CONCLUSION

When Oregon voters enacted the marriage ban in 2004, few thought to look to the federal constitution to determine whether the ban violated any federal rights of the same-sex couples

Page 33 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
5099224-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

who were being excluded from marriage and from the state and federal benefits that accompany marriage. Much has changed in the intervening ten years, with a nationwide dialogue on the value of marriage and the government's interest in promoting healthy families of all kinds. Instead of living in a climate in which same-sex couples are feared and citizens look to their government to protect children from those couples, we now live in a state that recognizes and values same-sex couples and their families. Given what we know today, the state defendants in this case recognize that the ban on same-sex marriage serves no rational purpose and harms Oregon citizens. This case presents that rare case in which there simply is no legal argument to be made in support of a state law.

If this Court determines that Oregon's prohibition on same-sex marriage violates plaintiffs' rights under the federal constitution, the state is prepared to implement that ruling. The state defendants ask for a declaration limited to the specific issue presented in these cases: that Oregon's marriage laws violate the federal constitution to the extent they do not permit the State to issue marriage licenses solely on the ground that both parties requesting the license are of the same sex or to recognize a valid marriage from another jurisdiction solely because both parties to the marriage are of the same sex. Similarly, the state defendants ask for a limited injunction prohibiting Oregon from enforcing those laws only to the extent that the state denies same-sex couples the right to marry on the same terms as opposite-sex couples.

Such limited rulings will resolve the claims before this Court, but will not resolve other questions that should more properly be addressed to the Legislative Assembly. For example, if this Court finds that the same-sex marriage ban is unconstitutional, the legislature is the proper body to determine how to treat existing Registered Domestic Partnerships. In some states, those have automatically been transformed into marriage; other states have required an affirmative act

Page 34 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
5099224-v1

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

by couples wishing to be treated as married.  The proper resolution of these and other

implementation issues should be left to Oregon's legislative process.

       DATED March __18__, 2014.

                                    Respectfully submitted,

                                    ELLEN F. ROSENBLUM
                                    Attorney General


                                        ___s/ Sheila H. Potter_____
                                    SHEILA H. POTTER #993485
                                    Deputy Chief Trial Counsel
                                    ANNA M. JOYCE #013112
                                    Solicitor General
                                    MARY WILLIAMS #911241
                                    Special Assistant Attorney General
                                    Trial Attorneys
                                    sheila.potter@doj.state.or.us
                                    anna.joyce@doj.state.or.us
                                    mary_h_williams@msn.com
                                    Of Attorneys for State Defendants

Page 35 -  STATE DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
     5099224-v1