Roger K. Harris (OSB No. 78046)
HARRIS BERNE CHRISTENSEN LLP
5000 SW Meadows Road, Suite 400
Lake Oswego, OR 97035
(503) 596-2928; (503) 968-2003 Fax
roger@hbclawyers.com

John C. Eastman (Cal. Bar No. 193726)*
CENTER FOR CONSTITUTIONAL JURISPRUDENCE
c/o Chapman University Fowler School of Law
One University Dr.
Orange, CA 92866
(877) 855-3330; (714) 844-4817 Fax
jeastman@chapman.edu
   * Application for Admission Pro Hac Vice pending

Attorneys for Proposed Intervenor

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **DEANNA L. GEIGER**, **JANINE M. NELSON, ROBERT DUEHMIG** and **WILLIAM GRIESAR**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **JOHN KITZHABER**, in his official capacity as Governor of Oregon; **ELLEN ROSENBLUM**, in her official capacity as Attorney General of Oregon; **JENNIFER WOODWARD**, in her official capacity as State Registrar, Center for Health Statistics, Oregon Health Authority; and **RANDY WALDRUFF**, in his official capacity as Multnomah County Assessor, <br><br> *Defendants*, | Case No.: 6:13-cv-01834-MC (Lead Case) <br> and <br> Case No.: 6:13-cv-02256-MC (Trailing Case) <br><br><br> MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE |

and

**NATIONAL ORGANIZATION FOR MARRIAGE, INC.**, on behalf of their Oregon members,

*Proposed Intervenor*.

---

**PAUL RUMMELL** and **BENJAMIN WEST; LISA CHICKADONZ** and **CHRISTINE TANNER; BASIC RIGHTS EDUCATION FUND**,

*Plaintiffs*,

v.

**JOHN KITZHABER**, in his official capacity as Governor of Oregon; **ELLEN ROSENBLUM**, in her official capacity as Attorney General of Oregon; **JENNIFER WOODWARD**, in her official capacity as State Registrar, Center for Health Statistics, Oregon Health Authority; and **RANDY WALDRUFF**, in his official capacity as Multnomah County Assessor,

*Defendants*,

and

**NATIONAL ORGANIZATION FOR MARRIAGE, INC.**, on behalf of their Oregon members,

*Proposed Intervenor*.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iv

INTRODUCTION................................................................................................................1

ARGUMENT......................................................................................................................3

    I.     Proposed Intervenor Has Third-Party Standing To Assert Protectable Interests of Its Members...................3

    II.    Proposed Intervenor Is Entitled to Intervene as of Right Under Rule 24(a)...............................5

        A.   Proposed Intervenor Has Timely Filed This Motion.................................................5

        B.   Proposed Intervenor's Members Have Significantly Protectable Interests in the Subject of this Action.8

        C.   The Court's Ruling Might Impair Proposed Intervenor's Significantly Protectable Interests. ..............12

        D.   The Existing Parties Have Already Demonstrated That They Are Not Adequately Representing the Interests of Proposed Intervenor's Members.................................................16

    III.   Alternatively, Proposed Intervenor Should Be Granted Permissive Intervention. .........................17

CONCLUSION.................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Alameda Newspapers, Inc. v. City of Oakland*,

  95 F.3d 1406 (9th Cir. 1996) ................................................................ 6

*American Association of People with Disabilities v. Herrera*,

  257 F.R.D. 236 (D.N.M. 2008) ............................................................ 13

*American Brake Shoe & Foundly Co. v. Interborough Rapid Transit Co.*,

  3 F.R.D. 162 (S.D.N.Y. 1942) .............................................................. 6

*Arakaki v. Cayetano*,

  324 F.3d 1078 (9th Cir. 2003) .............................................................. 5

*Associated Builders and Contractors, Saginaw Valley Area Chapter v. Perry*,

  115 F.3d 386 (6th Cir. 1997) ................................................................ 7

*Baker v. Carr*,

  369 U.S. 186 (1962) ............................................................................ 17

*Bank of Marin v. England* ,

  352 F.2d 186 (9th Cir. 1965) ................................................................ 15

*Bogaert v. Land*,

  2008 WL 2952006 (W.D. Mich. July 29, 2009) ................................... 13

*Bush v. Gore*,

  531 U.S. 98 (2000) .............................................................................. 12

*Citizens United v. Fed. Election Comm'n*,

  558 U.S. 310 (2010) ............................................................................ 4

*Conaway v. Deane*,

    932 A.2d 571 (Md. 2007) ........................................................................... 10

*Edmonson v. Leesville Concrete Co., Inc.*,

    500 U.S. 614 (1991) ................................................................................. 4

*Employee Staffing Services, Inc. v. Aubry*,

    20 F.3d 1038 (9th Cir. 1994) .................................................................... 17

*Financial Guar. Ins. Co. v. City of Fayetteville*,

    943 F.2d 925 (8th Cir. 1991) .................................................................... 17

*Gasperini v. Center for Humanities, Inc.*,

    518 U.S. 415 (1996) ................................................................................. 15

*GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*,

    445 U.S. 375 (1980) ................................................................................. 16

*Harper v. Virginia Bd. of Elections*,

    383 U.S. 663 (1966) ................................................................................. 12

*Hart v. Massanari*,

    266 F.3d 1155 (9th Cir. 2001) .................................................................. 14

*Hernandez v. Robles*,

    855 N.E.2d 1 (N.Y. 2006) ........................................................................ 10

*Hodgson v. United Mine Workers*,

    473 F.2d 118 (D.C. Cir. 1972) .................................................................. 6

*League of United Latin Am. Citizens v. Wilson*,

    131 F.3d 1297 (9th Cir. 1997) .................................................................. 18

*Legal Aid Soc'y of Alameda County v. Brennan,*

608 F.2d 1319 (9th Cir. 1979) ..................................................................... 6

*Li v. State,*

110 P.3d 91 (Ore. 2005) ..................................................................... 9, 14

*Lockyer v. City & County of San Francisco,*

95 P.3d 459 (Cal. 2004)..................................................................... 10

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson,*

357 U.S. 449 (1958) ..................................................................... 4

*Norwest Forest Resource Council v. Glickman,*

82 F.3d 825 (9th Cir. 1996) ..................................................................... 5

*Park & Tilford v. Schults,*

160 F.2d 984 (2d Cir. 1947) ..................................................................... 6

*Pellegrino v. Nesbit,*

203 F.2d 463 (9th Cir. 1953) ..................................................................... 6

*Portland Audobon Soc'y v. Hodel,*

866 F.2d 302 (9th Cir. 1989) ..................................................................... 13

*ProtectMarriage.com - Yes on 8, et al v. Debra Bowen, et al.,*

No. 11-17884 (9th Cir., pending) ..................................................................... 4

*Reynolds v. Sims,*

377 U.S. 533 (1964) ..................................................................... 12

*Richardson v. Ramirez,*

418 U.S. 24 (1974) ..................................................................... 15, 16

*Ruiz v. Estelle*,

    161 F.3d 814 (5th Cir.1998) ............................................................. 8

*Sagebrush Rebellion, Inc. v. Watt*,

    713 F.2d 525 (9th Cir. 1983) ............................................................. 16

*Smelt v. County of Orange*,

    447 F.3d 673 (9th Cir. 2006) ............................................................. 10

*Southwest Ctr. for Biological Diversity v. Berg*,

    268 F.3d 810 (9th Cir. 2001) ..................................................... passim

*Starbuck v. City and County of San Francisco*,

    556 F.2d 450 (9th Cir. 1977) ............................................................. 15

*Stranahan v. Fred Meyer, Inc.*,

    11 P.3d 228 (Ore. 2000) ................................................................... 14

*Trbovich v. United Mine Workers*,

    404 U.S. 528 (1972) ......................................................................... 16

*United Airlines, Inc. v. McDonald*,

    432 U.S. 385 (1977) ........................................................................... 6

*United States Casualty Co. v. Taylor*,

    64 F.2d 521 (4th Cir. 1933) ............................................................... 6

*United States v. City of Los Angeles*,

    288 F.3d 391 (9th Cir. 2002) ........................................................ 5, 17

*United States v. Covington Technologies Co.*,

    967 F.2d 1391 (9th Cir. 1992) ........................................................... 5

*United States v. Windsor,*

    133 S.Ct. 2675 (2013) ................................................................................. 2

*Utah Ass'n of Counties v. Clinton,*

    255 F.3d 1246 (10th Cir. 2001) ................................................................. 8

*Utah Assoc. of Counties v. Clinton,*

    255 F.3d 1246 (10th Cir. 2001) ................................................................. 13

*Yniguez v. Arizona,*

    939 F.2d 727 (9th Cir. 1991) ..................................................................... 6

**Statutes and Constitutional Provisions**

18 U.S.C. § 401 ................................................................................................................. 13

Or. Const. Art. 4, § 1 ....................................................................................................... 13

Or. Const., Art. 15, § 5a ........................................................................................ 9, 11, 13

Or. Rev. Stat. § 106.010 ..................................................................................................... 9

Or. Rev. Stat. § 106.041(1) ............................................................................................ 8, 9

Or. Rev. Stat. § 106.077 ................................................................................................. 8, 9

Or. Rev. Stat. § 106.110 ..................................................................................................... 9

Or. Rev. Stat. § 106.120 ..................................................................................................... 8

Or. Rev. Stat. § 106.150 ..................................................................................................... 9

Or. Rev. Stat. § 659A.400 ................................................................................................. 10

Or. Rev. Stat. § 659A.403 ................................................................................................. 10

**Rules**

Fed. R. Civ. P. 24(a) ................................................................................................ 4, 9, 12

Fed. R. Civ. P. 24(b) ......................................................................................................... 17

## INTRODUCTION

Plaintiffs filed this suit on October 15, 2013, challenging the constitutionality of Oregon's long-standing and recently reaffirmed definition of marriage.  Dkt.#1.  After they filed a First Amendment Complaint on December 4, 2013, Dkt.#8, the named defendants—the Governor, Attorney General, and State Registrar of Health Statistics (collectively, the "State Defendants"), and the Multnomah County Assessor—all filed answers to the complaint, declining to admit and thereby contesting Plaintiffs' constitutional challenges.  Dkt.#9 (Dec. 13, 2013); Dkt.#13 (Dec. 23, 2013).  Plaintiffs filed a motion for summary judgment on January 14, 2014, and the case was consolidated on January 22, 2014 with a parallel case, *Rummell v. Kitzhaber*, No. 6:13-cv-02256-MC, pressing nearly identical constitutional challenges.  Only in their answer to the *Rummell* complaint, filed on February 24, 2014— eleven days after the close of discovery in this case, see Dkt.#2 (setting discovery completion date as February 13, 2014)—did the State Defendants announce that they "will not defend the Oregon ban on same-sex marriage in this litigation" and that, "[r]ather, they will take the position in their summary judgment briefing that the ban cannot withstand a federal constitutional challenge under any standard of review."  Dkt.#58, ¶ 28.

Then, in their "oppositions" to Plaintiffs' respective summary judgment motions, Defendants affirmatively joined Plaintiffs' attacks on the constitutionality of the Oregon marriage laws.  State Defendants' Response to Mot. for Summary Judgment (Dkt.#64); Defendant Randy Waldruff's Response to Motions for Summary Judgment (Dkt.#59).  The State Defendants argued that heightened scrutiny should apply, even while acknowledging that Ninth Circuit precedent had long applied mere rational basis review and that a very recent decision of the Ninth Circuit applying heightened scrutiny was not yet final and based (quite

erroneously, in our view) on the Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (2013), which admittedly did not specify a level of review. Dkt.#64 at 13-14. They argued that strict scrutiny should also be applied because the Supreme Court has repeatedly recognized that marriage is a fundamental right, disparaging the perfectly legitimate arguments that have been made to distinguish prior Supreme Court cases—all based on man-woman marriage—from this distinctly different circumstance. *Id.* at 25-30. They conceded issues of bad motive on the part of Oregon citizens when adopting the constitutional amendment that are not supported by the record. *Id.* at 14 ("it is apparent that the reason for the ban was to enshrine in the state constitution a belief that same-sex couples are disfavored"). They argued that Oregon's law fails even rational basis review. *Id.* at 15. They advanced and then rejected as "inadequate" the straw-man argument that the voters sought to protect traditional marriage "simply for the sake of holding onto tradition." *Id.* at 17-18. They rejected the State's legitimate interest in family stability for procreative unions on the ground that the state's marriage laws do not bar opposite-sex couples who are incapable of procreation from marrying—an unnecessary concession under rational basis review, which does not require perfection in the fit between means and ends. *Id.* at 18-20. They ignored the overwhelming body of precedent that, under rational basis review, it is perfectly acceptable for a government program to reach groups that further the government's purpose and not extend the program to groups that do not (even if extending the program would not undermine the original purpose). *Id.* at 23-24. And they accepted unquestioningly the unsubstantiated claim asserted in *Windsor* that children being raised by same-sex couples are "humiliated" by the State's decision not to redefine marriage to encompass same-sex relationships. *Id.* at 24-25.

Despite the State Defendants' assertion that they have considered all these justifications and contemplated whether there might be others to defend the rationality of Oregon's marriage law "and have found nothing to present to this Court," there are perfectly plausible, indeed persuasive, counterarguments on every single point addressed by the State Defendants. But this Court will never be presented with those arguments absent intervention by someone willing to make them.

The Attorney General's decision not only to refuse to defend the long-standing and recently reaffirmed marriage laws of the State of Oregon, but also to join Plaintiffs' challenges to their constitutionality, has therefore left this case in the posture of a collusive suit. Proposed Intervenor seeks to intervene in order to remedy that problem, providing the legal defense that the Attorney General and the other named defendants refuse to provide, protecting the protectable interests of its own members, providing this court with advocacy in opposition to the legal claims asserted that is critical to our adversarial system, and ensuring jurisdiction for any appeal that might become necessary.

## ARGUMENT

I.  **Proposed Intervenor Has Third-Party Standing To Assert Protectable Interests of Its Members.**

Proposed Intervenor, National Organization for Marriage, Inc., is a non-profit organization devoted to protecting the institution of marriage and the faith communities that sustain it. Decl. of Brian S. Brown, ¶ 2. Founded in 2007, it serves as a national resource for marriage-related initiatives at the state and local level. *Id.* It currently has more than eleven thousand members nationwide, including more than one hundred members in Oregon. *Id.* ¶ 3. Among its Oregon members are a county clerk, a wedding services provider, and an Oregon voter who cast a vote in the November 2004 election in support of Measure 36 (the 2004 ballot

initiative that amended Oregon's Constitution to define marriage as between one man and one woman). *Id.* ¶ 4. Each of these members of NOM has a particularized interest in the outcome of this litigation. *See* Section II.B, *infra*.

Moreover, there is documented evidence, already acknowledged by the Supreme Court, of retaliation, economic reprisal, and other harms that have befallen others who are similarly situated. *See, e.g., Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 480-82 (2010) (Thomas, J., concurring) (describing the "intimidation tactics" that were deployed against supporters of California's Proposition 8, which added a one-man/one-woman definition of marriage to California's Constitution); *id.* at 370 (majority opinion) (describing those "recent events in which donors to certain causes were blacklisted, threatened, or otherwise targeted for retaliation" as a "cause for concern" that would render donor disclosure requirements "unconstitutional as applied to an organization if there were a reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed"); *ProtectMarriage.com - Yes on 8, et al v. Debra Bowen, et al.*, No. 11-17884 (9th Cir., pending) (complaint outlining numerous examples of voter and donor intimidation that occurred after donor's names were publicly disclosed). As a result, Proposed Intervenor's members have legitimate and well-founded fears that intervening on their own behalf to defend their particularized interests directly would subject them to similar forms of reprisal. They are therefore hindered in defending those interests on their own behalf and, under governing Supreme Court precedent, Proposed Intervenor has standing to assert their particularized interests on their behalf. *See, e.g., Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 629 (1991); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958).

## II.   Proposed Intervenor Is Entitled to Intervene as of Right Under Rule 24(a).

Four requirements must be satisfied to intervene as a matter of right under Fed. R.

Civ. P. 24(a)(2): (1) the application for intervention must be timely; (2) the applicant must have

a "significantly protectable" interest relating to the subject of the action; (3) the disposition of

the action might, as a practical matter, impair the applicant's ability to protect that interest; and

(4) the applicant's interest might be inadequately represented by the existing parties.

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817-18 (9th Cir. 2001); *Arakaki*

*v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).  Each of these requirements must be

evaluated liberally in favor of intervention:

> A liberal policy in favor of intervention serves both efficient resolution of issues
> and broadened access to the courts. By allowing parties with a practical interest in
> the outcome of a particular case to intervene, [the court] often prevent[s] or
> simplifies] future litigation involving related interests; at the same time, [the
> court] allow[s] an additional interested party to express its views ... .

*United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).  In reviewing these

factors, "a district court is required to accept as true the nonconclusory allegations made in

support of an intervention motion."  *Southwest Ctr.*, 268 F .3d at 819.  Proposed Intervenor, on

behalf of its members, satisfies all four requirements.

### A.   Proposed Intervenor Has Timely Filed This Motion.

Three criteria determine the timeliness of a motion to intervene: (1) the stage of the

proceedings; (2) the reason for delay, if any, in moving to intervene; and (3) prejudice to the

parties.  *Norwest Forest Resource Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996).

The court may permit intervention at any stage in the proceeding, including post-judgment.

*See, e.g, United States v. Covington Technologies Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992).

This motion is timely notwithstanding the currently scheduled April 23, 2014 hearing

on Plaintiffs' respective motions for summary judgment.  Although discovery closed in the

lead case on February 13 and closed in the consolidated case on April 18, no trial date has been

set and no judgment has been entered.  The immediate purpose of this intervention is to ensure

that Oregon's marriage laws are adequately defended from the perspective of a local

governmental official responsible for enforcing them and others who have protectable interests

in them, and to ensure that there is a party willing and able to appeal any ruling against those

laws, an interest that can easily be accommodated at this stage of the litigation.

Indeed, courts frequently permit intervention even after trial for the purpose of

appealing an adverse ruling.  *See, e.g, United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977);

*Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991); *Legal Aid Soc'y of Alameda County v.*

*Brennan*, 608 F.2d 1319, 1328 (9th Cir. 1979); *Pellegrino v. Nesbit*, 203 F.2d 463 (9th Cir.

1953); *Hodgson v. United Mine Workers*, 473 F.2d 118 (D.C. Cir. 1972); *United States*

*Casualty Co. v. Taylor*, 64 F.2d 521 (4th Cir. 1933); and *American Brake Shoe & Foundly Co.*

*v. Interborough Rapid Transit Co.*, 3 F.R.D. 162 (S.D.N.Y. 1942).  As the Ninth Circuit has

explained, "[i]ntervention should be allowed even after a final judgment where it is necessary

to preserve some right which cannot otherwise be protected [such as] the right to appeal from

the judgments entered on the merits by the District Court."  *Pellegrino*, 203 F.2d at 465-66

(citations omitted); *see also Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1412

n.8 (9th Cir. 1996) ("the Guild's right to intervene [post-judgment] for the purpose of

appealing is well established"); *Park & Tilford v. Schults*, 160 F.2d 984 (2d Cir. 1947) (post-

judgment motion to intervene was timely where purpose was to appeal adverse ruling).

Allowing intervention to facilitate appellate review is especially appropriate where a

substantial question, such as the constitutionality of a provision of the Oregon Constitution,

might otherwise be left unsettled by an appellate court.  *See Associated Builders and*

*Contractors, Saginaw Valley Area Chapter v. Perry*, 115 F.3d 386, 391 (6th Cir. 1997) ("The existence of a substantial unsettled question of law is a proper circumstance for allowing intervention and appeal. [citation omitted].  Where such uncertainty exists, one whose interests have been adversely affected by a district court's decision should be entitled to receive the protection of appellate review.") (internal quotation marks omitted).

      (2) There is thus good cause for the delay, especially in this extraordinary situation. The Attorney General only announced on February 24, 2014, in its answer in the consolidated *Rummell* case, that she would not be defending Oregon's marriage laws, and only demonstrated that she was actually joining in Plaintiffs' attack on the law's constitutionality when she filed her "opposition" to Plaintiffs' Summary Judgment Motion on March 18, 2014, just a month ago, leaving Oregon's marriage laws entirely undefended in this litigation. Proposed Intervenor began the process of identifying potential parties to intervene shortly thereafter, only to discover that individuals with protectable interests that may be effected by this litigation had genuine concerns about reprisal that *hindered* their ability to intervene. Brown Decl. ¶ 4.  Proposed Intervenor then determined only days ago that it had among its membership ranks individuals with protectable interests such that it could, pursuant to the jurisdictional rules on third-party standing, intervene on their behalf.  *Id.* ¶ 5.  Proposed Intervenor has thus moved expeditiously to submit this motion.  Further, while this case has moved quickly toward a hearing on a dispositive motion in accordance with the expedited schedule adopted by this Court, it is still only six months since the action was filed.  No trial has been held, and it appears that the parties did not even engage in discovery, *see* Dkt.#7 (agreement waiving Rule 26 discovery disclosures).

(3) Allowing intervention will not cause undue delay or unfairly prejudice the parties. Although Proposed Intervenor will be requesting that the hearing on Plaintiffs' Summary Judgment Motions be continued until the end of May in order to allow for adequate time to prepare an opposition brief and to allow for any reply briefs that Plaintiffs and/or the nominal defendants think warranted, Proposed Intervenor is prepared to submit a preliminary brief in opposition to Plaintiffs' Motions for Summary Judgment by close of business on April 22, 2014, if necessary, in order that it can be considered by this Court at the scheduled April 23, 2014 hearing. Proposed Intervenor's counsel is also prepared to participate in the currently scheduled oral argument if the Court denies Proposed Intervenor's request for a continuance.[1]

### B. Proposed Intervenor's Members Have Significantly Protectable Interests in the Subject of this Action.

Whether a proposed intervenor has a significantly protectable interest is a "practical, threshold inquiry," and "[n]o specific legal or equitable interest need be established." *Southwest Ctr.*, 268 F .3d at 818 (quotations omitted). "It is generally enough that the interest asserted is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quotations and alterations omitted).

Proposed Intervenor, on behalf of its members, has such interests.

---

[1] Should the Court determine that Summary Judgment is not warranted once it has before it an actual opposition to Plaintiffs' respective Motions for Summary Judgment, further proceedings, including the re-opening of discovery, may well be warranted. But that is a function of the fact that this case has heretofore proceeded in a collusive manner, albeit outside of public view until the Attorney General announced her true intention after the close of discovery in the principal case. For the reasons set out in Sections II.C-D below, the ability to avoid the consequences of a collusive suit weighs heavily in favor of intervention, even if that extends the timetable for final resolution of the case. Plaintiffs would undoubtedly prefer to wage their litigation battle against defendants who are fully in agreement with their positions, but it is not *unfair* prejudice to require that they actually seek to vindicate their claims against a true adversary. *See, e.g.*, *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001) ("The prejudice prong of the timeliness inquiry 'measures prejudice caused by the intervenors' delay—not by the intervention itself'") (quoting *Ruiz v. Estelle*, 161 F.3d 814, 828 (5th Cir.1998)).

Protectable Interest of County Clerks.  Proposed Intervenor's members include an

Oregon County Clerk.  Brown Decl. ¶ 6.  Under Oregon law, county clerks are responsible for

issuing marriage licenses "directed to any person or religious organization or congregation

authorized by Or. Rev. Stat. § 106.120 to solemnize marriages, and authorizing the person,

organization, or congregation to join together as husband and wife the persons named in the

license."  Or. Rev. Stat. § 106.041(1).  The clerk must issue a marriage license if, but only if,

"all other legal requirements for issuance of the marriage license have been met."  Or. Rev.

Stat. § 106.077.  "County clerks . . . cannot issue marriage licenses contrary to the statutes set

out in ORS chapter 106 that circumscribe their functions."  *Li v. State*, 110 P.3d 91, 95 n.5

(Ore. 2005).  That includes Section 106.010, which provides that "Marriage is a civil contract

entered into in person by males at least 17 years of age and females at least 17 years of age,

who are otherwise capable, and solemnized in accordance with ORS 106.150."  Or. Rev. Stat.

§ 106.010.  It also has included, since its adoption by the voters in 2004, Article 15, Section 5a

of the Oregon Constitution, which provides:  "It is the policy of Oregon, and its political

subdivisions, that only a marriage between one man and one woman shall be valid or legally

recognized as a marriage."  Or. Const. Art. 15, § 5a.

As the Oregon Supreme Court noted in *Li v. State*, "[t]he ministerial aspects of issuing

marriage licenses in Oregon have, by statute, long been a county function."  *Li v. State*, 110

P.3d at 95 n.5.  County clerks are "charged with the responsibility of physically issuing the

licenses."  *Id*. (citing Or. Rev. Stat. § 106.041).  "The county clerk is also the entity that must

receive a couple's written application and verify that the legal requirements for issuing a

marriage license have been met."  *Id*. (citing Or. Rev. Stat. § 106.077).  Most significantly, the

Court held that "County clerks . . . cannot issue marriage licenses contrary to the statutes set

*out* in ORS chapter 106 that circumscribe their functions." *Id.* (citing Or. Rev. Stat. §

106.110).

Given these official duties and obligations, a county clerk clearly has a protectable

interest authorizing her intervention as of right under Rule 24(a).  Indeed, county clerks have

frequently been named as defendants in litigation by same-sex couples challenging their State's

marriage laws.  *See, e.g., Smelt v. County of Orange*, 447 F.3d 673 (9th Cir. 2006) (lawsuit

against Orange County, California clerk for injunction and declaratory relief that California

law prohibiting same-sex marriage was unconstitutional); *Lockyer v. City & County of San

Francisco*, 95 P.3d 459 (Cal. 2004) (county clerks sued for issuing same-sex marriage

licenses); *Conaway v. Deane*, 932 A.2d 571 (Md. 2007) (same-sex couples sue county clerks

for refusing to issue marriage licenses); *Hernandez v. Robles*, 855 N.E.2d 1 (N.Y. 2006)

(same).  Plaintiffs themselves recognized the official interest of county clerks by naming as a

defendant the Multnomah County Assessor who, performing the duties with respect to the

issuance of marriage licenses that are performed by county clerks elsewhere in the State, "is

responsible for maintaining vital records of marriages and issuing marriage licenses in

Multnomah County, Oregon."  First Amended Complaint ("FAC") ¶ 16.

Proposed Intervenor's members who are County Clerks who issue marriage licenses

and perform marriages will thus be directly affected in the performance of their duties if

Oregon's marriage laws are ruled unconstitutional and, as has happened elsewhere, the state

officials bound by that ruling seek to compel statewide compliance with it (as they have

already announced they would do).

<u>Protectable Interests of Wedding Services Providers</u>.  Proposed Intervenor's members

include providers of wedding services who have sincerely-held religious objections to

facilitating marriage ceremonies between people of the same sex.  Brown Decl. ¶¶ 6, 7.

Oregon's public accommodation statute defines a "place of public accommodation" as

including "any place or service offering to the public . . . facilities or privileges whether in the

nature of goods [or services . . . ." Or. Rev. Stat. § 659A.400.  The law then prohibits a "place

of public accommodation" from selectively providing its services on the basis of, *inter alia*,

"sexual orientation." Or. Rev. Stat. § 659A.403.  Currently, wedding service providers in

Oregon are not required to facilitate marriage ceremonies between people of the same sex

because Oregon law does not define such relationships as "marriages."  Should Oregon's

marriage law be overturned by judicial decision without possibility of crafting the kind of

conscience exemptions that can often be obtained through the legislative process, Proposed

Intervenor's members who provide wedding services and who have sincerely-held religious

beliefs that prevent them from facilitating marriage ceremonies between people of the same sex

would find themselves in the untenable position of having to choose between: 1) adhering to

their religious beliefs and either violating Oregon's public accommodation law or ceasing to

engage in the wedding services business; or 2) complying with Oregon's public

accommodation law in violation of their sincerely-held religious beliefs.  That is a

particularized injury giving them standing to participate in this litigation.

    Protectable Interests of Measure 36 Supporters.  Proposed Intervenor's members

include citizens of Oregon who voted in support of Measure 36, the 2004 ballot initiative that

added Article 15, Section 5a to the Oregon Constitution, which provides "that only a marriage

between one man and one woman shall be valid or legally recognized as a marriage." Or.

Const. Art. 15, § 5a; Brown Decl. ¶¶ 6, 8.  The judicial relief sought by Plaintiffs in these cases

would negate the votes of those individuals (and the votes of the 1,028,546 Oregonians who

voted to approve Measure 36). The Supreme Court has repeatedly recognized that the right to vote is a constitutionally-protected fundamental right that cannot be denied directly but also cannot be destroyed or diluted *indirectly*. *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). "Having once granted the right to vote," as Oregon has done here with its constitutional initiative process, "the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (citing *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665 (1966)). Yet that is precisely what the Oregon Attorney General has done here. By refusing to provide any defense to the Oregon marriage law, adopted by the voters of Oregon in 2004, when a perfectly plausible defense can be made, the Oregon Attorney General has entirely and arbitrarily negated the votes of the more than one million Oregon voters who successfully supported Measure 36, in favor of the less than eight hundred thousand Oregon voters who unsuccessfully opposed it. Those voters who supported Measure 36, some of whom are members of Proposed Intervenor, therefore have a particularized interest in seeing that their votes are not negated by the actions of the Attorney General.

**C. The Court's Ruling Might Impair Proposed Intervenor's Significantly Protectable Interests.**

The Ninth Circuit "follow[s] the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Southwest Ctr.*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes). As explained above, the outcome of this action will, as a practical matter, affect the ability of Proposed Intervenor's members' ability to comply with Oregon's marriage laws and/or subject them to conflicting duties. This requirement is thus plainly met.

For example, any injunctive relief granted by this Court would directly affect the performance of County Clerk's legal duties.  Plaintiffs seek to enjoin all relevant state officials from enforcing Oregon's marriage laws and, ultimately, to require them to issue such orders as may be necessary to ensure that all county clerks across Oregon issue marriage licenses to same-sex couples.  FAC ¶ 17 ("The relief requested in this action is sought against each Defendant . . . *and against all persons acting . . . under their supervision, at their direction, or under their control*") (emphasis added).

A Clerk's interest in the effective performance of her duties and the threat of an injunction impacting those duties from a federal District Court seeking to enforce an order from the Attorney General or other state officials justify intervention.  *See, e.g., American Association of People with Disabilities v. Herrera*, 257 F.R.D. 236 (D.N.M. 2008). *Herrera* involved a challenge to a New Mexico state voter-registration law.  The District Court for the District of New Mexico permitted a county clerk to intervene as of right under Rule 24(a), holding:

> If the injunction was issued, Coakley [the county clerk] would be prohibited from performing certain electoral duties that New Mexico law requires. This direct effect on what Coakley can and cannot do as a county clerk is the direct and substantial effect that is recognized as a legally protectable interest under rule 24(a).

*Id*. at 256 (citing *Utah Assoc. of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001)); *see also Bogaert v. Land*, 2008 WL 2952006 (W.D. Mich. July 29, 2009) (county clerks permitted to intervene where plaintiffs sought injunction that would change clerks' obligations in administering a recall election).

The threat of injunction alone gives Proposed Intervenor's County Clerk members a direct interest in this litigation sufficient to warrant intervention.  *See Portland Audobon Soc'y v. Hodel*, 866 F.2d 302, 309 (9th Cir. 1989) (where plaintiff sought injunction, "the

governmental bodies charged with compliance can be the only defendants").  Violation of such

an order could lead to civil or even criminal liability.  *See* 18 U.S.C. § 401 (authorizing

criminal contempt for violation of a court order).

More broadly, county clerks have a sworn duty to uphold and defend the Oregon

Constitution, which includes both Article 15 § 5a and the "unfettered" right of the people to the

initiative process by which it was enacted.  Or. Const. Art. 4, §  1; *Stranahan v. Fred Meyer,*

*Inc.*, 11 P.3d 228, 331 Or. 38 (Ore. 2000).  To be sure, the duties of county clerks with respect

to marriage are largely ministerial, and county clerks are not independent judges of the

constitutionality of state law, but Article 15 § 5A has been upheld by the Oregon Supreme

Court as a valid constitutional amendment, *Li v. State*, 110 P.3d at 95, and yet is undefended by

state officials.

The other categories of members whom Proposed Intervenor seeks to represent in this

litigation would also find their protectable interests impaired absent intervention.  Proposed

Intervenor's members who voted for Ballot Measure 36 in 2004 will have those votes entirely

negated if this Court accepts the collusive arguments by Plaintiffs and existing Defendants,

without possibility of defending before this court or on appeal the initiative for which they

voted.  Proposed Intervenor's members who provide wedding services in accord with their

sincerely-held religious beliefs will find those beliefs in conflict with Oregon law should this

Court grant Plaintiffs' respective motions for summary judgment.

Finally, the weighty constitutional questions presented by this case plainly warrant

definitive resolution by the Ninth Circuit and perhaps even the Supreme Court. The judgments

of federal district courts have no precedential effect except on the parties.  *See Hart v.*

*Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) (federal trial court decisions are not binding

precedent). Every federal district court judge "sits alone and renders decisions not binding on the others," even within the same district. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 430 n.10 (1996). "The doctrine of stare decisis does not compel one district court judge to follow the decision of another." *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 (9th Cir. 1977). The opportunity for appellate review is critical. "In the judicial scheme of things, a district court decision which has not withstood the acid test of appellate review cannot be regarded as authoritative ...." *Bank of Marin v. England ,* 352 F.2d 186, 189 n.l (9th Cir. 1965).

Given that the Attorney General has already announced that she would not appeal a judgment by this Court holding Oregon's marriage laws unconstitutional, there will likely be no one to bring the significant issues presented by this case before an appellate court, absent the intervention requested here. The result would be legal uncertainty and confusion.

The holding in *Richardson v. Ramirez,* 418 U.S. 24 (1974), supports intervention under these circumstances. There, ex-felons sued three county election officials, challenging California's constitutional provision prohibiting ex-felons from voting. When all three officials indicated that they would allow the ex-felons to register and vote, essentially mooting the dispute, and after it appeared that the Secretary of State would not be contesting the claims, the County Clerk of Mendocino County filed a complaint in intervention, alleging that the suit was collusive. The California Supreme Court ordered that the clerk be added as a party defendant. She then became the defendant that appealed the action to the United States Supreme Court, which upheld the law. Rejecting Article III concerns, the Supreme Court opined that, without the opportunity to appeal, the intervening clerk and all other county clerks

in the state would have been "permanently bound" by a decision of the California Supreme

Court on a matter of federal constitutional law.  *Id.* at 35.  Similar reasoning applies here.

Proposed Intervenor, on behalf of its members, thus has significantly protectable

interests in this action.

### D. The Existing Parties Have Already Demonstrated That They Are Not Adequately Representing the Interests of Proposed Intervenor's Members.

The burden of showing inadequacy of representation by existing parties is "minimal";

"the applicant need only show that the representation of its interests by existing parties 'may

be' inadequate." *Southwest Ctr.*, 268 F.3d at 823 (quoting *Trbovich v. United Mine Workers*,

404 U.S. 528, 538 n.10 (1972)).  Courts consider the following three factors:

> (1) Whether the interest of a present party is such that it will undoubtedly make
> all the intervenor's arguments; (2) whether the present party is capable and
> willing to make such arguments; and (3) whether the would-be intervenor would
> offer any necessary element to the proceedings that other patties would neglect.

*Id.* at 822.

The Ninth Circuit has found that intervention is warranted where the facts indicate that

the defendant government official desires the same legal outcome sought by the plaintiff.  *See*

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).  Here, as described more

fully in the introduction, supra at 5-7, the Attorney General and the other named defendants

have affirmatively joined Plaintiffs' constitutional *attack* on Oregon's marriage laws, Dkt.#59;

Dkt.#64, taking positions on the constitutionality of those laws that render them inadequate to

represent the interests of Proposed Intervenor's members in *defending* the laws.

Quite simply, a party with a direct stake in the enforcement and administration of

Oregon's marriage laws that is willing to defend those laws should be represented in this

action.  "The clash of adverse parties" is an element of federal jurisdiction, *GTE Sylvania, Inc.*

*v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 382 (1980), because it "sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962). "The adversity requirement insures that a court is presented with opposing parties that are fairly motivated to diligently and effectively present the merits of all sides of the issues presented, thereby facilitating the court's efforts to reach the correct results." *Financial Guar. Ins. Co. v. City of Fayetteville*, 943 F.2d 925, 929 (8th Cir. 1991).

Moreover, since the Attorney General has already announced that she would not appeal an ruling by this Court holding that Oregon's marriage laws are unconstitutional, it is abundantly clear that the existing parties will not adequately represent the Proposed Intervenor's interest in appellate review of any such decision.

In short, given that Proposed Intervenor's presence will be critical to ensure the possibility of appellate review of this Court's decision and to avoid the potential for confusion and conflicting duties discussed above, there is plainly "sufficient doubt about the adequacy of representation to warrant intervention." *Southwest Ctr.*, 268 F.3d at 824 (quotation omitted).

### III.  Alternatively, Proposed Intervenor Should Be Granted Permissive Intervention.

Courts have broad discretion to grant permissive intervention under Fed. R. Civ. P. 24(b). Unlike intervention as of right, a significantly protectable interest is not required. *See Employee Staffing Services, Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994). "[A] court may grant permissive intervention where the applicant shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or question of fact in common." *United States v. City of Los Angeles*, 288 F.3d at 403. Proposed Intervenor meets each of these requirements.

First, as noted out the outset, Proposed Intervenor has third-party standing to intervene on behalf its members, several categories of which have, for the reasons set out in Section I.B, protectable interests at issue in this litigation.  Proposed Intervenor therefore has standing to defend Oregon's marriage laws on their behalf, providing the necessary "independent grounds for jurisdiction" required for permissive intervention.

Second, as discussed in Section I.A above, this motion is timely.  *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (court considers same three timeliness factors for permissive intervention as it does for mandatory intervention).

Third, Proposed Intervenor's defenses to Plaintiffs' claims present questions of law and fact in common with all the defendants, even though the Proposed Intervenor will actually provide the defense that the nominal defendants have refused to provide.

Proposed Intervenor thus meets the requirements for permissive intervention.

## CONCLUSION

The motion to intervene should be granted.

Dated this 21st of April, 2014.           /s/ Roger K. Harris
                                          Roger K. Harris (OSB No. 78046)
                                          HARRIS BERNE CHRISTENSEN LLP

                                          John C. Eastman*
                                          CENTER FOR CONSTITUTIONAL JURISPRUDENCE

                                          Attorneys for Proposed Intervenor
                                          National Organization for Marriage,
                                          on behalf of its Oregon members

                                          * Pro Hac Vice Application pending