Roger K. Harris (OSB No. 78046)
HARRIS BERNE CHRISTENSEN LLP
5000 SW Meadows Road, Suite 400
Lake Oswego, OR 97035
(503) 968-1475; (503) 968-2003 Fax
roger@hbclawyers.com

John C. Eastman (admitted *pro hac vice*)
CENTER FOR CONSTITUTIONAL JURISPRUDENCE
c/o Chapman University Fowler School of Law
One University Dr.
Orange, CA 92866
(877) 855-3330; (714) 844-4817 Fax
jeastman@chapman.edu

Attorneys for Proposed Intervenor

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **DEANNA L. GEIGER**, **JANINE M. NELSON**, **ROBERT DUEHMIG** and **WILLIAM GRIESAR**,<br><br>       *Plaintiffs*,<br><br>v.<br><br>**JOHN KITZHABER**, in his official capacity as Governor of Oregon; **ELLEN ROSENBLUM**, in her official capacity as Attorney General of Oregon; **JENNIFER WOODWARD**, in her official capacity as State Registrar, Center for Health Statistics, Oregon Health Authority; and **RANDY WALDRUFF**, in his official capacity as Multnomah County Assessor,<br><br>       *Defendants*,<br><br>and | Case No.: 6:13-cv-01834-MC (Lead Case)<br>Case No.: 6:13-cv-02256-MC (Trailing Case)<br><br>INTERVENOR'S NOTIFICATION AND REQUEST REGARDING RECUSAL UNDER 28 U.S.C. § 455<br><br>RE: AS INSTRUCTED AT JANUARY 22, 2014 HEARING |

**NATIONAL ORGANIZATION FOR MARRIAGE, INC.**, on behalf of their Oregon members,

*Proposed Intervenor.*

---

**PAUL RUMMELL** and **BENJAMIN WEST; LISA CHICKADONZ** and **CHRISTINE TANNER; BASIC RIGHTS EDUCATION FUND**,

*Plaintiffs*,

v.

**JOHN KITZHABER**, in his official capacity as Governor of Oregon; **ELLEN ROSENBLUM**, in her official capacity as Attorney General of Oregon; **JENNIFER WOODWARD**, in her official capacity as State Registrar, Center for Health Statistics, Oregon Health Authority; and **RANDY WALDRUFF**, in his official capacity as Multnomah County Assessor,

*Defendants*,

and

**NATIONAL ORGANIZATION FOR MARRIAGE, INC.**, on behalf of their Oregon members,

*Proposed Intervenor.*

In its Motion to Intervene, Intervenor National Organization for Marriage noted that it had recently become aware of information regarding the Judge assigned to these consolidated cases that might warrant recusal. For the reasons which follow, Intervenor no longer believes that recusal is required under 28 U.S.C. § 455(b)(4). In addition, Intervenor believes that it will likely waive any potential concerns about recusal under Section 455(a), but requests additional information before making that determination, and also requests additional information concerning possible recusal under Section 455(b)(1).

Intervenor's initial concern that recusal may be warranted under Section 455(b)(4) was based on news accounts depicting circumstances that would suggest to a reasonable observer that the Judge assigned to this case may have been identically situated to plaintiffs in ways that were implicated by the issues to be decided in these cases, namely, that the Judge was in a long-term same-sex relationship and raising children, the sort of relationship that would suggest that the Judge may be interested in marrying his current partner and therefore benefit from his own ruling in this case. If true, that would have given the Judge both a "financial interest" in the outcome of this case and an "other interest that could be substantially affected by the outcome" of this case, thus requiring recusal under 28 U.S.C. § 455(b)(4). In light of Judge McShane's unequivocal statement at the Summary Judgment hearing on April 23, 2014, that he and his partner had no intention of marrying, Intervenor does not believe that recusal is required under Section 455(b)(4).

However, as this Court has already recognized, there are other potential grounds for recusal. *See* Tr. of Hearing, Jan. 22, 2014, at 20-23. Pursuant to the Court's invitation, *id.*, and in accord with direction from the Supreme Court, *see Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 868 (1988) ("encouraging a … litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered"), Intervenor believes it important to bring such additional concerns to the Court's attention.

The Court itself acknowledged that recusal would "certainly" need to be considered if this were to become "a case in which experts were testifying … around issues of raising children because [you] have raised children in a same-sex relationship." *Id.* at 20. The Court dropped the matter after Defendants specifically asserted that they "will not be raising any such issues." *Id.* at 20-21.

Defendants' disavowal really highlights the dangers inherent in this case proceeding as a collusive suit, for Plaintiffs themselves made such issues relevant to this litigation by virtue of specific allegations in their respective complaints. For example, the Geiger Plaintiffs claim that they "*and their children* are stigmatized and relegated to second-class citizens" because of Oregon's marriage laws. *Geiger* First Amended Complaint ("*Geiger* FAC") ¶ 23 (emphasis added). They assert that "Plaintiffs *and their extended families* suffer significant emotional, physical, and economic harms, humiliation, and societal stigma caused by Oregon's refusal to allow same sex couples equal access to marriage." *Id.* ¶ 28 (emphasis added). And they claim that Oregon, through its marriage laws, "stigmatizes gays, lesbians, *their children* and their families . . . ." *Id.* ¶¶ 32, 42 (emphasis added). The Rummell Plaintiffs make similar allegations. See, *e.g.*, *Rummell* Amended Complaint ¶ 4 ("The exclusion from marriage inflicts serious and irreparable harms upon same-sex couples *and their children*") (emphasis added); *id.* ¶ 18 ("the children were subjected to derogatory comments about homosexuality"); *id.* ¶ 37 (Oregon's marriage law "deprives [Plaintiffs] *and their children* of equal dignity, security, and legal protections afforded to other Oregon families") (emphasis added); *id.* ¶ 51 ("The substantive and dignitary inequities imposed on committed same-sex couples include *particular harms to same-sex couples' children*") (emphasis added); *id*. at 52 (contending that Oregon's marriage laws "mark[] the children of same-sex couples . . . with a badge of inferiority that will invite disrespect in school, on the playground, and in every other sphere of their lives").

It is unclear to Intervenor why the Court believes that a dispute "around issues of raising children" would require the Court to consider recusal. It is therefore particularly important that Intervenor calls to the Court's attention at the earliest opportunity that, in its proposed answers in intervention, Intervenor has specifically denied and therefore contests Plaintiffs' allegations on

these issues.  See, *e.g.*, Intervenor's Proposed Answer to Geiger Plaintiffs' First Amended

Complaint ¶¶ 23, 28, 32, 42; Intervenor's Proposed Answer to Rummell Plaintiffs' Amended

Complaint ¶¶  4, 18, 37, 51, 52.

If the Court's concern is that a dispute over such issues would bring this case under the

purview of Section 455(b)(1) because the Court would then have "personal knowledge of

disputed evidentiary facts concerning the proceeding," 28 U.S.C. § 455(b)(1), that would be a

non-waivable ground for recusal, *id.* § 455(e).  Intervenor is of the view that such facts, in the

generalized form alleged by Plaintiffs rather than in any particular instance, are legislative rather

than adjudicative in nature, and although it is not aware of any case law directly on point, it

would agree with any determination by the Court that personal knowledge of disputed legislative

facts is not covered by Section 455(b)(1)'s reference to "evidentiary facts."  Intervenor is aware,

however, that parties litigating these cases elsewhere have contended that such issues are

adjudicative rather than legislative facts.  See, *e.g.*, *Perry v. Brown*, 671 F.3d 1052, 1075 (9th

Cir. 2012) ("Plaintiffs and Proponents dispute whether the district court's findings of fact

concern the types of 'facts'—so-called 'adjudicative facts'—that are capable of being 'found' by

a court through the clash of proofs presented in adjudication, as opposed to 'legislative facts,'

which are generally not capable of being found in that fashion"), *vacated and remanded sub

nom. Hollingsworth v. Perry*, 133 S. Ct. 2652 (U.S. 2013).

If, instead, the Court is of the view that such issues being in contention would raise

concerns under Section 455(a), which provides that a judge "shall disqualify himself in any

proceeding in which his impartiality might reasonably be questioned," Intervenor notes that

Section 455(a) concerns are waivable.  28 U.S.C. § 455(e).  Intervenor does not have information

to suggest that recusal might be warranted under Section 455(a) because of this issue, but given

the Court's own suggestion that it might be if the issue was contested—as it now is—Intervenor believes additional disclosure is necessary before it can determine whether to waive any potential conflict or concern about the appearance of partiality.

Intervenor also has a concern, which the Court apparently shares, about the Court's attendance at an educational program on the *Windsor* decision that "started looking like advocacy" to the point the Court itself got nervous.  Tr. of Jan. 22 Hearing at 22.  While Intervenor would certainly view the Court's attendance at any such program as raising at best a *waivable* conflict under Section 455(a), it requests additional information about the program so that it can make an informed judgment whether such a waivable conflict exists and, if it does, whether Intervenor would agree to waive the conflict.  Intervenor therefore requests that the Court provide additional disclosure "on the record," as required by Section 455(e), of the following information:  1) The name of the organization(s) that sponsored and individuals that presented at the program; 2) any materials and communications distributed before, at, or following the program related to the issues in this case, including the scope and meaning of the Supreme Court's *Windsor* decision; and 3) any additional information that led the Court to get "nervous" because "it started looking like advocacy."

Dated this 29th of April, 2014.      s/ Roger K. Harris
                                       Roger K. Harris (OSB No. 78046)
                                        HARRIS BERNE CHRISTENSEN LLP

                                        John C. Eastman (admitted *pro hac vice*)
                                        CENTER FOR CONSTITUTIONAL JURISPRUDENCE

                                        Attorneys for Intervenor
                                        National Organization for Marriage,
                                        on behalf of its Oregon members