ELLEN F. ROSENBLUM
Attorney General
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
ANNA M. JOYCE #013112
Solicitor General
MARY WILLIAMS #911241
Special Assistant Attorney General
Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Sheila.Potter@doj.state.or.us
        anna.joyce@doj.state.or.us
        mary_h_williams@msn.com

Attorneys for State Defendants

JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
Jenny M. Madkour, OSB No. 98298
County Attorney
Katharine von Ter Stegge, OSB No. 032300
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214-3587
Telephone:  (503) 988-3138
Facsimile:  (503) 988-3377
E-mail:        jenny.m.madkour@multco.us
              katevts@multco.us
    Of Attorneys for Defendant Randy Walruff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DEANNA L. GEIGER** and **JANINE M. NELSON; ROBERT DUEHMIG** and **WILLIAM GRIESAR**,<br><br>Plaintiffs,<br><br>v.<br><br>**JOHN KITZHABER,** in his official capacity as Governor of Oregon; **ELLEN ROSENBLUM**, in her official capacity as Attorney General of Oregon; **JENNIFER** | Case No. 6:13-cv-01834-MC<br>(Lead Case)<br><br>STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO INTERVENE |

Page 1 -   STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO
           INTERVENE

**WOODWARD**, in her official capacity as
State Registrar, Center for Health Statistics,
Oregon Health Authority; and **RANDY
WALDRUFF**, in his official capacity as
Multnomah County Assessor,

          Defendants.

---

**PAUL RUMMELL** and **BENJAMIN
WEST; LISA CHICKADONZ** and
**CHRISTINE TANNER; BASIC RIGHTS
EDUCATION FUND**,

          Plaintiffs,

      v.

**JOHN KITZHABER**, in his official capacity
as Governor of Oregon; **ELLEN
ROSENBLUM**, in her official capacity as
Attorney General of Oregon; **JENNIFER
WOODWARD**, in her official capacity as
State Registrar, Center for Health Statistics,
Oregon Health Authority; and **RANDY
WALDRUFF**, in his official capacity as
Multnomah County Assessor,

          Defendants.

Case No. 6:13-cv-02256-TC

## I.     INTRODUCTION

The National Organization for Marriage seeks to intervene as a defendant in these

proceedings because it disagrees with the legal position articulated by the Attorney General on

behalf of the state defendants. NOM is a national organization focused solely on preventing

same-sex couples from having the right to marry. But neither the organization nor its anonymous

members have a valid basis to intervene simply because they disagree with the position

articulated by the state's chief law officer. This Court should deny the motion to intervene as

untimely and without merit.  That said, if this Court wishes to consider NOM's arguments in

support of Oregon's ban on same-sex marriage, the state and county defendants ask that the

Court treat NOM as an amicus.

Page 2 -   STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO
             INTERVENE

## II.    NOM HAS FAILED TO ESTABLISH ANY BASIS FOR INTERVENTION AS OF RIGHT

NOM argues that it should be permitted to intervene in order to assert the interests of three unidentified members of the organization: a county clerk, a wedding planner, and a citizen who voted in favor of the marriage ban. Accepting for purposes of the motion that these individuals exist and share NOM's opposition to same-sex marriage, NOM has nevertheless failed to establish a basis for either intervention as of right or permissive intervention. Fed. R. Civ. P. 24.

To intervene as of right, under Rule 24(a), NOM would have to have established that four requirements are met: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the proper or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotations omitted). NOM has failed to establish any of the necessary requirements.

This Court should first consider whether the application is timely because that is a threshold matter left to the discretion of the court. Under the circumstances of this case, NOM's delay in moving to intervene is a sufficient basis on which to deny its motion. If the Court considers the remaining factors, the Court should find that NOM has failed to establish that any of its members have a significant protectable interest in Oregon's same-sex marriage ban. Without a protectable interest, the remaining two factors cannot be established.

**A.    NOM's motion to intervene is not timely, and this Court should exercise its discretion to deny the motion on that basis.**

NOM sought intervention two months after it knew all the facts on which it now bases its motion, and after summary judgment briefing is closed. Its motion should be denied as untimely.

Timeliness is "a threshold question addressed to the sound discretion of the district court." *NAACP v. New York*, 413 U.S. 345, 366 (1973). Whether an application is timely is

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

measured by three factors: the stage of the proceedings when the applicant seeks to intervene; prejudice to the existing parties from any resulting delay; and "any reason for and the length of the delay in seeking intervention (how long the prospective intervenors knew or reasonably should have known of their interest in the litigation)." *See Silver v. Babbitt*, 166 F.R.D. 418 (D. Ariz. 1994) (citing *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (9th Cir. 1978), *cert. denied*, 439 U.S. 837 (1978)). Timeliness is not a precise calculation. Instead, in assessing the three factors, this Court should consider the specific circumstances of this case.

Those circumstances include the fact that the state defendants have been transparent about litigation decisions throughout the case, and that the issues in this litigation are not novel for either the defendants or for NOM. The issues raised in these consolidated cases have been presented in other cases across the country, including cases in which NOM participated[1] and that the defendants followed closely because of the possible impact on the Oregon same-sex marriage ban. When the *Geiger* case was filed, the defendants were thus prepared to move quickly to address the merits of the claims. The state defendants also determined that it was appropriate to continue implementing the marriage ban while the litigation proceeded, notwithstanding that their own legal analysis concluded that it was discriminatory. But the defendants have expedited the litigation as much as possible, to minimize the injury to plaintiffs and other similarly situated same-sex couples in Oregon.

In other cases, these legal strategy decisions might not become clear until a defendant actually files a response to a summary judgment motion. But in these cases, NOM was aware of the decisions two months before it moved to intervene. The state defendants filed their answer to the *Rummell* complaint the morning of February 20, 2014, in which they advised that Oregon would enforce the ban on same-sex marriages under the Oregon constitution but would not

---

[1]  *See, e.g.*, Brief of Amicus Curiae of National Organization for Marriage, *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2664 (2013), Brief of Amicus Curiae of National Organization for Marriage, *United States v. Windsor*, 133 S. Ct. 2675, 2687 (2013), Brief of Amicus Curiae of National Organization for Marriage, *Golinski v. Ofc. Of Pers. Mgmt.*, 824 F. Supp. 2d 968 (N.D. Cal. 2012).

Page 4 -    STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO
             INTERVENE

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

defend the ban. (*See* State Defendants' Answer & Aff. Defs. to the Rummell Amd. Com., ¶ 28.)
After the Answer was filed, the Attorney General held a press conference and issued a statement
to announce publicly that the state defendants would continue to appear in the case and would
explain their analysis, but that the analysis would not articulate any defense to the same-sex
marriage ban. (*See* Declaration of Sheila H. Potter, ¶ 2, Ex. 1.) Anyone with an interest in same-
sex marriage knew or should have known of the state defendants' position on February 20.

And in fact NOM did know, because it issued a press statement the same day in response
to the Attorney General's announcement. In it, Mr. Brown said that "Attorney General Ellen
Rosenblum is shamefully abandoning her constitutional duty," and said that "[Attorney General]
Rosenblum is dead-wrong in her conclusion that the amendment cannot be supported by rational
legal arguments." (*See* Potter Dec., ¶ 3, Ex. 2.) His statements were reported in the press the
same day. (*See* Potter Dec., ¶ 4, Ex. 3.) NOM knew the position the state defendants would assert
in the litigation two months prior to filing its motion to intervene, but waited until just 38 hours
before the summary judgment argument to submit a lengthy memorandum of law in support of
intervention.

Thus, the stage of proceedings (first factor) weighs against intervention even though the
cases have been underway for only a matter of months. Summary judgment motions have been
filed and argued. And, while the cases have moved quickly to this stage, there has been no
secrecy surrounding the state's position either on the merits of the litigation or the need to
continue implementing the ban during the course of the litigation. NOM was aware of the state's
position and could have had its views presented to this Court through a timely filed amicus brief.

Prejudice to the parties from the intervenors' delay (second factor) is evident here as
well. Because the Attorney General concluded that it was necessary to continue implementing
the marriage ban until there could be a judicial ruling on its constitutionality, any delay in the
Court's ability to reach a judgment injures the plaintiffs' rights. In addition, if the parties must
now reverse course, review a new set of arguments, brief responses to them, and argue the

Page 5 -    STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO
            INTERVENE

summary judgment motions again, they will all suffer the prejudice of putting in additional time and expense and attorney fees—solely because NOM decided not to seek intervention until now.

But the third factor—the reason for and length of delay—may be the most compelling. In evaluating the third factor, courts consider "why the party seeking to intervene waited as long as it did." *Silver*, 166 F.R.D. at 424 (citing *Officers for Justice v. Civil Svc. Comm'n*, 934 F.2d 1092, 1095 (9th Cir. 1991)); *see also Heartwood, Inc. v. U.S. Forest Svc.*, 316 F.3d 694 (7th Cir. 2003) (vacating order granting intervention and remanding to determine when intervenors "first knew or should have known that the suit could affect their interests and to weigh the prejudice caused by the delay against that which would result if intervention were denied").

NOM has not given any good reason for its decision to wait. NOM president Brian Brown has submitted a sworn declaration that he did not learn until March 2014 "that the Attorney General of Oregon and the other defendants in this case were not going to defend Oregon's marriage laws in this litigation." That isn't true. In the motion itself, NOM says that it learned the state defendants' position when they filed their Answer on February 24, 2014. (*See* NOM Mot. to Intervene, at 7, ECF No. 87.) That is closer, although it is not the correct date either. As described above, NOM learned the state defendants' position and publicly criticized it on February 20, 2014.

NOM's proffered reasons for its delay do not state a reasonable basis for delay. NOM's own recitation indicates that it did nothing until mid-March, not even beginning to react until the state defendants' summary judgment brief was filed, and was exactly consistent with their answer and the Attorney General's public announcement. (*See* NOM Mot. to Intervene, at 7.) Its decision to wait is not a good reason for all the parties to the litigation to wait for NOM to catch up. And neither is NOM's failure to identify any Oregon members with even arguable interests at stake until "only days ago." Mr. Brown testifies that he could not find any individuals who were willing to intervene on their own behalf, but that his legal counsel told him over the weekend of April 19 that NOM could intervene, and that he has "now ascertained" that NOM has members

Page 6 -   STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO
            INTERVENE

with protectable interests. (*See* Brown Dec., ¶¶ 4 – 5.) NOM's own internal processing delays, though, should not cause the entire case to be delayed.

In short, NOM knew two months ago that the state defendants would remain in the case as defendants; it knew two months ago that they had determined they would not and could not defend the law; and it knew two months ago that the Attorney General would argue on behalf of all the state defendants that there was no rational basis for the law. But it waited until the eve of oral argument—late at night, less than 48 hours before a long-scheduled hearing—to ask for intervention, and to ask that the parties' oral argument be cancelled and rescheduled to the summer, so that NOM could file its own brief on its own schedule. NOM's decision to wait until 11:00 p.m. on April 21 to seek intervention renders its motion untimely, and this Court should exercise its discretion to deny the motion on that basis alone. *See, e.g., R & G Mortgage Corp. v. Fed. Home Loan Mortgage*, 584 F.3d 1, 9 (1st Cir. 2009) (no abuse of discretion for trial court to determine that "a delay of two and one-half months" was "inexcusable"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (motion for intervention untimely when intervenor "offer[ed] no explanation for waiting to file his intervention motion until three days prior" to critical hearing). But the motion fails the other criteria for intervention as of right as well.

**B.      NOM and its members do not have any significant protectable interest relating to the subject of this suit.**

Intervention as of right requires that the intervenor have a "significant protectable interest in the transaction that is the subject of the case": some legally protected interest with a relationship to the claims at issue. *See Silver v. Babbitt*, 166 F.R.D. at 425 (citing *Donaldson v. United States*, 400 U.S. 517 (1970)). Even if NOM stands on the interests of three purely anonymous members that Mr. Brown avers exist in Oregon, and even if his assertions are taken as true, NOM still fails this test. Its members have no legally protected interest in preventing same-sex couples in Oregon from obtaining the benefits of marriage, and no legal footing to step into the role of an attorney general and defend the constitutionality of an Oregon law.

Page 7 -    STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO
              INTERVENE

1. **NOM has no significant interest in standing in the shoes of the Attorney General to defend the constitutionality of Oregon law.**

Where state defendants are named in litigation directly challenging the constitutionality of a state law, only the Attorney General may speak for the State's interests. The Attorney General is charged with performing all legal services for the state in her capacity as the state's "chief law officer." ORS 180.060(6); ORS 180.210. In this case, she has performed those duties. She did so by considering the broad reaches of Oregon and federal law as well as the legal rights of Oregonians, by analyzing the way the laws of this state withstand judicial scrutiny under the federal constitution, and by reaching a considered legal position on the basis of all the laws that the state defendants are charged with enforcing. Specifically, her legal position in this case reflects her legal determination that the justifications offered to defend challenges to other state bans on same-sex marriage could not be proffered because they would be inconsistent with other Oregon law. For example, the primary justification offered by many state defendants has been the assertion that a ban on same-sex marriage is necessary to protect children. Such an argument is foreclosed in Oregon by state law that implements the state's "interest in the promotion of stable and lasting families, by extending benefits, protections and responsibilities to committed same-sex partners and their children that are comparable to those provided to married individuals and their children by the laws of this state." ORS 106.305(5).

NOM and its members have no right to substitute their voice or their judgment for that of the Attorney General simply because they disagree with the chief law officer's conclusions. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2664 (2013) (only a state's designated agents may represent its interests in defending the constitutionality of its laws); *see also Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 149-50 (1967) (describing the Supreme Court's "consistent policy" "to deny intervention to a person seeking to assert some general public interest in a suit in which a public authority charged with the vindication of that interest is already a party"). Nor is it a sufficient basis for intervention to claim that NOM would present legal arguments that have already been presented and analyzed by the state defendants.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

While NOM asserts that arguments could be made in support of Oregon's marriage ban, it fails to identify any argument that has not already been presented to this Court by the defendants. Instead, what it would appear to offer this Court is the same arguments identified and presented by the state defendants without the context of how those arguments fail when considered in the full context of Oregon law. For example, NOM's proposed answers contain factual assertions and denials that are flatly contradicted by Oregon law. In its *Rummell* answer, "NOM denies that Paul and Ben, two men, can together have a 'child,' as that is a biological impossibility." (*See* NOM Proposed Answer to Rummell Pls.' Amd. Com., ¶ 4.) But under Oregon law, "[a]n adopted child bears the same relation to adoptive parents and their kindred in every respect pertaining to the relation of parent and child as the adopted child would if the adopted child were the natural child of such parents." ORS 109.050. And Oregon does not consider sexual orientation in making adoption placements. (*See* Potter Dec. in Support of State Defs.' Resp. to Mot. for Summ. J., ¶ 4.) Thus, unlike the legal analysis put forward by the Attorney General, NOM's arguments would undermine the determinations of the Oregon Legislative Assembly about the state's legal policy with respect to same-sex couples and their families. NOM does not have a significant protectable interest in making the same arguments the Attorney General has already analyzed and rejected, while ignoring the analysis of those arguments in relation to Oregon law.

NOM's stated interest in appealing a final judgment by this Court also is not a legally protected interest—because it could not actually take an appeal. It would have to have Article III standing for an appeal of any judgment in this case, and it does not. Standing "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997), cited in *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). Article III standing may not be necessary for intervention—but it is necessary for an appeal. And in *Hollingsworth v. Perry*, the Supreme Court found that the official proponents of Proposition 8 (a ballot initiative amending the

Page 9 -   STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO INTERVENE

California constitution to prohibit same-sex marriage) did not have standing to appeal the District Court's decision enjoining the enforcement of that law, on the grounds that it was unconstitutional. Although they had been permitted to intervene in the District Court's case, the Supreme Court ruled that they would have to have had Article III standing to appeal, and that they did not.

The Proposition 8 intervenors did not have standing, the Supreme Court held, because "to have standing, a litigant must seek relief for an injury that affects him in a 'personal and individual way.'" 133 S. Ct. at 2662 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, n. 1). To have standing on appeal, the litigant has to have a "direct stake in the outcome" of the case. *Id*. (citing *Arizonans for Official English*, 520 U.S. at 64). And the *Hollingsworth* court found that the Proposition 8 proponents had no direct stake in the outcome of the California case. "Their only interest in having the District Court order reversed was to vindicate the constitutional validity of a generally applicable California law," *id*., and that interest was too general to support Article III standing:

> We have repeatedly held that such a "generalized grievance," no matter how sincere, is insufficient to confer standing. A litigant "raising only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."

*Id*. (citations omitted). Just as the Proposition 8 proponents had no direct stake in the outcome of the California constitutional challenge, NOM has no direct stake here.

Thus, to the extent NOM seeks intervention as an organization, this Court should deny the motion because it has no legally protectable interest to assert. To the extent NOM bases its motion for intervention on the purported interests of its three unidentified members, the motion also fails.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

2. **The county clerk has no significant legally protectable interest in the constitutional challenge here.**

The first member claimed by NOM is an "Oregon County Clerk," not identified by name or by county. There is no evidence that this particular county clerk would have any opposition to issuing marriage licenses to same-sex couples, if their marriage were legal in Oregon. There is, in fact, nothing to suggest that the county clerk in question is even aware of his or her role in this case. The full extent of the evidence relating to this clerk consists of this, from Mr. Brown: "Among NOM's Oregon members are a county clerk." (*See* Brown Dec., ¶ 6, ECF No. 88.)

NOM's legal capacity to represent the interests of a county official is not explained in the brief. NOM has chosen not to identify the county or the official. As such, it has not made any showing that it has been authorized to speak on behalf of a county official, or that any interest group is empowered to speak for the county's officers in that county. "The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

NOM is correct that, in ruling on a motion to intervene, "a district court is required to accept as true the non-conclusory allegations made in support of [the] intervention motion." Sw. *Ctr. for Biological Diversity v. Berg*, 268 F3d 810, 819-20 (9th Cir. 2001). But here, NOM asserts only conclusory allegations and unsupported assumptions in support of its bid to gain standing by way of this unnamed county clerk. The Court is asked to assume that the clerk has the legal capacity to assert his or her official interests without disclosing his or her identity, through a national single-issue advocacy group, without needing any authorization from any other county official. (And, of course, the Court is asked to assume that the clerk actually opposes the plaintiffs' case.)

But the Court cannot determine the rights and responsibilities of this one particular clerk without knowing the identity of the clerk and the county for whom the clerk works. Oregon counties have different forms of governance, defined by county codes, executive orders, administrative rules, and personnel rules. Those differences affect whether, as a matter of law,

Page 11 - STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO INTERVENE

the clerk identified by NOM would have *any* authority to use his or her official capacity to support intervention by a non-county entity, even if NOM had established (which it has not) that the clerk actually wanted to. But without the name of the clerk or the county, neither the parties nor the Court has any way to consider or test NOM's bid to intervene by way of this clerk.

Clerks within Oregon have different roles from one county to the next. There are two types of counties in Oregon: charter counties and statutory counties. In statutory counties, the clerk is an elected official pursuant to ORS 204.005. In charter counties, the clerk can be either appointed or elected. An appointed clerk almost certainly would be barred from using his or her position for personal political purposes and could not intervene in litigation without approval by vote of the county commissioners. Additionally, it is unclear how NOM could represent the clerk's legal interests without approval by the county attorney, county commissioners, or county administrator. (Here, of course, NOM has not even demonstrated that it has the approval of the clerk.) NOM's strategic decision not to name the clerk prevents the Court from determining what limitations that county has put on the clerk to act in his or her official capacity in litigation concerning matters that affect the unnamed county.

Multnomah County illustrates one of the possible structures of county government that could be at issue. Multnomah County is a constitutional home rule county with power to exercise "authority over matters of county concern." Or Const, Art VI, § 10; *see also Multnomah Kennel Club v. Dep't of Revenue*, 295 Or. 279, 281 (1983). Multnomah has no designated county clerk. The clerk function is performed within the Department of Assessment and Taxation, which is headed by the County Assessor, Defendant Randy Walruff. The Assessor is appointed, not elected. (*See* Declaration of Jenny Madkour, ¶ 3.) Under Multnomah County Code Section 25.320 (F), the County Attorney "provides legal services for the county, represents its officials and employees, and controls and supervises all civil actions and legal proceedings in which the county is a party or has a legal interest." Only the county attorney and the county commissioners may decide to employ outside counsel to represent the interests of the County. (*See* Madkour

Page 12 -  STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO INTERVENE

Dec.,¶¶ 5 – 6, Ex. A.) Even employing counsel for the elected officials of Multnomah County requires an authorization by the Board of Commissioners. A third-party organization could not represent the legal interests of an appointed official, let alone an elected official, without express approval or authority from the Multnomah County Board of Commissioners. (*See id.*, ¶ 7, Ex. B.) And it would also be a violation of state law for an appointed official to use his county position to further a personal political agenda. ORS 260.432.

If the one anonymous clerk in question works for a home rule county subject to limitations similar to those placed on officials of Multnomah County, NOM would have no ability to express that clerk's official interests. Even if the clerk in question is an elected official, he may still be barred from allowing outside counsel to represent his official interests without express approval from the county's governing body. We cannot know, because NOM has chosen not to identify the clerk or the county, or to provide any authority in support of its attempt to intervene by way of this one member.

Granting intervention while allowing the clerk in question to remain anonymous would also present significant practical and public policy problems. If the clerk is an elected official, the clerk could be running for election in the May 20, 2014 primary. If the clerk is not re-elected, that would affect NOM's intervention bid. But if no one knows the identity of the clerk, there is no way for the parties or the Court to know whether the clerk has been unseated. Furthermore, allowing a county clerk to use his or her office for political purposes while staying anonymous would deny the voters a meaningful forum to discuss the clerk's actions and would deny the public a mechanism for holding the official accountable for his or her actions. Citizens could not even know where to direct a public records request for more information.

Having given no information whatsoever about the identity, position, and government of which the anonymous clerk is an official, NOM can only establish at most, even under the forgiving *Berg* standard, that the clerk is a member of the organization in his or her personal capacity. A government officer not acting within his scope of employment or under color of state

Page 13 -   STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO
        INTERVENE

law acts as a private citizen. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835-836 (9th Cir. 1996) (citing *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) ("acts of state officials in the ambit of their personal pursuits are not state action")). This member's job, then, is legally irrelevant. The clerk, in his or her own personal capacity, is in the position of any other voter— and has no particularized interest as such. (*See* section 4, below.)

Incidentally, NOM also has not identified any interest that is related to the constitutional challenge here. County clerks have an obligation to comply with the law, as NOM says—but this case would not have any effect on that obligation. If the law changes, the obligation to obey the law will remain the same. NOM has not explained any interest on the clerk's part in the constitutional status of the ban on same-sex marriage that would be sufficient to support a county clerk's intervention in this litigation.

**3.      Wedding services planners have no significant legally protectable interest in the constitutionality of state law.**

The second member is an equally anonymous "wedding services provider," of which Mr. Brown also says there is "more than one," who has a religious objection to playing any support role in the marriage of two men or two women. But the standard for intervention as of right is not that the intervenor have a belief, or a preference—the standard is that NOM's members must have a legally protected interest that is related to the claims at issue. "The relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the applicant.'" *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir 2002).

The claims at issue in this case are the constitutionality of Oregon's same-sex marriage ban. Again, NOM has failed to establish a sufficient nexus between those claims and any legally protected interest of a wedding planner who would prefer to not provide services to same-sex couples that is any greater than the general concerns of individuals who may have voted for the ban in the first place. The potential for a possible effect down the line might be the subject of

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

some future litigation, when there is a ripe controversy—but it is far too attenuated to serve as a basis for intervention in this case.

    **4.      Individual voters have no particularized legally protectable interest in the constitutional challenge here.**

The third member NOM identifies is a voter who voted in favor of Measure 36, which added Article 15, section 5a, to the Oregon constitution. NOM provides no legal support for its assertion that those voters have a "particularized interest" in the case, when in fact they have a textbook generalized interest. NOM concedes that its voter members' interests are identical to that of more than one million 2004 voters. "It is settled beyond peradventure . . . that an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998), *quoted in U.S. v. Alisal Water Corp.*, 370 F.3d at 920. "A generalized public policy interest shared by a substantial portion of the population does not confer a right to intervene." *Bates v. Jones*, 904 F. Supp. 1080, 1086 (N.D. Cal. 1995) (citing *California ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 792 F.2d 779, 78182 (9th Cir. 1986), and *Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980)). And the Ninth Circuit has held that a voter's interest in the outcome of an election is "generalized." In *Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011), the Ninth Circuit ruled that voter and taxpayer standing were not sufficient to confer standing to challenge President Obama's election: "Even as a voter, Fuqua has no greater stake in this lawsuit than any other United States citizen. The harm he alleges is therefore too generalized to confer standing." 664 F.3d at 782. Although *Drake* is not an intervention case—it was a case about standing—it nonetheless illustrates that a voter's interests in an election are generalized. And a generalized interest is not enough for intervention.

Accordingly, NOM has not shown that any member has a significant protectable interest in the claims in this case, or that it does as an organization.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**C.      The Court's decision will not impair any legally protected interest of NOM's or those of its members.**

There is considerable overlap between the prior factor (whether any member has a significant protectable interest) and the remaining two factors (whether the disposition of the action may impair the applicant's ability to protect its interest and whether the existing parties adequately represent the applicant's interests). Because NOM has failed to show that any of its three members have a significant protectable interest, it follows that the disposition of this case cannot impair anyone's ability to protect its interest. But even if the Court were to assume that the members have some legally protected interest in the constitutionality of Oregon's marriage ban, NOM has failed to show that those interests would be substantially affected in a practical sense by the determination to be made in this case.

With respect to the clerk, his or her official duties may change as a result of a ruling by this Court, but not in any way that implicates the clerk's legal interests. The clerk's legal interests remain the same—to follow the legal requirements for issuing marriage licenses. If those legal requirements change as a result of a judicial determination that the marriage ban is unconstitutional, there is no impairment of the clerk's duties. The clerk will still follow the legal requirements for issuing marriage licenses.

The other members' arguments are even weaker. The wedding services planner's purported impairment is that her personal beliefs might be "in conflict with Oregon law." There is no explanation of why this would impair a significant legally protected interest. Each Oregon citizen does not have a right to insist on every aspect of Oregon law falling into alignment with each of their individually held religious beliefs. Moreover, even if the wedding services planner will someday suffer an infringement of her religious rights, as a result of the interaction between Oregon's public accommodation laws and any ruling in this case (*See* NOM Mot. to Intervene, at 20), the disposition in this action will in no way impede her ability to assert those rights through a challenge to the public accommodation laws. And the generalized interest of voters does not amount to a legally protected interest that is capable of impairment.

Page 16 -  STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO INTERVENE

**D.      NOM has failed to show that intervention is necessary because the state defendants have not provided adequate representation of any legally protected interests.**

The fourth factor is whether existing parties adequately represent the applicant's legally protected interest. In analyzing this factor, it is important to consider what NOM proposes to add to the litigation. NOM claims it will present arguments in support of Oregon's marriage ban, but fails to identify any arguments that have not already been put before this Court by the state defendants. If NOM's efforts are limiting to presenting those same arguments but removing the analysis the state defendants also presented, that does not reflect inadequate representation of a legally protected interest. Neither NOM nor its members have a legally protected interest in presenting the same potential rationales for the marriage ban that the state defendants have already analyzed in their briefing.

NOM has failed to establish that it is entitled to intervention as of right.

### III.      NOM HAS FAILED TO ESTABLISH ANY BASIS FOR PERMISSIVE INTERVENTION

NOM has not shown that it qualifies for permissive intervention either. Although the Court has greater discretion in allowing permissive intervention, an applicant still must show "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013). NOM has not done so.

NOM fails the threshold element of timeliness, of course, by having unreasonably delayed its intervention until now. And NOM is seeking a lengthy delay to file its own summary judgment response—despite averring that it could have filed one on April 22—and additional delays for the other parties' responses, and for an additional hearing on its own legal arguments. As a result, the intervention it seeks would substantially and unduly delay and prejudice the adjudication of the constitutional rights at stake in this case. Delay would not be a particular factor here if NOM had acted with reasonable speed when it knew the Attorney General's position, in February. It chose not to, and should not be rewarded for its delay by obtaining its

Page 17 -   STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO
              INTERVENE

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

own separate briefing schedule, its own hearing on its own arguments, and a later decision on the plaintiffs' rights.

It is also not at all clear that this Court has an independent basis for jurisdiction over NOM in this case. The Court cannot allow intervention unless it has independent grounds for jurisdiction over the intervenor's claims or defenses, because the Rules of Civil Procedure cannot themselves extend federal court jurisdiction. Fed. R. Civ. P. 82. NOM has not stated any claims—nor does it have any. So any jurisdiction would have to derive from its defenses. Its only stated affirmative defense is an assertion that there is no case or controversy here unless a defendant actively fights the plaintiffs' claims. (*See* NOM's two proposed Answers, ¶ 49, ECF Nos. 87 and 89.) NOM's "defenses," then, consist of its desire to come into the case to make its own legal arguments and to deny specific allegations of fact that the existing defendants had admitted (e.g., "NOM . . . denies that one can conclude that marriage will not be [a]ffected by . . . experiments ['with a genderless definition of marriage']," *see* Proposed Rummell Answer, at ¶ 6.) And the legal arguments NOM wishes to make are legal arguments already presented to this Court by the state defendants—NOM simply wishes to make them without the accompanying legal analysis offered by the state defendants.

But the Court's jurisdiction over NOM in its desired role in the litigation is not at all clear—nor does NOM explain it. Presumably, for NOM to permissively intervene as a defendant here, the plaintiffs would have to have some articulable federal claim against NOM, such that NOM would be able to have a relevant defense to that claim. But the plaintiffs don't have any claim here against NOM or its members; NOM has no role in the enforcement of the state laws at issue and no right to defend those laws. And the plaintiffs' claims against the actual defendants give NOM no purchase here, because NOM has no basis for third-party standing, and no right to serve as a private attorney general when the actual Attorney General is speaking for the state defendants. This Court could not resolve the legal question or grant relief in this case by ordering

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

NOM to do anything. Nor does NOM have any counterclaim against the plaintiffs that would arise out of the single constitutional challenge at issue in this case.

And as discussed above, NOM (and its members) have no legal right to speak for the state defendants or to step into the Attorney General's shoes to assert the defenses that they think she should be making. There are only two defensive roles in this constitutional challenge: the state defendants charged with enforcing the relevant laws, and the county assessor from whom the plaintiffs sought marriage licenses. NOM does not have a basis to force its way into this case as a new defendant, simply because it does not like the existing parties' analysis.

There being no grounds for either permissive intervention or intervention as of right, this Court should deny NOM's motion to intervene.

## IV.    THOSE INTERESTS NOM HAS ARTICULATED COULD BE SERVED BY PERMITTING IT TO APPEAR AS AN AMICUS

NOM also had six weeks' notice in which to prepare and file an amicus brief by the Court's deadline of April 1. It chose not to.

That said, the state and county defendants have no objection to the Court considering as many arguments as it may wish to hear on the question of whether the Oregon ban on same-sex marriage violates Oregonians' civil rights. In fact, the Supreme Court recently recognized the value that amicus can serve, assuring the adversarial presentation of the issues "by the participation of *amici curiae* prepared to defend with vigor the constitutionality" of the law. *United States v. Windsor*, 133 S. Ct. 2675, 2687 (2013).

The state defendants determined that they could not and would not argue in support of the ban. The Multnomah County Assessor made the same determination. The Court may, in its discretion, wish to consider written arguments in support of the ban – in addition to those made by defendants in other cases, which are addressed in the state defendants' summary judgment response and in the written decisions and briefs from other states. While the defendants see no

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

obligation for the Court to do so, they would respectfully defer to a decision by this Court to accept NOM's arguments as a particularly late-filed amicus brief.

If the Court wants to hear those arguments, the defendants would ask that it do so on the condition that NOM not cause any further delay in the litigation in the course of submitting a written brief. NOM advised in its motion that it was prepared to file a summary judgment opposition by April 22 (*see* Mot. to Intervene, at 8), so it should have no trouble submitting that brief to the Court upon demand.

DATED May  2 , 2014.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


_____s/ Anna Joyce_____
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
ANNA M. JOYCE #013112
Solicitor General
MARY WILLIAMS #911241
Special Assistant Attorney General
Trial Attorneys
sheila.potter@doj.state.or.us
anna.joyce@doj.state.or.us
mary_h_williams@msn.com
Of Attorneys for State Defendants


JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON


_____/s/ Katharine von Ter Stegge_____
Jenny M. Madkour, OSB No. 98298
County Attorney
Katharine von Ter Stegge, OSB No. 032300
Assistant County Attorney
Of Attorneys for Defendant Walruff


Page 20 -  STATE AND COUNTY DEFENDANTS' JOINT RESPONSE TO THE MOTION TO INTERVENE