**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Kristina J. Holm**, OSB No. 112607
KJHolm@perkinscoie.com
**Misha Isaak**, OSB No. 086430
MIsaak@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Jennifer Middleton**, OSB No. 071510
JMiddleton@jjlslaw.com
JOHNSON JOHNSON & SCHALLER PC
975 Oak Street, Suite 1050
Eugene, OR 97401
Telephone:  541.683.2506
Facsimile:  541.484.0882

Cooperating attorneys on behalf of the
ACLU Foundation of Oregon, Inc.

**Kevin Díaz**, OSB No. 970480
KDiaz@aclu-or.org
ACLU FOUNDATION OF OREGON, INC.
P.O. Box 40585
Portland, OR 97240
Telephone:  503.227.6928
Facsimile:  503.227.6948

**Rose Saxe**, *pro hac vice*
RSaxe@aclu.org
**Amanda Goad**, *pro hac vice*
AGoad@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212.549.2627
Facsimile: 212.549.2650

Attorneys for Plaintiffs Rummell, West, Chickadonz, Tanner, and Basic Rights Education Fund

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| PAUL RUMMELL and BENJAMIN WEST;<br>LISA CHICKADONZ and CHRISTINE TANNER;<br>BASIC RIGHTS EDUCATION FUND,<br><br>                              *Plaintiffs*,<br><br>                    v.<br><br>JOHN KITZHABER, in his official<br>capacity as Governor of Oregon; ELLEN<br>ROSENBLUM, in her official capacity as Attorney<br>General of Oregon; JENNIFER WOODWARD, in<br>her official capacity as State Registrar, Center for<br>Health Statistics, Oregon Health Authority, and<br>RANDY WALRUFF, in his official capacity as<br>Multnomah County Assessor,<br><br>                              *Defendants*. | No. 6:13-cv-02256-MC<br><br>**JOINT RESPONSE IN<br>OPPOSITION TO<br>MOTION TO INTERVENE**<br><br>By Plaintiffs Paul Rummell,<br>Benjamin West, Lisa Chickadonz,<br>Christine Tanner, and<br>Basic Rights Education Fund<br><br>and<br><br>Plaintiffs Deanna L. Geiger,<br>Janine M. Nelson, Robert Duehmig,<br>and William Griesar<br>(Plaintiffs in Lead Case) |

JOINT RESPONSE IN OPPOSITION TO MOTION
TO INTERVENE

DEANNA L. GEIGER and JANINE M.
NELSON; ROBERT DUEHMIG and
WILLIAM GRIESAR,

               *Plaintiffs*,

      v.

JOHN KITZHABER, in his official
capacity as Governor of Oregon; ELLEN
ROSENBLUM, in her official capacity as Attorney
General of Oregon; JENNIFER WOODWARD, in
her official capacity as State Registrar, Center for
Health Statistics, Oregon Health Authority, and
RANDY WALRUFF, in his official capacity as
Multnomah County Assessor,

               *Defendants*.

No. 6:13-cv-01834-MC
(Lead Case)

JOINT RESPONSE IN OPPOSITION TO MOTION
TO INTERVENE

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

LEGAL STANDARDS ......................................................................................... 5

ARGUMENT ........................................................................................................ 6

    I.      NOM Does Not Meet the Requirements of Mandatory Intervention ................... 6

          A.      NOM's Application Is Not Timely ............................................... 6

          B.      NOM Has No "Significant Protectable Interest" That Could Be Impaired By This Litigation ...................................................... 10

               1.      NOM's Measure 36 Supporter Members .................................... 11

               2.      NOM's Wedding Services Provider Member ............................. 11

               3.      NOM's "County Clerk" Member ................................................ 12

          C.      NOM Lacks Standing to Appeal ................................................ 15

          D.      The Existing Parties Adequately Represent the Legal Interests of NOM's Members ...................................................................... 17

    II.     The Court Should Not Grant NOM Permissive Intervention .............................. 18

    III.    Consideration of the Summary Judgment Motions Should Proceed Without Further Delay ....................................................................................... 19

CONCLUSION ..................................................................................................... 19

i-  JOINT RESPONSE IN OPPOSITION TO MOTION TO INTERVENE

86959-0002/LEGAL120567540.5

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES

Page

**Cases**

*Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (9th Cir. 1978)......................................................... 10

*Clarke v. Baptist Memorial Healthcare Corp.*, 264 F.R.D. 375 (W.D. Tenn. 2009) .................... 6

*Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007).................. 10

*Cooke v. Hickenlooper*, No. 13-01300, 2013 WL 6384218 (D. Colo. Nov. 27, 2013) ............... 12

*Dandridge v. Jefferson Parish School Board*, 249 F.R.D. 243 (E.D. La. 2008) ........................... 6

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) .................................................................... 6

*Hanggi on Behalf of Oregon Public Employees Retirement Fund v. Hartford Fire Ins. Co.*, 132 Or. App. 601, 889 P.2d 365 (1995)................................................................................ 18

*Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013).................................................................. passim

*JG v. Douglas County School Dist.*, 552 F.3d 786 (9th Cir. 2008) ............................................. 14

*Li v. State*, 338 Or. 376, 110 P.3d 91 (2005) ....................................................................... 12, 16

*Lockyer v. City and County of San Francisco*, 95 P.3d 459 (Cal. 2004)..................................... 13

*McDonald v. Means*, 300 F.3d 1037 (9th Cir. 2002)................................................................... 18

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007)..................... 11, 17

*People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 171 F.3d 1083 (7th Cir. 1999) ............................................................................................................................ 13

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009) .................................. 6

*Perry v. Schwarzenegger*, 630 F.3d 898 (9th Cir. 2011) ................................................. 13, 16, 18

*State Farm Mut. Auto. Ins. Co. v. Sugrue*, 132 F.3d 40 (9th Cir. 1997)..................................... 15

*Westlands Water Dist. v. United States*, 700 F.2d 561 (9th Cir. 1983) ...................................... 10

**Statutes**

ORS 180.060(1)(d) ....................................................................................................................... 17

ORS 180.220(1) ............................................................................................................................ 17

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES
### (continued)

**Page**

ORS 180.235(1) ............................................................................................... 17

ORS 659A.001 ............................................................................................... 11

**Other Authorities**

Wright & Miller, *Federal Practice & Procedure* (3d ed. 2013) ........................................... 10, 18

**Rules**

Fed. R. Civ. P. 24(a)(2) .................................................................................... 5

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................. 5

Fed. R. Civ. P. 24(b)(3) ..................................................................................... 6

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## INTRODUCTION

Thirty-eight hours before the Court heard oral argument on the motions for summary judgment in these consolidated cases — a hearing that had been scheduled for three months — the National Organization for Marriage ("NOM") moved to intervene.  The following day, just 27 hours before the summary judgment hearing, NOM moved to postpone the hearing.  NOM's purpose in deploying these surprise, last-minute motions is transparent: it seeks to disrupt the orderly disposition of this litigation.

NOM has no stake in this case.  NOM is an out-of-state organization that supports laws excluding same-sex couples from marriage, in Oregon and elsewhere.  But just because NOM and its members dislike plaintiffs' position does not empower it to become a party to this case. As the U.S. Supreme Court held just last term, proponents of an enacted ballot initiative "have no 'personal stake' in defending its enforcement that is distinguishable from the general interest of every citizen of [the State]."  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2263 (2013).  NOM points to certain members who it says are affected by this litigation to a greater extent than other Oregonians — in particular, it claims as members voters who supported passage of Measure 36, a wedding services provider, and a county clerk.  But the rights and legal obligations of these people are not at issue in this case; at bottom, these are people who simply would rather live and work in a state that does not license and recognize the marriages of same-sex couples.  As for the county clerk specifically, this person is a NOM member only in her individual capacity, not in her official capacity; as a private individual, she is situated no differently than any other Oregonian who supports excluding same-sex couples from marriage.  But even if NOM could act on her behalf in her official capacity (which it cannot do), a county clerk with only a ministerial duty of issuing marriage licenses has no legal interest in the outcome of this litigation.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

NOM's true interest in this litigation — the simple policy preference of its members to maintain enforcement of Oregon's marriage exclusion — is not enough to warrant intervention into this case, especially not at this late date.

If NOM sincerely wanted to participate in this case to defend Oregon's marriage bans, rather than merely to disrupt the proceedings, it could have sought to intervene months ago. As detailed below, the State's position that the bans have no constitutional justification has been public knowledge for months. Further, if NOM wanted to present arguments to this Court, it was free to file an amicus brief before the April 1 deadline. Indeed, NOM is *still* free to seek leave to file an untimely amicus brief, and — as long as it does not delay the Court's consideration of the pending motions for summary judgment — the Rummell and Geiger plaintiffs do not object to NOM doing so. But because NOM's legal interests are not at stake here, and because NOM's motion is unjustifiably late, the Rummell and Geiger plaintiffs respectfully request that this Court deny the motion to intervene.

## BACKGROUND

In these consolidated actions, four same-sex couples and Basic Rights Education Fund allege that Oregon laws excluding same-sex couples from marriage violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution. Two of the plaintiff-couples — Deanna L. Geiger, Janine M. Nelson, Robert Duehmig, and William Griesar (collectively, the "Geiger plaintiffs") — filed suit in this Court on October 15, 2013. (Dkt. 1.) The other plaintiffs — Paul Rummell, Benjamin West, Lisa Chiackdonz, Christine Tanner, and Basic Rights Education Fund (collectively, the "Rummell plaintiffs") — filed suit on December 19, 2013. (Dkt. 12.) On January 22, 2014, this Court consolidated the two actions and conducted a Rule 16 conference. (Dkt. 33.) At that conference, the Court set a briefing schedule for the plaintiffs' motions for summary judgment. (*Id.*) Also at that conference, the Court set oral argument on the motions for summary judgment for April 23, 2014. (*Id.*)

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

The Court modified the briefing schedule only slightly by order of February 13, 2014. (Dkt. 41.)  In that order, the Court invited amicus briefs and set a deadline for such briefs for April 1, 2014.  All parties worked diligently to comply with the Court's scheduling orders.  The Rummell and Geiger plaintiffs filed briefs in support of their motions for summary judgment on February 18, 2014.  (Dkts. 43-44.)  Defendant Randy Walruff (the "County defendant") filed a response to the motions for summary judgment on March 4, 2014.  (Dkt. 59.)  And defendants John Kitzhaber, Ellen Rosenblum, and Jennifer Woodward (collectively, the "State defendants") filed a response to the motions for summary judgment on March 18, 2014.  (Dkt. 64.)  On April 1, three amici — a coalition of Oregon businesses, a group of religious organizations and clergy, and the campaign Oregon United for Marriage — filed amicus briefs.  (Dkts. 66, 69, 78.)[1]

The State defendants' response brief urged the Court to grant both summary judgment motions.  (Dkt. 64.)  This position was not a surprise.  In its Answer to the Geiger plaintiffs' complaint — filed three months earlier, on December 13, 2013 — the State defendants admitted or pointedly refused to deny many of the Geiger plaintiffs key allegations, adding: "[T]he State recognizes that significant and serious questions exist as to the legal defensibility of laws that deny same-sex couples the opportunity to enter into civil marriage in Oregon.  These legal questions are ultimately for the Court to decide."  (Dkt. 9.)  The State defendants also attached as an exhibit to their Answer a memorandum by then-Deputy Attorney General Mary Williams instructing state agencies to recognize out-of-state marriages of same-sex couples because:

> [The State] cannot identify *any* defensible state interest, much less a legitimate or compelling one, in refusing to recognize marriages performed between consenting, unrelated adults under the laws of another state — marriages that would be unquestionably accorded recognition if the spouses were of opposite sexes.  Likewise, we cannot identify any legitimate (much less compelling) state interest in requiring that each marriage recognized in Oregon contain one partner of each sex; no benefit to Oregon results from that

---

[1] Two of these amicus briefs were erroneously filed in the Rummell case, and then re-filed in the Geiger case several days later.

3-    JOINT RESPONSE IN OPPOSITION TO MOTION
    TO INTERVENE

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

limitation, and no injury would result from recognizing the
marriages.

And same-sex relationships are given legal recognition in Oregon,
in the form of domestic-partnership registration.  To defend a
refusal to acknowledge marriages, the state would have to
articulate a state interest in allowing partnerships but refusing to
recognize marriages — and, again, we cannot point to any such
interest that would pass constitutional muster at even the lowest
possible level of scrutiny, rational basis review.

(Dkt. 10 at 7.)  If this were not a clear enough indication of the State's position, an amicus brief

submitted to the Ninth Circuit by Attorney General Rosenblum (among others) on behalf of the

State on October 25, 2013, acknowledged that "exclusion of same sex couples from marriage is

unconstitutional."  (Dkt. 45:1 at 2.)[2]

The import of the State's position could not have been lost on NOM.  Nearly two years

earlier, the Obama administration had taken the same position with regard to the federal Defense

of Marriage Act.  (Declaration of Jennifer Middleton ("Middleton Decl.") Ex. A.)  Attorneys

general of Illinois, California, and Pennsylvania had also declined to defend their states'

marriage exclusion laws in court before the State defendants filed their Answer.  (Middleton

Decl. Ex. B.)  And attorneys general of Virginia and Nevada followed soon thereafter.  (*Id.*)

Indeed, counsel for NOM criticized the State's position in the Statesman Journal newspaper on

January 25, 2014, saying, "[W]e call on Gov. Kitzhaber and Attorney General Rosenblum to

uphold their oaths of office to defend the constitution of Oregon by defending the people's duly

enacted marriage amendment[.]"[3]  (Middleton Decl. Ex. C.)  On February 20, 2014, Attorney

General Rosenblum appeared at a press conference in the Oregon Capitol to confirm that she

---

[2] On March 28, 2013, Attorney General Rosenblum also joined an amicus brief in the
U.S. Supreme Court in the *Hollingsworth* case, in which she and other states' attorneys generals
argued that "State interests in marriage are furthered by ending the exclusion of same-sex
couples from the institution."  NOM itself filed an amicus brief in *Hollingsworth*, under the
name of its website "Marriage Anti-Defamation Alliance."

[3] Shawn Lindsay has not personally entered an appearance on behalf of NOM in this
case, but he was present as counsel for NOM at the summary judgment hearing on April 23,
2014, and his firm Harris Berne Christensen LLP is representing NOM in this case.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

would join the plaintiffs in urging the Court to strike down Oregon's exclusion of same-sex couples from marriage. (Middleton Decl. Ex. D.) The same day, NOM issued a press release reacting to Attorney General Rosenblum's announcement. (Middleton Decl. Ex. G.)

On Monday, April 21, 2014 — just two days before oral argument on the motions for summary judgment — counsel for NOM, Roger Harris, initiated contact by telephone with counsel for the Rummell and Geiger plaintiffs to confer on a motion to intervene. (Middleton Decl. ¶ 9.) Counsel for the Rummell and Geiger plaintiffs had not previously heard from NOM or Mr. Harris about this case. (*Id.*) Mr. Harris told counsel for the Rummell and Geiger plaintiffs that NOM planned to file a motion to intervene, a motion to delay the oral argument, and a substantive brief in opposition to the pending motions for summary judgment. (*Id.*) In fact, later that night, at 11:02 p.m., NOM did file a motion to intervene and supporting papers. (Dkt. 86.) The following day, at 10:47 a.m., NOM filed a motion to delay the oral argument. (Dkt. 92.) To date, NOM has not filed a substantive brief on the summary judgment motions.

The Court promptly denied the motion to delay the oral argument, and set the motion to intervene for briefing and argument. (Dkt. 93.) The Rummell and Geiger plaintiffs now jointly submit this response in opposition to NOM's untimely motion to intervene.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 24 governs intervention. Under the rule, there are two types of intervention: mandatory and permissive. Intervention is mandatory when the putative intervenor "claims an interest relating to … the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Intervention is permissible when the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is subject to a court's sound discretion. *McDonald v. Means*, 300 F.3d 1037, 1044 n.8 (9th Cir. 2002). The rule specifically provides: "In exercising its discretion, the court must

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

## I.    NOM DOES NOT MEET THE REQUIREMENTS OF MANDATORY INTERVENTION.

In the Ninth Circuit, an intervention-applicant must make four showings to qualify for mandatory intervention: "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). "Failure to satisfy any one of the requirements is fatal to the application[.]" *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). As NOM cannot satisfy these four criteria, mandatory intervention should be denied.

### A.    NOM's Application Is Not Timely.

As a threshold matter, NOM's application is untimely. Despite knowing that these cases have been pending for months, NOM filed its motion to intervene just 38 hours before the Court heard oral argument on the fully briefed motions for summary judgment. NOM gives no good cause for its belated motion. Permitting intervention would reward NOM's tardiness by derailing the orderly and prompt resolution of these cases.

Courts often measure an intervention-applicant's timeliness against the "point to which the suit has progressed[.]" *Clarke v. Baptist Memorial Healthcare Corp.*, 264 F.R.D. 375, 378 (W.D. Tenn. 2009). In *Clarke*, the Court denied intervention as untimely because the case had progressed to the summary judgment stage by the time the motion to intervene was filed. Similarly, in *Dandridge v. Jefferson Parish School Board*, 249 F.R.D. 243, 247 (E.D. La. 2008), the Court denied intervention as untimely where the motion to intervene was filed just four days

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

before the Court would either adopt or reject a proposed consent order at a fairness hearing. Likewise, here, NOM's intervention is simply too late.

The Geiger and Rummell cases have been pending since October and December 2013, respectively. They have received significant media attention since their filing, so NOM's Oregon members and lawyers were undoubtedly aware of these cases when they were filed. (Middleton Decl. Exs. E & F.) The Court consolidated the cases on January 22, 2014 — a development that was widely reported by the news media — and, at that hearing, set a schedule for briefing and argument on the forthcoming motions for summary judgment.

NOM explains its delay by saying that it did not begin to consider intervention until late February, when Attorney General Rosenblum announced that she would not defend Oregon's marriage exclusion. (NOM's Br. at 7.) For reasons it does not disclose, NOM then waited an additional month before it "began the process of identifying potential parties to intervene." (*Id.*) Thus, despite knowing that the Court had scheduled oral argument on the motions for summary judgment for April 23, 2014, NOM took two months to alert the parties and the Court that it wanted to participate in the case.

This explanation simply will not suffice. First, NOM's asserted surprise about Attorney General Rosenblum's late-February announcement is not credible. On October 16, 2013, the State's then-Deputy Attorney General, Mary Williams, issued a memorandum to the Department of Administrative Services advising the agency that, in light of *United States v. Windsor* and other developments, it would likely be unconstitutional for the State to deny recognition to the marriages of same-sex couples entered into in other states. (Dkt. 10 at 7.) The memorandum reasoned that the State had no rational basis to deny recognition to the marriages of same-sex couples. Putting an even finer point on the State's position nine days later, Attorney General Rosenblum signed an amicus brief on behalf of the State arguing that state marriage bans like Oregon's are unconstitutional. (Dkt. 45:1 at 2.)

7-   JOINT RESPONSE IN OPPOSITION TO MOTION
      TO INTERVENE

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

In the State's Answer to the Geiger complaint, filed on December 13, 2013, it wrote: "[T]he State recognizes that *significant and serious* questions exist as to the legal defensibility of laws that deny same-sex couples the opportunity to enter into civil marriage in Oregon. These legal questions are ultimately for the Court to decide." (Dkt. 9 at ¶ 48 (emphasis added).) Attached as an exhibit to the State's Answer was Ms. Williams's October 16 memorandum. Significantly, the State's Answer did not deny allegations that the bans were unconstitutional.

NOM is a sophisticated litigant — especially in litigation over the relationship rights of gay and lesbian individuals. NOM was aware that President Obama's administration had declined to defend the federal Defense of Marriage Act in *United States v. Windsor* and other cases, and that several state attorneys general had refused to defend their states' marriage exclusion laws. (Middleton Decl. Exs. A & B.) NOM must have known by October 16, or at the very latest, by December 13, of the likelihood that the State would not defend Oregon's marriage exclusion in these cases. Indeed, NOM's own counsel was quoted by the Statesman Journal newspaper on January 25, 2014, discussing the State's position in this litigation.

But regardless of whether NOM knew sooner, NOM admits that it has been considering intervention since Attorney General Rosenblum held a press conference in the Oregon Capitol announcing the State's position in this litigation on February 20, 2014. At that juncture, a responsible litigant in NOM's position would have checked the Court's publicly accessible docket. Seeing that two motions for summary judgment had been filed on February 18, and that a schedule for briefing and argument had been set on January 22, a responsible litigant in NOM's position would have either (a) moved to intervene promptly so as not to interfere with the existing schedule, and/or (b) if the circumstances had warranted, sought an enlargement of the summary judgment briefing schedule. To the extent NOM was concerned that legal arguments in defense of the bans were not being advanced, it also could have filed an amicus brief before the April 1 deadline to urge denial of the pending motions for summary judgment.

NOM did not do any of those things.  Instead, it waited two months, until just 38 hours before oral argument on the motions for summary judgment, to deploy its surprise motion.

The reasons NOM gives for its delay are no justification.  Though NOM says it began considering intervention in late February, it gives no reason for waiting an additional month — until the State filed its summary judgment brief — before it "began the process of identifying potential parties to intervene."  (NOM's Br. at 7.)  Attorney General Rosenblum's February 20 announcement endorsed the plaintiffs' position.  (Middleton Decl. Ex. D.)  Indeed, NOM undoubtedly understood the significance of Attorney General Rosenblum's February 20 announcement because, the same day, it issued a press release condemning her for "shamefully abandoning her constitutional duty to defend the marriage amendment overwhelmingly enacted by the people of Oregon."  (Middleton Decl. Ex. G.)  For purpose of deciding whether to intervene, NOM did not learn anything new about the State's position from its summary judgment brief.  NOM also does not explain why it took yet an additional month to check its own membership rolls.  At best, these delays were caused by NOM's own lack of diligence.  At worst, they were caused by a deliberate effort to disrupt the orderly disposition of this litigation.

NOM's explanation is belied by its last-minute conferral and filing.  If NOM were acting in good faith, and not simply trying to disrupt the litigation, it would at least have called counsel for the Rummell and Geiger plaintiffs several weeks or days earlier to give notice of its intent to intervene.  But instead of allowing counsel an opportunity to prepare for NOM's filing (and perhaps to respond before the summary judgment hearing), NOM's counsel waited until less than two days before oral argument on the motions for summary judgment to appear.  The Court should not countenance these tactics.

NOM's late entry into this case prejudices the Rummell and Geiger plaintiffs.  It appears that NOM's strategy is to scuttle the plaintiffs' ability to vindicate their constitutional rights by creating a procedural morass and lodging an appeal in the Ninth Circuit, in the hope that this would force a stay of a favorable judgment for the plaintiffs.  This could potentially forestall

plaintiffs' ability to marry in Oregon for years.  The prejudice to the plaintiffs would be significant.

The Court need not, and should not, facilitate NOM's strategy of disruption.  The Court has broad discretion to find that NOM's motion to intervene is untimely.  *See Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 658 (9th Cir. 1978) ("The question of timeliness is addressed to the sound discretion of the trial court and will be overturned only when an abuse of discretion is shown.").  The Rummell and Geiger plaintiffs respectfully request that the Court do so.

**B.    NOM Has No "Significant Protectable Interest" That Could Be Impaired By This Litigation.**

Regardless of the untimeliness of NOM's motion, NOM has no right to participate in these cases in any event because NOM has no "significant protectable interest" in this action.

To satisfy the requirement that an intervenor have a "significant protectable interest," the intervention-applicant must show that it has a stake in the litigation that is direct, substantial, and legally protectable.  7C Wright & Miller, *Federal Practice & Procedure* § 1908.1 (3d ed. 2013). It is well settled that an advocacy organization does not inherently have a direct, substantial, and legally protectable interest in the subject matter of its advocacy.  "Where … an organization has only a general ideological interest in the lawsuit — like seeing that the government zealously enforces some piece of legislation that the organization supports — and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed substantial."  *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007).  An organization's view of "what it regards as enlightened public policy" is not sufficient to establish the significant protectable interest necessary for mandatory intervention.  *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983).

NOM attempts to assert the interests of its members, but this approach fares no better. NOM has identified three types of members who it says have an interest in this litigation:

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

(1) supporters of Measure 36; (2) a wedding services provider; and (3) a county clerk. NOM has failed to provide the slightest evidentiary record to show that these members exist and that they endorse NOM's invocation of their membership to insert itself in this litigation. But even if it had adduced such evidence, these members do not give NOM a sufficient interest to intervene.

### 1.    NOM's Measure 36 Supporter Members.

As for the first type of member — supporters of Measure 36 — these people have no greater interest in this litigation than NOM itself. "[I]n a challenge to the constitutionality of an already-enacted statute … the public interest in its enforceability is entrusted for the most part to the government[.]" *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007). Members of the public who support the continuing enforcement of a law, even one they voted for ten years ago, do not have the kind of "significant protectable interest" required for intervention.

### 2.    NOM's Wedding Services Provider Member.

As for the second type of member — a wedding services provider — this individual has no particularized interest in this litigation either. This individual is not bound by the judgment in this case and his or her rights will be no different if plaintiffs prevail. Today, Oregon same-sex couples utilize the services of wedding industry vendors for various celebrations of their love and commitment, including religious and other commitment ceremonies associated with registration of Oregon domestic partnerships, with religious marriages, and with marriages entered into in other states. State law protects same-sex couples from discrimination in their procurement of these services. *See* ORS 659A.001 *et seq*. Same-sex couples' use of these services will continue regardless of the outcome of this case. The implication of NOM's argument seems to be that same-sex couples will use such vendors' services more often, and may therefore request the services of NOM's member with more regularity, if plaintiffs prevail. But this is precisely the type of remote, contingent, and speculative interest that the mandatory intervention rule does not recognize.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### 3. NOM's "County Clerk" Member

And, as for the third type of member — the unnamed county clerk — this person has no direct, substantial, and legally protectable interest in this litigation either. As an initial matter, if a county clerk pays membership dues to NOM, she does so as a private citizen, not in her official capacity. The law distinguishes between government officials acting as private citizens ("in their individual capacity") and acting on behalf of their government office ("in their official capacity").[4] The Office of the Lane County Clerk (to pick a county at random) cannot be a member of NOM; only the private individual who happens to hold that office can. But a private individual who goes to work every day as a county clerk has no greater legal interest in this litigation than the wedding caterer or the Measure 36 supporter.

But even if NOM could represent the interests of a county clerk in her official capacity (which it cannot do), this would not save NOM's motion. Under Oregon law, "marriage and the laws governing it are matters of statewide, not local, concern." *Li v. State*, 338 Or. 376, 396, 110 P.3d 91 (2005). The involvement of a county clerk in issuing a marriage license "is ministerial only." *Id.* In *Perry v. Schwarzenegger* — the case challenging California's Proposition 8 — a

---

[4] The Chief Judge of the District of Colorado recently supplied this helpful explanation of official capacity claims:

> Generally, a government official (whether elected or appointed) can assert rights in two different capacities. One pertains to the office in which the official serves. In that capacity, the official acts on behalf of, and is the representative of, the office that he or she holds. That role continues until the person no longer serves in the office, at which point, the official's successor assumes that role. An "official capacity" claim is one that is brought by or against the person acting as the representative of, or as substitute for, the office or agency. In other words, in an official capacity claim, one can readily replace the named individual with the name of the office itself. For example, an official capacity claim brought by "John Cooke, Sheriff of Weld County," is actually a claim being brought by the Weld County Sheriff's Office.

*Cooke v. Hickenlooper*, No. 13-01300, 2013 WL 6384218, *9 (D. Colo. Nov. 27, 2013).

12- JOINT RESPONSE IN OPPOSITION TO MOTION
TO INTERVENE

86959-0002/LEGAL120567540.5

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

county government sought to intervene in district court proceedings. 630 F.3d 898, 901-02 (9th Cir. 2011). The district court denied intervention and the Ninth Circuit affirmed, saying:

> Under California law … the [county] plays no role with regard to marriage, which is "a matter of 'statewide concern' rather than a 'municipal affair.' " *Lockyer v. City and County of San Francisco*, 95 P.3d 459, 471 (Cal. 2004). Local elected leaders "may have authority under a local charter to supervise and control the actions of a county clerk or county recorder with regard to other subjects," but they have "no authority to expand or vary the authority of a county clerk or county recorder to grant marriage licenses or register marriage certificates under the governing state statutes…." *Id.*

630 F.3d at 905.[5] On this basis, the Ninth Circuit concluded that the county had no right to intervene. So too here. While a county clerk's office issues marriage licenses as a ministerial act, it has no authority to "expand or vary" any feature of the licensing process, and it has no authority to "register marriage certificates under the governing state statutes[.]" *Id.* Under Ninth Circuit law, therefore, a county clerk has no legally protectable interest in declining to issue a marriage license.[6]

The Ninth Circuit's decision in *Perry* makes good sense. In a Seventh Circuit case, Judge Posner explained that school board members had an insufficient interest to intervene in litigation over a desegregation decree — an effort, he said, that was "misguided to the point of being preposterous[.]" *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 171 F.3d 1083 (7th Cir. 1999). "Suppose an appellate court orders a trial judge to dismiss a suit.

---

[5] In *Perry*, the Ninth Circuit specifically said that it was not deciding whether an elected county clerk would have the right to intervene. 630 F.3d at 903. Clerks have different duties in different states, and the Ninth Circuit did not consider the duties of a California county's elected clerk in that case. *Perry* is nonetheless instructive because, under *Li*, 338 Or. at 396, Oregon clerks have only a ministerial role in matters of marriage, which is most analogous to the role of Imperial County and its board of supervisors in *Perry*.

[6] NOM correctly notes that the Rummell and Geiger plaintiffs named Randy Walruff, a county official, as a defendant in this case. But this fact does not strengthen NOM's position. The Rummell and Geiger plaintiffs named Mr. Walruff as a defendant to help ensure there would be no question that counties are bound by the Court's judgment. But Mr. Walruff was not a necessary party for resolution of this case, just as it was not necessary for plaintiffs to name county officers from each of the counties throughout the State.

13- JOINT RESPONSE IN OPPOSITION TO MOTION TO INTERVENE

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Could the judge seek judicial relief against the order on the ground that the appellate court had 'injured' him by making him do something that he didn't want to do? The answer is 'no,' and it is equally applicable to a challenge by a member of an agency who is ordered to do something in his official capacity." *Id.* (internal citations omitted). Likewise, here, that a county clerk's administrative tasks may change somewhat as a result of this litigation does not give the clerk a legal interest in this case.

Further, NOM's claim to represent a member who is a county clerk is notable for what it does not say. The declaration of NOM's president Brian S. Brown says only that, "[a]mong NOM's Oregon members [is] a county clerk[.]" First, NOM does not specify whether this member is an Oregon county's elected Clerk, or merely a staff member who works in a county clerk's office. Second, NOM says almost nothing about this person or the injury she would supposedly suffer by this litigation. NOM does not say whether this person opposes the relief that plaintiffs seek in this case, how this person would be burdened by entry of judgment in favor of plaintiffs, or if this person is even aware that NOM is acting on her behalf. Despite telling the Court almost nothing about this member, NOM asks the Court blindly to accept that this person has a stake in the outcome of this litigation and that NOM can represent that interest. The Court should decline to do so.[7]

At bottom, NOM's interest in this litigation is the simple policy preference of its members to maintain enforcement of Oregon's marriage exclusion. NOM seeks to build up this interest by claiming to act on behalf of members who it says have more particularized interests, but this edifice does not withstand scrutiny. Disliking a lawsuit's possible outcome is not reason enough to intervene, much less to gain mandatory intervention.[8]

---

[7] The Court should not permit NOM to supplement evidence in support of its motion. Such supplementation accompanying a reply brief would be improper. *See JG v. Douglas County School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008).

[8] NOM offers no authority for the proposition that it can gain mandatory intervention based on the putative interests of a single unidentified member. If it could do so, then any organization with a large enough membership pool — say, AARP — could gain mandatory

14- JOINT RESPONSE IN OPPOSITION TO MOTION TO INTERVENE

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**C.    NOM Lacks Standing to Appeal.**

Trying yet another route, NOM argues that it has a right to intervene because it has the right to appeal a decision of this Court.  This argument, too, fails.  NOM's brief repeatedly says that its members have an interest in appealing a judgment favorable to the Geiger and Rummell plaintiffs.  But this cannot possibly be the case, as the Supreme Court held just last term that a party with greater claim to an interest than NOM (the actual proponent of the ballot measure at issue) cannot appeal in a case like this.  *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2268 (2013).

As an initial matter, it must be noted that intervention and appeal are distinct.  In the Ninth Circuit, Article III standing is *not* necessary to intervene but *is* necessary to appeal.  *See State Farm Mut. Auto. Ins. Co. v. Sugrue*, 132 F.3d 40, *1 (9th Cir. 1997) ("An intervenor is not required to have Article III standing.  Intervenors do need standing to pursue an appeal, however[.]" (internal citation omitted)).  Therefore, it is theoretically possible that NOM could intervene for the purpose of defending Oregon's marriage exclusion in this Court, but it would still have no right to appeal an adverse judgment.  This is precisely what happened in *Hollingsworth*, 133 S. Ct. at 2260.  There, as here, the State declined to defend its marriage exclusion law (there, California's Proposition 8), and supporters of the law timely intervened to mount a defense.  *Id.*  A federal district court struck down the law, the State declined to appeal, and the intervenors attempted to bring an appeal.  *Id.*  The Supreme Court held that they had no standing to do so.  The Court reasoned:

> To have standing [to appeal], a litigant must seek relief for an injury that affects him in a "personal and individual way."  He must possess a "direct stake in the outcome" of the case.  Here, however, petitioners had no "direct stake" in the outcome of their appeal.  Their only interest in having the District Court order reversed was to vindicate the constitutional validity of a generally applicable California law.

intervention in almost any case.  Research has not uncovered any authority for this radical view of intervention.

15-  JOINT RESPONSE IN OPPOSITION TO MOTION
       TO INTERVENE

86959-0002/LEGAL120567540.5

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> We have repeatedly held that such a "generalized grievance," no matter how sincere, is insufficient to confer standing. A litigant "raising only a generally available grievance about government — claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large — does not state an Article III case or controversy."

> Petitioners argue that the California Constitution and its election laws give them a "'unique,' 'special,' and 'distinct' role in the initiative process — one 'involving both authority and responsibilities that differ from other supporters of the measure.'" True enough — but only when it comes to the process of enacting the law. … But once Proposition 8 was approved by the voters, the measure became "a duly enacted constitutional amendment or statute." Petitioners have no role — special or otherwise — in the enforcement of Proposition 8. *They therefore have no "personal stake" in defending its enforcement that is distinguishable from the general interest of every citizen of California.*

*Id.* at 2662-63 (emphasis added) (internal citations omitted). The Court concluded: "We have never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to. We decline to do so for the first time here." *Id.* at 2268.

The instant case is materially indistinguishable from *Hollingsworth*. NOM will argue that its claim to represent the interests of a member who is a county clerk is a distinguishing fact. It is not. As discussed above, NOM may represent the interests of a private citizen who goes to work every day as a county clerk; it does not, however, represent a county clerk in her official capacity. Even if it did, marriage under Oregon law is a matter of statewide, not local, concern, *Li*, 338 Or. at 396, and as the Ninth Circuit held in *Perry*, the ministerial role of a county official in implementing state policy is not a sufficient interest to intervene, 630 F.3d at 901-02. NOM's position simply cannot be reconciled with *Li*'s holding that Oregon clerks have only a ministerial role in marriage licensing, *Perry*'s holding that county officials who do not have meaningful discretion in marriage licensing lack a "significant protectable interest," and *Hollingsworth*'s holding that a litigant has standing to appeal only if it has a "direct stake in the outcome" of the case.

16- JOINT RESPONSE IN OPPOSITION TO MOTION
     TO INTERVENE

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

NOM's brief repeatedly asks the Court to recognize that its interest in this litigation is an interest in ensuring that an appeal is taken if the law is struck down.  This puts the cart before the horse.  The opportunity to appeal simply cannot be one of NOM's interests because, under controlling Supreme Court precedent, NOM has no standing to appeal.

### D.    The Existing Parties Adequately Represent the Legal Interests of NOM's Members.

NOM's motion is predicated on the proposition that its Oregon members have an interest in the defense and continued implementation of Oregon's marriage exclusion.  This proposition confuses a legal interest with a personal preference.

Plaintiffs do not doubt that many of NOM's members and, indeed, some of the voters who supported Measure 36 in 2004, would prefer to see Oregon's marriage exclusion upheld and enforced.  But this personal preference is not a legal interest.  Oregonians elect an attorney general to serve as the State's lawyer, and state law vests in that office the authority to represent the State's interests in court.  *See* ORS 180.060(1)(d); ORS 180.220(1); ORS 180.235(1).  NOM's Oregon members have no private legal interest in implementation of state law that is distinct from the State's interest.  *See Hollingsworth*, 133 S. Ct. at 2663 ("But once Proposition 8 was approved by the voters, … [p]etitioners have no role — special or otherwise — in the enforcement of Proposition 8."); *Northland Family Planning Clinic*, 487 F.3d at 345 ("[I]n a challenge to the constitutionality of an already-enacted statute … the public interest in its enforceability is entrusted for the most part to the government[.]").

As the Supreme Court said in *Hollingsworth* last term: "No matter how deeply committed petitioners may be to upholding Proposition 8 or how zealous their advocacy, that is not a 'particularized' interest[.]"  133 S. Ct. at 2663.  Only the State has a *legal* interest in continued implementation and enforcement of Oregon's marriage exclusion laws.  And Oregon law empowers only the attorney general to represent the State's interests.  *See Hanggi on Behalf of Oregon Public Employees Retirement Fund v. Hartford Fire Ins. Co.*, 132 Or. App. 601, 610-12,

17-  JOINT RESPONSE IN OPPOSITION TO MOTION
      TO INTERVENE

86959-0002/LEGAL120567540.5

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

889 P.2d 365 (1995).  NOM does not purport to represent the State's interests and cannot claim

that the able attorneys at the Oregon Department of Justice are not providing adequate

representation to their client.  Had NOM or any of its members wished to share their personal

views with this Court concerning the constitutionality of Oregon's ban on same-sex marriage, the

Court provided that opportunity in inviting amicus briefs to be submitted before April 1.

Accordingly, NOM has no right to intervene in this litigation.

## II.    THE COURT SHOULD NOT GRANT NOM PERMISSIVE INTERVENTION.

In a summary fashion, NOM requests permissive intervention under Rule 24(b).

Permissive intervention is subject to the Court's sound discretion.  *McDonald v. Means*, 300 F.3d

1037, 1044 n.8 (9th Cir. 2002).

> Where a litigant timely presents such an interest in intervention,
> courts consider a number of factors in deciding whether to permit
> intervention, including: the nature and extent of the intervenors'
> interest, their standing to raise relevant legal issues, the legal
> position they seek to advance, and its probable relation to the
> merits of the case, whether changes have occurred in the litigation
> so that intervention that was once denied should be reexamined,
> whether the intervenors' interests are adequately represented by
> other parties, whether intervention will prolong or unduly delay the
> litigation, and whether parties seeking intervention will
> significantly contribute to full development of the underlying
> factual issues in the suit and to the just and equitable adjudication
> of the legal questions presented.

*Perry*, 630 F.3d at 905 (internal citation and alteration omitted).

For many of the same reasons that the Court should deny mandatory intervention, it

should also deny permissive intervention.  First, the motion to intervene is untimely — which

alone is a reason to deny permissive intervention.  *See Wright & Miller*, *supra*, at § 1916.

Second, NOM has no particularized interest in this litigation; at bottom, its interest is mere

disagreement with the plaintiffs' position.  Third, NOM lacks Article III standing under

*Hollingsworth*.  Fourth, the intervenors' legal interests — as citizens of the State — are

adequately represented by the attorney general.  And, finally, intervention will prolong and

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

unduly delay the litigation, and will prejudice the plaintiffs.  Accordingly, the Court should not permit NOM to intervene under Rule 24(b).

## III.    CONSIDERATION OF THE SUMMARY JUDGMENT MOTIONS SHOULD PROCEED WITHOUT FURTHER DELAY.

Regardless of whether NOM is granted permission to intervene, its participation should not derail the orderly course of this litigation.  Counsel for NOM told counsel for plaintiffs on April 21, and told this Court in filed documents, that it was prepared to file a brief in opposition to the motions for summary judgment, and would do so by the end of the day on April 22. (Middleton Decl. ¶ 9; Dkt. 90 at 2 ("[NOM] plans on submitting a preliminary opposition to the motions for summary judgment before the end of the day on April 22, 2014.").)  The Rummell and Geiger plaintiffs do not oppose NOM's involvement as an amicus participant (notwithstanding the lateness of NOM's brief), as long as the filing of a brief would not further delay disposition of the pending motions for summary judgment.  If NOM wishes to make arguments in support of Oregon's marriage exclusion, it should file an amicus brief immediately. The Court can consider NOM's arguments and then render decision on the motions for summary judgment in due course.

## CONCLUSION

For the foregoing reasons, the Rummell and Geiger plaintiffs respectfully request that this Court deny NOM's motion to intervene.  Furthermore, irrespective of this Court's decision on intervention, the Rummell and Geiger plaintiffs respectfully request that this Court, consistent with its usual practice and in accordance with the demands of its caseload, proceed to consider and decide the pending motions for summary judgment without further delay.

19-  JOINT RESPONSE IN OPPOSITION TO MOTION
TO INTERVENE

86959-0002/LEGAL120567540.5

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

DATED:  May 2, 2014

s/ *Thomas R. Johnson*

**Thomas R. Johnson**, OSB No. 010645
TRJohnson@perkinscoie.com
**Kristina J. Holm**, OSB No. 112607
KJHolm@perkinscoie.com
**Misha Isaak**, OSB No. 086430
MIsaak@perkinscoie.com
Perkins Coie LLP
Telephone:  503.727.2000

**Jennifer Middleton**, OSB No. 071510
JMiddleton@jjlslaw.com
Johnson Johnson & Schaller PC
Telephone:  541.683.2506

**Kevin Díaz**, OSB No. 970480
KDiaz@aclu-or.org
ACLU Foundation of Oregon, Inc.
Telephone:  503.227.6928

**Rose Saxe**, *pro hac vice*
RSaxe@aclu.org
**Amanda Goad**, *pro hac vice*
AGoad@aclu.org
American Civil Liberties Union Foundation
Telephone: 212.549.2627

Attorneys for Rummell, West, Chickadonz,
Tanner, and Basic Rights Education Fund

DATED:  May 2, 2014

s/ *Lake James H. Perriguey*

**Lea Ann Easton**, OSB No. 881413
leaston@dorsayindianlaw.com
Dorsay & Easton LLP
1 SW Columbia Street, Suite 440
Portland, OR 97204
Telephone: 503.790.9060

**Lake James H. Perriguey**, OSB No. 983213
Law Works LLC
lake@law-works.com
1906 SW Madison Street
Portland, OR 97205-1718
Telephone: 503.227.1928

Attorneys for Geiger, Nelson, Duehmig,
and Griesar

20-  JOINT RESPONSE IN OPPOSITION TO MOTION
      TO INTERVENE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222