**Lake James H. Perriguey**, OSB No. 983213
lake@law-works.com
LAW WORKS LLC
1906 SW Madison Street
Portland, OR  97205-1718
Telephone:  (503) 227-1928

**Lea Ann Easton**, OSB No. 881413
leaston@dorsayindianlaw.com
DORSAY & EASTON LLP
1 SW Columbia Street, Suite 440
Portland, OR  97258
Telephone:  (503) 790-9060
    Attorneys for Plaintiffs Geiger, Nelson, Deuhmig & Griesar

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| **DEANNA L. GEIGER** and **JANINE M. NELSON, ROBERT DUEHMIG** and **WILLIAM GRIESAR**, | Case No. 6:13-cv-01834-MC (Lead Case) Case No. 6:13-cv-02256-TC (Trailing Case) |
| Plaintiffs, | |
| v. | **MEMORANDUM IN SUPPORT OF** ***GEIGER*** **PLAINTIFFS' MOTION FOR ATTORNEY FEES** |
| **JOHN KITZHABER**, in his official capacity as Governor of Oregon, **ELLEN ROSENBLUM**, in her official capacity as Attorney General of Oregon, **JENNIFER WOODWARD**, in her official capacity as State Registrar, Center for Health Statistics, Oregon Health Authority, and **RANDY WALRUFF**, in his official capacity as Multnomah County Assessor, | |
| Defendants. | |
| **PAUL RUMMELL** and **BENJAMIN WEST; LISA CHICKADONZ** and **CHRISTINE TANNER; BASIC RIGHTS EDUCATION FUND**, | |

Page 1   -

           Plaintiffs,

v.

**JOHN KITZHABER**, in his official capacity as Governor of Oregon; **ELLEN ROSENBLUM**, in her official capacity as Attorney General of Oregon; **JENNIFER WOODWARD**, in her official capacity as State Registrar, Center for Health Statistics, Oregon Health Authority; and **RANDY WALDRUFF**, in his official capacity as Multnomah County Assessor,
           Defendants.

## INTRODUCTION

In this action brought under 42 U.S.C. § 1983, *Geiger* Plaintiffs successfully challenged Oregon's constitutional and statutory prohibitions on marriage between same-gender couples. When the *Geiger* Plaintiffs' counsel began working on this suit in July 2013 and when they filed their Complaint, no federal court had yet ruled on the merits of the novel and complex constitutional issues presented in this case since the United States Supreme Court issued its decision in *United States v. Windsor*, 570 U.S. 12 (2013). Counsel agreed to represent Plaintiffs without charging fees of any sort. The risk was high that counsel might not be compensated for their significant time spent on advancing Plaintiffs' constitutional rights. The demands on attorneys' time over the past 10 months were immense.

## BACKGROUND

Plaintiffs Geiger, Nelson, Duehmig and Griesar filed their complaint on October 15, 2013, challenging Defendants' exclusion of same-gender couples from marriage under Oregon law both in terms of allowing same-gender couples to marry and recognition of same gender-marriages performed in other jurisdictions. On October 16, 2013, State Defendant Rosenblum, Attorney General of Oregon, issued an attorney opinion letter to Michael Jordan,

Chief Executive Officer of the Department of Administrative Services, opining that state agencies refusal to recognize out of state same gender marriages was unconstitutional and that there was no rational basis on which to defend Plaintiffs' lawsuit.  On October 16, 2013, Director Jordan directed state agencies to recognize same-gender marriages performed outside of Oregon in the administration of their programs. *See* State's Answer, Exhibit A, and Dkt # 10.  On December 23, 2013, this directive was codified as temporary administrative rule OAR 105-010-0018.  The rule applied to state agencies and does not apply to state courts or to local governmental entities.  On or about December 16, 2013, a second lawsuit was filed by the Basic Rights Education Fund, an arm of Basic Rights Oregon, and two couples (*Rummel* Plaintiffs) making the same claims as alleged in Geiger's complaint and seeking the same relief as the *Geiger* plaintiffs. The *Rummel* Plaintiffs moved to consolidate their case with the Geiger case.

      Prior to the *Rummel* complaint being filed, Plaintiffs and Defendants had agreed to an expedited briefing schedule of the *Geiger* case.  Consolidation of the cases added a level of complexity to the case requiring additional effort and time to coordinate arguments between the *Rummel* and *Geiger* attorneys.   The consolidation did help to ensure thorough briefing.  However, it also delayed the adjudication of the *Geiger* Plaintiffs' constitutional rights.

       After a hearing on the merits, Plaintiffs prevailed on their claims and this Court permanently enjoined the State of Oregon and Multnomah County from continuing to violate Plaintiffs' constitutional rights.

      Given the high degree of skill, experience, willingness to accept the risk, and the dedication necessary to reach this successful conclusion, Plaintiffs now move this Court to order Defendants to pay $184.090 for their reasonable attorneys' fees and $ 967.50 in expenses,

pursuant to F.R.C.P. 54, District Court of Oregon Local Civil Rules 54, and 42 U.S.C. § 1988.

## ARGUMENT

I.  PLAINTIFFS ARE ENTITLED TO THEIR ATTORNEY FEES UNDER THE CIVIL RIGHTS ATTORNEY FEE AWARD ACT OF 1976

The Civil Rights Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988, provides a mechanism in which prevailing plaintiffs may recover reasonable attorneys' fees in cases, like this one, advanced under 42 U.S.C. § 1983. The Plaintiffs are prevailing parties under 42 U.S.C. §1988 and are entitled to an award of reasonable attorney fees and expenses. Awarding attorney fees in these cases is "the rule rather than the exception." *American Broadcasting Companies, Inc. v. Miller*, 550 F.3d 786, 787 (9th Cir. 2008). For the reasons that follow, the fees and expenses that they request are reasonable.

II.  LODESTAR/MULTIPLIER APPROACH.

The Ninth Circuit has adopted a lodestar/multiplier approach for assessing the amount of reasonable attorney fees. *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990), *citing Hensley v. Eckerhart*, 461 U.S. 424, 433, 434 n.9, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The lodestar/multiplier analysis has two parts. The Court first calculates the lodestar amount by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). This methodology results in a "presumptively reasonable" fee award. *Id*.

The Court may consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

Page 4     Memorandum in Support of *Geiger* Plaintiffs' Motion for Attorney Fees

and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

After determining the lodestar amount, the court assesses whether to adjust the lodestar upward or downward based on the *Kerr* factors that are "not already subsumed in the initial calculation of the lodestar." *Morales*, 96 F.3d at 363-64.

The lodestar fee is 184.090 based upon 461.54 hours at the rates described here:

|                 | Hours  | Rate  | Lodestar  |
|-----------------|--------|-------|-----------|
| Lake Perriguey  | 316    | $400  | $126,400  |
| Lea Ann Easton  | 171.30 | $300  | $ 51,390  |
| Sage Teton      | 36     | $175  | $  6,300  |
| TOTAL           | 523.30 |       | $184,090  |

III. HOURLY RATES.

The appropriate hourly rate is that rate which is charged by attorneys of similar skill and experience for comparable legal services in the community. *Blum v. Stenson,* 465 U.S. 886, 893-894, 104 S.Ct. 1541,79 L.Ed.2d 891 (1984).

The District of Oregon uses the most recent Oregon State Bar Economic Survey as the initial reference to determine a reasonable hourly rate. Attorneys may seek higher rates based on inflation, specialty, or other factors. See "Message from the Court Regarding Attorney Fee Petitions." Attached as Exhibit 1 to Perriguey Declaration. Plaintiffs are seeking fees that are comparable with the median and average rates in the Oregon State Bar Economic Survey.

<u>Lake Perriguey.</u>  Lake Perriguey has been in private practice since 1998. He is recognized as an expert in Lesbian Gay Bisexual Transgender and Queer ("LGBTQ")

discrimination and civil rights litigation. Lake Perriguey's hourly rate is $400. The OSB economic survey indicates that hourly rates for Portland attorneys in practice 13-15 years range from an average of $312 to a 95th percentile of $432. L. Perriguey Declaration, Ex. 1 at 34. The Morones Survey indicates that the average hourly rate for attorneys in practice 10-19 years is $346 and the median is $350. L. Perriguey Decl., Ex. 2 at 2. Applying a 3.9 percent annual increase of those rates for inflation reflects an average of $367 and a median of $371.[1]

Lea Ann Easton. Lea Ann Easton's hourly rate is $300.00. Ms. Easton has practiced law since since 1988 and in private practice since 2005. The OSB economic survey indicates that hourly rates for Portland attorneys in practice 21-30 years range from a median of $333 to a 95th percentile of $470. L. Perriguey Decl., Ex. 1 at 34. The Morones Survey indicates that the average hourly rate for attorneys in practice 20-29 years is $412 and the median is $400. Ex. 2 at 2. A 3.9 percent annual increase of those rates for inflation reflects an average of $444 and a median of $465.

Lea Ann Easton has worked on complex federal litigation for most of her legal career -- both as an attorney for the Native American Program, Legal Aid Services of Oregon and in her current practice-- representing Indian tribes and tribal entities. Her practice focuses on the interplay of federal Indian law with federal and state laws. She has substantial experience litigating these issues in federal trial and appellate courts. *See* Declaration of Easton at ¶ 3-4.

Sage Teton. Sage Teton's hourly rate is $175. Ms. Teton has been in private practice since 2011. The OSB economic survey indicates that hourly rates for Portland attorneys in

---

[1] The 2012 summary report for the Morones Survey indicates that the annual growth rate of fees for attorneys with 10-19 years of experience between the years 2004 and 2012 is 3.0%.

practice 0-3 years range from a median of $175 to a 95th percentile of $198. Ex. 1 at 32. The Morones Survey indicates that the average hourly rate for attorneys in practice 0-9 years is $289 and the median is $250. Ex. 2 at 2. A 3.8 percent annual increase[2] of those rates for inflation reflects an average of $285 and a median of $269.  *See*  Sage Teton Declaration.

IV. HOURS INCURRED.

Plaintiffs' attorneys have spent 523.30 hours on the case, which are detailed in Exhibit 3 to the Declaration of Lake Perriguey.

V. THE *KERR* FACTORS.

A. The Time and Labor Required.

The time and labor required in this case was reasonable under the circumstances. The case management was made more complex by the consolidation of a duplicate lawsuit filed after the State made it clear that *Geiger* plaintiffs were likely to succeed in the litigation.  It was additionally complicated by the efforts of the attempted intervenor at the 11th hour of the litigation.

B. The Novelty and Difficulty of the Questions.

The constitutional issues presented by Oregon's exclusionary marriage laws were only becoming clear in July 2013, when Lake Perriguey began looking for plaintiffs to challenge the State of Oregon's discriminatory marriage laws following the United Supreme Court's decisions in *Perry v. Hollingsworth* and *United States v. Windsor*.  *See* Lake Perriguey Decl.   Although similar cases had been filed in other jurisdictions, when Plaintiffs filed their complaint in October 2013, no other federal courts had issued decisions on those cases.   Thus, the legal

---

[2] The 2012 summary report for the Morones Survey indicates that the annual growth rate of fees for attorneys with 20-29 years of experience between the years 2004 and 2012 is 3.9%.

theories and claims asserted by Plaintiffs presented legal theories and arguments not yet vetted by the federal courts.

C. The Skill Required.

Plaintiffs' attorneys have demonstrated that they have specialized skill in litigating LGBTQ civil rights and constitutional cases. Though there are certainly many civil rights lawyers and LGLBQ lawyers in Oregon, none was willing to litigate the marriage question prior to our filing this suit. See Lake Perriguey Decl. and Charles F. Hinkle Decl.

D. The Preclusion of Other Employment by the Attorneys.

Plaintiffs' attorneys were precluded from taking on other cases during the time they were working on this case.

E. The Customary Fee.

The customary fee in civil rights cases is a contingent fee based on a percentage of the total recovery, or the amount of fees awarded by the court under the fee-shifting, section 42 U.S.C. §1988. The Civil Rights Attorney's Fee Award Act of 1976 includes a fee-shifting provision in order to level the playing field for citizens whose constitutional rights are violated by the government, which has virtually unlimited resources to litigate. In this case, Plaintiffs did not seek monetary damages and none was awarded. Thus, court-awarded attorneys' fees in this case are the only part of the customary fee.

F. Whether the Fee Is Fixed or Contingent.

Plaintiffs' attorneys accepted plaintiffs' case on a contingent fee basis. Plaintiffs' counsel took a great risk to represent plaintiffs. When the fee is contingent, the fee award should compensate counsel for the risk of receiving no compensation. See, e.g., Blum v. Stenson, 465 U.S. 886, 903, 104 S. Ct. 1541, 79 L. Fd. 2d 891 (1984) (Brennan, J., concurring); Fabri v.

*United Techs Int'l, Inc.*, 193 F. Supp. 2d 480, 486 (D. Conn. 2002). Accord *Griffin v. Tri-County Metropolitan Transportation District of Oregon*, 112 Or. App. 575, 585, 831 P.2d 42 (1992) ("[C]ounsel who successfully undertake the cases for a contingency fee are generally compensated at rates greatly exceeding standard billing rates for general legal services."). Moreover, the fee award should permit counsel "to earn an income that would be competitive with colleagues who get paid win or lose." *Bayless v. Irv Leopold Imports, Inc.*, 659 F. Supp. 942, 944 (D. Or. 1987), citing *Blum*, 465 U.S. at 903.

    G. <u>Time Limitations Imposed by the Client or the Circumstances.</u>

    This factor is not applicable here.

    H. <u>The Amount Involved and the Results Obtained.</u>

Plaintiffs' constitutional rights with respect to marriage were acknowledged and affirmed for the first time in Oregon history. The same is true for all gay and lesbian Oregonians. For the first time in Oregon's history, Plaintiffs and all other gay and lesbian people are equal under state law with respect to marriage.

The Supreme Court has instructed that "the most critical factor" governing the reasonableness of a fee award "is the degree of success obtained." *Hensley*, 461 U.S. at 436. In cases when "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435, 103 S.Ct. 1933.

Civil rights actions do not benefit only the individuals whose rights were violated, but may also "vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, (1986).

I. <u>The Experience, Reputation, and Ability of the Attorneys.</u>

As discussed above, Plaintiffs' lead counsel is preeminent in the field of LGBTQ law. His experience and ability were important factors in achieving the excellent result for plaintiffs. *See* Charles F. Hinkle Decl.

J. <u>The "Undesirability" of the Case.</u>

After a district court determines a "lodestar figure" for an award of attorney fees, it "may adjust that figure pursuant to a variety of factors," one of which is "the undesirability of the case." *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1209 & n. 11 (9th Cir. 2013) (internal quotation marks omitted). The contingent nature of the fee, the complexity of the case, and the prospect of facing a defendant with nearly unlimited resources made this case less desirable. In addition, many GLBTQ lawyers would have found this case "undesirable" due to the fact that the ACLU and BRO had a national strategy that involved a costly ballot measure. Filing a lawsuit put the lawyers and plaintiffs in an adverse position to the national strategy, including powerful members of local and national legal and LGBTG political communities.

Litigating this case was definitely "not part of the plan." See Marriage Duel, http://www.wweek.com/portland/article-21431-marriage_duel.html, accessed June 9, 2014. See *Winning by Default*, http://www.wweek.com/portland/article-22062-winning_by_default.html, accessed June 9, 2014. *See also* Charles F. Hinkle Decl. and Lake Perriguey Decl., ¶ 19.

K. <u>The Nature and Length of the Professional Relationship with the Client.</u>

This factor is not applicable here.

L. <u>Fees in Similar Cases.</u>

Plaintiffs in the Idaho marriage equality case, *Latta v. Otter*, Case No. 13-00482 (D. Id 2014), have sought fees of $463,480.00. The court has not yet ruled on this request.

The Hon. John G. Heyburn II, Senior Judge of the U.S. District Court of the Western District of Kentucky, awarded the successful plaintiffs' attorneys a bonus in that marriage equality suit. *Love v. Beshear*, Case No. 3:13-CV-750-H (W.D. Kentucky May 13, 2014).

VI.  FEE ENHANCEMENT.

Courts are at liberty to award a fee enhancement, a bonus, due to "the importance of the rights obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and *indeed in some cases of exceptional success an enhanced award may be justified*." *Id*. at 435. (Emphasis added.). In *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010), the U.S. Supreme Court acknowledges that there may be "extraordinary circumstances" in which a court may enhance an award of attorneys' fees for superior work and results.

The results obtained in this case are exceptional and manifold.  Plaintiffs' courage to bring this case when they did, despite opposition from many quarters, resulted in the recognition and confirmation of the constitutional rights of all Oregon citizens, regardless of gender and sexual orientation, resulted in the gay and lesbian equality under the law for the first time in Oregon history, and will result in a financial benefit to the State of Oregon. By way of just a couple of examples, a same-gender spouse is now able to access a former spouse's federal social security benefits, bringing federal money into Oregon and reducing the burden on the State. And, thanks to the *Windsor* decision coupled with the *Geiger* decision, a surviving same-gender spouse will no longer have to send inheritance taxes out of Oregon and to Washington.

CONCLUSION

For the reasons set forth above, plaintiffs asks this Court to award attorneys' fees and costs.

DATED June 17, 2014.

                Respectfully submitted,


                /s/ Lake James H. Perriguey
                Lake James H. Perriguey, OSB No. 983213
                lake@law-works.com
                LAW WORKS LLC
                Telephone:  (503) 227-1928

                Lea Ann Easton
                DORSAY & EASTON LLP